**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NATIONAL OIL WELL VARCO, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. H-16-2261 |
| SADEESH SADAGOPAN, | § | |
| MAJED HAMDAN, and | § | |
| KHALED ZANTOUT, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

National Oil Well Varco, L.P. alleges that three of its Dubai employees perpetrated a kickback scheme that resulted in significant financial losses. NOV sued Sadeesh Sadagopan, Majed Hamdan, Khaled Zantout, and two Texas-based defendants in Texas state court in 2016. The defendants timely removed on the basis of diversity jurisdiction. (Docket Entry No. 1). NOV dismissed its claims against the Texas defendants, leaving the claims against the three Dubai individuals. (Docket Entry Nos. 7 at 23). These defendants have moved to dismiss, arguing that this court lacks personal jurisdiction over them. In the alternative, they seek dismissal in favor of adjudication in Dubai, invoking *forum non conveniens*. (Docket Entry No. 45). NOV responded and the defendants replied. (Docket Entry Nos. 53; 60; 63; 66). After a hearing at which the parties presented oral argument, the parties supplemented their briefs on the personal jurisdiction issue. (Docket Entry Nos. 70, 72). Based on the pleadings; the motions, responses, and replies; the arguments of counsel; the record; and the applicable law, the court denies the defendants' motion to dismiss. A scheduling conference is set for **July 28, 2017, at 10:00 a.m.** The reasons for this ruling are explained below.

## I. Background

NOV employed Sadeesh Sadagopan, Majed Hamdan, and Khaled Zantout in Dubai for over ten years before firing them in 2016. (Docket Entry No. 7 at ¶¶ 15–17; 36). The defendants had management duties that required them to review and agree to comply with NOV's Business Ethics Policy and Code of Conduct. (*Id*. at ¶¶18–20). The three allegedly associated closely with a senior NOV officer, referred to in the briefs as "FM," who transferred to NOV's Houston office in 2010. (*Id*. at ¶¶ 2; 21; 24).

In 2016, NOV received a whistleblower complaint informing it of a potential conflict of interest involving certain NOV employees and NOV equipment leases in the Middle East and North Africa operating regions. (*Id*. at ¶ 25). NOV investigated and discovered that the lease prices for transactions for heavy equipment with Global Business Supply in 2009 and 2010 were materially higher than other lease prices in the region for the same or similar equipment. (*Id*. at ¶ 26). NOV had paid Global Business Supply over $1.7 million for leased equipment since 2009 or 2010. (*Id*.). NOV estimated that the equipment sales value was less than $300,000 when it was leased. (*Id*.).

NOV learned that Mr. Sadagopan had been responsible for negotiating the terms of NOV's lease agreements with Global Business Supply. (*Id*. at ¶ 28). Later in the investigation, Mr. Sadagopan admitted that he and at least one other NOV employee had financial interests in Global Business Supply. (*Id*. at ¶ 29). NOV discovered a spreadsheet created by Mr. Sadagopan in which he tracked transactions for revenue and expenses between September 2010 and March 2016. (*Id*. at ¶ 30). Initials on the spreadsheet referred to FM, Mr. Hamdan, and Mr. Zantout. (*Id*.). FM admitted to receiving approximately $27,000 in cash from Mr. Sadagopan. (*Id*.). NOV believes, based on the spreadsheet, that FM received a total of over $780,000. (*Id*. at ¶ 32).

The evidence submitted and discussed during the hearing on personal jurisdiction shows that

Mr. Sadagopan, Mr. Hamdan, and Mr. Zantout met with FM at a dinner in Houston in April 2012. (Docket Entry No. 63-4 at 2). Mr. Sadagopan's spreadsheet indicates a $20,000 withdrawal five days before this dinner. (Docket Entry No. 53-3 at 2). The defendants do not dispute that this meeting occurred, but they deny that they gave FM cash at this dinner. (Docket Entry No. 72 at 3–4).

NOV alleges that Mr. Sadagopan, Mr. Hamdan, Mr. Zantout conspired with each other and with a senior NOV officer to defraud NOV and embezzle millions of dollars from it between 2009 and March 2016. (Docket Entry No. 7 at ¶ 1). NOV asserts claims for fraud, fraud by nondisclosure, conspiracy to defraud, breach of contract, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. (*Id.*). Before those claims can be considered on the merits, the court must determine whether it has personal jurisdiction over the defendants and whether exercising that jurisdiction would be proper.

## II.     Legal Standard

### A.     Personal Jurisdiction

A federal court may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising jurisdiction is consistent with due process. *See Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004); *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

Federal due process permits personal jurisdiction over a nonresident defendant with "minimum contacts" with the forum state, if exercising jurisdiction over that defendant does not

offend "traditional notions of fair play and substantial justice." *Id.* "Minimum contacts" can "give rise to 'specific' personal jurisdiction" or "to 'general' personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against him when his contacts with the state are so "'continuous and systematic' as to render [him] essentially at home in the forum." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011)). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)).

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 131 S. Ct. at 2851 (citation omitted). A court asks "whether there was 'some act by which the defendant purposefully availed [himself] of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Id.* at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotations marks omitted). Though the defendant's contacts with the forum must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person," even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498–99 (5th Cir. 2012) (internal quotation marks omitted).

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case" if the district court does not conduct an evidentiary hearing. *Johnston*, 523 F.3d at 609 (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). In deciding whether personal jurisdiction exists, "the district court may receive 'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis." *Little v. SKF Sverige AB*, No. 13-1760, 2014 WL 710941, at *3 (S.D. Tex. Feb. 24, 2014) (quoting *Walk Haydel*, 517 F.3d at 241). "Proof by a preponderance of the evidence is not required." *Johnston*, 523 F.3d at 609 (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). "'[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists.'" *Id.* (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)). "When the factual differences are found in favor of [a plaintiff] at this motion phase in the litigation . . . [it] has presented a prima facie case for personal jurisdiction." *Id.* In short, the "court resolves all conflicts in the evidence in favor of the plaintiff and accepts as true all of the plaintiff's uncontroverted allegations." *Little*, 2014 WL 710941, at *3 (citing *Johnston*, 523 F.3d at 609). Because specific personal jurisdiction is a claim-specific inquiry, a plaintiff bringing multiple claims must establish specific jurisdiction for each claim if the claims "arise out of different forum contacts of the defendant." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

**B.    *Forum Non Conveniens***

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil*

*Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). "A court's authority to effect foreign transfers through the doctrine of *forum non conveniens* 'derives from the court's inherent power, under Article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression.'" *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993) (citation omitted). "When an alternative forum has jurisdiction to hear the case and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in exercise of its sound discretion, dismiss the case.'" *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1141 (5th Cir. 1989) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

"[A] forum non conveniens dismissal must be based on the [court's] finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available forum." *Verba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983). The movant "bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164 (5th Cir.1987), *overturned on other grounds*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). "This burden of persuasion runs to all the elements of the forum non conveniens analysis." *Id.* The defendants must "demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favors dismissal." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). "In addition to the balancing of relevant private interest factors, the court must give 'the relevant deference' to the plaintiff's choice of forum." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208,

221–22 (5th Cir. 2000) (quoting *In re Air Crash*, 821 F.2d at 1165). To meet this relatively high burden, the remaining defendants "must supply the Court with enough information for it to conduct a meaningful inquiry and balance the parties' interests." *Blum v. Gen. Elec. Co.*, 547 F.Supp.2d 717, 725 (W.D. Tex. 2008) (citing *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 371 (5th Cir. 1992)).

## III. Analysis

### A. Personal Jurisdiction

NOV does not argue general personal jurisdiction. (Docket Entry No. 53 at 8). Instead, NOV argues that this Texas court has specific personal jurisdiction over the defendants for the intentional tort claims. Each of NOV's multiple tort claims arise out of the same forum contacts by the defendants. (*See* Docket Entry No. 7 at ¶¶ 1–51). NOV argues that specific jurisdiction arises from the defendants' tortious acts that were purposefully directed at Texas. (Docket Entry No. 53 at 7–8); *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012). NOV also asks the court to exercise pendant personal jurisdiction over the breach of contract claim against each defendant. (*Id*. at 7–8).

Specific personal jurisdiction requires that: (1) each defendant has minimum contacts with the forum state (either because that defendant purposefully directed acts toward the forum state or availed himself or herself of the privileges of conducting business there); (2) the plaintiff's cause of action arises out of or results from that defendant's forum-related contacts; and (3) the exercise of personal jurisdiction would be fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002)).

"In intentional tort cases, the Fifth Circuit has applied the 'purposeful direction' or 'effects'

test from *Calder v. Jones*, 465 U.S. 783 (1984)." *Baker Hughes Inc. v. Homa*, No. H-11-3757, 2013 WL 5775636, at \*12 (S.D. Tex. Oct. 25, 2013) (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)). Under Fifth Circuit precedent:

> When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal jurisdiction over the tortfeasor. Additionally, even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (internal quotation marks, footnotes, and alterations omitted).

Taking the conflicting evidence and uncontroverted allegations as true for the purpose of this motion, *Johnston*, 523 F.3d at 609, the defendants' alleged actions caused effects within Texas. NOV has its principal office in Houston and alleges that the defendants' fraud cost it millions of dollars. (Docket Entry No. 7 at ¶ 7; Docket Entry No. 53 at 9; 24). By itself, this may be insufficient to establish specific personal jurisdiction. *See Bustos v. Lennon*, 538 F.App'x 565, 568 (5th Cir. 2013) ("[T]he effects of an alleged intentional tort are merely part of the analysis of minimum contacts. Merely causing harm to a resident of a state is not sufficient, nor is the 'fortuity of one party residing in the forum state.' Similarly, foreseeable injury in the state is not enough 'absent the direction of specific acts toward the forum.'" (citing *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008); quoting *McFadin*, 587 F.3d at 760, 762)); *but see No. Tex. Opportunity Fund L.P. v. Hammerman & Gainer Intern. Inc.*, 107 F.Supp.3d 620 (N.D. Tex. 2015) (allegations that nonresident directors were self-dealing through fraudulent misrepresentations communicated to the forum state of Texas were sufficient for specific personal jurisdiction).

But NOV alleges, and the record evidence shows, numerous additional contacts between the

defendants with Texas, initiated by the defendants, and aimed at Texas. These contacts include:

- communicating directly with NOV's employees in Texas to obtain approval for sham contracts and without disclosing the defendants' conflicts of interest, (*see* Docket Entry No. 53-2 at ¶¶ 5, 11–31, 37; Docket Entry No. 7 at ¶¶ 2-3, 27-36);

- communicating directly to NOV employees in Texas that each defendant; (1) had read, understood and would abide by NOV's Code; (2) had complied with the Code and had no personal knowledge of any violations of the Code by others; and (3) would immediately report to NOV any violations of the Code, (*see* Docket Entry No. 53-2 at ¶¶ 30-31);

- purchasing, receiving, and selling NOV securities issued to the defendants in Texas using an E*TRADE account that NOV established for the defendants in Texas, (*see id.* at ¶¶ 33-36; Docket Entry No.7 at ¶¶ 2-3, 27-36);

- traveling to Texas to launder the fraudulently obtained funds brought into the United States via cash transfers to the defendants' Texas coconspirator, (*see* Docket Entry No. 53-2 at ¶¶ 22-27; Docket Entry No. 7 at ¶¶ 3, 24, 37, 43); and

- paying credit card and other expenses of FM, who had fiduciary obligations to NOV in Houston, (*see* Docket Entry No. 53-2 at ¶¶ 22-27; Docket Entry No. 7 at ¶¶ 3, 30–33, 24, 37, 43; Docket Entry No. 53 at 9–10).[1]

---

[1] The defendants object to, and move to strike, portions of the declaration of Jason Pack, NOV's Vice President of Internal Audit, as vague, conclusory, or not founded on personal knowledge. (Docket Entry No. 63-1). The portions objected to were submitted under Federal Rule of Evidence 1006, which permits summaries of "voluminous writings . . . that cannot be conveniently examined in court." FED. R. EVID. 1006. To the extent Mr. Pack's statements are conclusory, they are conclusions based on summaries of underlying documents. To the extent they are not based on personal knowledge, they are drawn from Mr. Pack's personal investigation into NOV's business records and are admissible evidence. The defendants' motion is denied and their objections overruled. Nevertheless, the court has taken care to cite to the document-based assertions of Mr. Pack's declaration and has not relied upon his general conclusions.

The defendants note that telephone and e-mail communications, electronic wire transfers, and even occasional visits to the forum state may not establish personal jurisdiction in contract claims. *See, e.g.*, *G–2 Automated Tech., LLC v. Aleco, Inc.*, 2012 WL 2358147 (N.D. Tex. 2012). But they point to only two cases involving personal jurisdiction for intentional tort claims. (Docket Entry No. 72 at 8–9); *Rogers v. Tammariello*, No. 3:16-CV-1315-G, 2016 WL 6139099 (N.D. Tex. Oct. 20, 2016); *Viasystems, Inc. v. EBM-Papst St. Georgen GMGH & Co.*, 646 F.3d 589 (8th Cir. 2011). *Tamariello* concerned a single Texas contact, which was one wire transfer to Texas. *Tamariello*, 2016 WL 6139099 at *5. In *Viasystems*, the court found no personal jurisdiction because the communications to the forum state were both scattered and isolated. 646 F.3d at 594. But in this case, the allegations and the evidence show that the defendants' wire transfers and communications were not isolated, rare, or one-shot events, or that they were initiated by others. The allegations and evidence show numerous, frequent, recurring contacts, many initiated by the defendants. Under Fifth Circuit law, these contacts are sufficient for this Texas court to exercise specific personal jurisdiction over the defendants on the intentional tort claims. *See FCA Investments Co. v. Baycorp Holdings, Ltd.*, 48 F.App'x 480 (5th Cir. 2002) ("In cases alleging the intentional tort of fraud, the defendant's participation in a single telephone call is enough to establish personal jurisdiction if the content of the call gave rise to the fraud claim." (citing *Lewis v. Fesne*, 252 F.3d 352, 359 (5th Cir. 2001)); *see also Wein Air*, 195 F.3d at 213 ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *No. Tex. Opportunity Fund*, 107 F.Supp.3d. at 629 ("This situation is not one where the communications to Texas rest on nothing but the mere fortuity that the plaintiff happens to be a resident of the forum.") (internal quotation marks, citation, and alteration omitted).

The evidence also shows that defendants physically traveled to Texas multiple times and met

in Texas with their alleged coconspirator at least once. "[E]ven without other contacts, jurisdiction would exist if [the defendant] committed a tort while in the state." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007). Although the parties dispute whether the alleged coconspirators exchanged cash at an April 2012 dinner in Houston, the "court resolves all conflicts in the evidence in favor of the plaintiff." *Little*, 2014 WL 710841, at *3 (citing *Johnston*, 523 F.3d at 609). The evidence shows that Mr. Sadagopan withdrew $20,000 five days before the dinner and had the opportunity to transfer it among his associates at the dinner. In addition to the defendants' communications and dealings with NOV in Texas, the meeting between FM and the defendants in Texas evidences at least the defendants' purposeful availment of the privileges of conducting business in Texas. It also provides *prima facie* evidence that the defendants carried out an intentional tort while in Texas, meeting the first step of the specific jurisdiction test.

The defendants argue that exercising personal jurisdiction over them violates notions of fair play and substantial justice. (Docket Entry No. 45 at 9). At this step of the specific jurisdiction analysis, "[t]he burden of proof shifts to the defendant to show that the exercise of personal jurisdiction is unfair or unreasonable based on five factors: '(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies.'" *Seiferth*, 472 F.3d at 276 (quoting *Nuovo Pignone*, 310 F.3d at 380).

The defendants contend that exercising personal jurisdiction over them would require them to pay the high costs of litigating in the United States, including travel costs, making it unfair. (Docket Entry No. 45 at 10). But "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Wien Air*, 195 F.3d at 215

(citation omitted).  Even if substantial, the costs of traveling to, and defending this litigation in, the United States is not a persuasive reason to find jurisdiction lacking.  *See McFadin*, 587 F.3d at 763 ("The generalized difficulty in traveling to Texas is here not a burden violative of due process. . . ."). The defendants have not shown that the burden placed on them is unreasonable, unfair, or unjust.

The defendants argue that the United Arab Emirates has an interest in these proceedings. But under the second factor, the court considers the interests of the forum state—Texas—not the defendants' home state.  The defendants have failed to show that Texas lacks an interest in these proceedings. This argument against personal jurisdiction fails.

NOV argues that this court also has jurisdiction over the breach of contract claim under the pendent personal jurisdiction doctrine.  (Docket Entry No. 53 at 15).  Pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim."  *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) (citing *United States v. Botefuhr*, 309 F.3d 1263, 1272-73 (10th Cir. 2002)).  "The decision to exercise pendent personal jurisdiction is discretionary with the court."  *Gen. Elec. Capital Corp. v. Mackzilla, LLC*, No. CV H-15-2425, 2016 WL 1059529, at *5 (S.D. Tex. Mar. 17, 2016) (citing *id*. at 784).  "Although the Fifth Circuit has not yet addressed pendent personal jurisdiction, this district and every circuit to decide the issue have approved the doctrine."  *Id.* (citation omitted).

The basis of the breach of contract claim is that Mr. Sadagopan, Mr. Hamdan, and Mr. Zantout breached NOV's Business Ethics Policy and Code of Conduct by paying and receiving "bribes, payoffs, kickbacks and other considerations."  (Docket Entry No. 7 at ¶ 62).  This claim

arises out of the same facts NOV relies on for the intentional tort claims, so that "[a]ll of the claims clearly relate to the same course of dealing." (*Id*. at ¶ 61 (incorporating the facts referenced in ¶¶ 1-51)); *Mackzilla*, 2016 WL 1059529, at \*7; *see also Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 696 (S.D. Tex. 2011) (court allowed pendent personal jurisdiction over a contract claim because all the claims arose out of the dealings between the plaintiff and defendant over several years). Pendent personal jurisdiction is appropriately exercised over the contract claim against each defendant.

This court has specific jurisdiction over Mr. Sadagopan, Mr. Hamdan, and Mr. Zantout as to the claims asserted in this suit.[2]

## B. *Forum Non Conveniens*

The defendants alternatively move to dismiss under the doctrine of *forum non conveniens*, arguing that Dubai is the more appropriate forum. (Docket Entry No. 45 at 15). They argue that the private and public interest factors weigh in favor of dismissing this suit in favor of litigating the dispute in Dubai. (Docket Entry No. 45 at 15). The defendants have the burden of persuading the court that the balance of private and public interest factors "strongly favors dismissal." *Havel v. Honda Motor Europe Ltd.*, Civil No. 13-1291, 2014 WL 4967229, at \*19 (S.D. Tex. Sept. 30, 2014); *see also Raytheon Engineers & Constructors, Inc. v. H L H & Assocs. Inc.*, 142 F.3d 1279, 1998 WL 224531 at \*4 (5th Cir. 1998) ("The defendant's burden of persuasion runs to all the elements of the forum non conveniens analysis." (quoting *In re Air Crash*, 821 F.2d at 1164)). Otherwise, NOV's

---

[2] During discovery on jurisdiction, the defendants refused to disclose certain personal bank statements to NOV, leading to motions for sanctions, including an adverse inference. (Docket Entry No. 53 at 5–6). The court ruled in an earlier hearing that it could draw an adverse inverse from the undisclosed material. (Docket Entry No. 43). Because the record evidence sufficiently shows personal jurisdiction, the court need not draw any further inferences from the undisclosed bank statements. The motion for sanctions is denied as moot.

choice of forum should not be disturbed.[3] *Gulf Oil*, 330 U.S. at 508.

The private interest factors include:

(i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of [the] premises, if view would be appropriate to the action; and (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 657 (S.D. Tex. 2003) (citing *Gulf Oil*, 330 U.S. at 508; *In re Air Crash*, 821 F.2d at 1162).

The defendants argue that the relative ease of access to sources of proof weighs in favor of dismissal because the parties, witnesses, records, and evidence, including a large piece of equipment, are outside Texas. (Docket Entry No. 45 at 20). But while they may be outside of Texas, most of the parties, witnesses, and evidence are not in Dubai or even in the United Arab Emirates. NOV notes that "the relevant documents are in Texas, under NOV's control elsewhere, or under the defendants' control." (Docket Entry No. 53 at 21). Two of the defendants have left the United Arab Emirates, and the third is facing imminent departure. (Docket Entry No. 75 at 71). Of the other witnesses NOV identified in connection with its arbitration against FM, NOV notes that 30 are in the United States, 12 are in other countries, and only 8 are in the United Arab Emirates. (Docket Entry No. 53 at 21). Most of the witnesses in the United Arab Emirates are NOV employees who would be available to attend court in Texas. (Docket Entry No. 53 at 21); *Raytheon*, 1998 WL 224531 at *4 (witness availability did not weigh in favor of dismissal because the witnesses in Panama were employees of the plaintiff and "therefore [would] be readily available to attend court

---

[3] The strong presumption against disturbing NOV's choice of forum fully applies because NOV's principal place of business is in Houston, Texas, (Docket Entry No. 7 ¶ 7). *See Piper*, 454 U.S. at 255 (the ordinarily strong presumption in favor of the plaintiff's choice of forum "applies with less force when the plaintiff or real parties in interest are foreign").

in Houston"); *see also Reyna-Leyva v. Pesquera*, No. 2:16-CV-35, 2016 WL 6812938, at *2 (S.D. Tex. Aug. 24, 2016) ("Defendant employers can compel current employees to attend trial in far-flung locations.").  Although the witnesses and evidence in NOV's arbitration against FM may not precisely overlap with this litigation, the claims have the common element of alleging that the defendants conspired with FM and aided FM in breaching the fiduciary duty he owed NOV.  This common element makes the overlap in proof substantial.  (*See* Docket Entry No. 7 at ¶ 73).  Even if there were little overlap, the defendants have not met their burden to show that access to witnesses is easier in Dubai than in Texas.  Because the majority of documents and witnesses are either already in Texas or under the control of the Texas plaintiff, this factor weighs against dismissal.

On the second factor, the defendants make no attempt to show that Dubai has the compulsory processes necessary to secure the attendance of unwilling witnesses.  On the contrary, NOV asserts that United Arab Emirates courts do not allow oral witness testimony at all.  (Docket Entry No. 53 at 22).  Because most of the likely witnesses in this suit are already located or subject to process in the United States, and because the defendants fail to show the availability of compulsory process in Dubai for the attendance of unwilling witnesses, this factor also weighs against dismissal.

On the third private interest factor, the defendants argue that the possibility of viewing the premises favors Dubai because there is "at least one large piece of equipment . . . titled in Dubai." (Docket Entry No. 45 at 20).  But the defendants fail to explain why viewing this piece of equipment is relevant to the claims at issue.  This factor does not weigh in favor of dismissal.

The defendants argue that trying this case in Texas will be "unduly burdensome and costly for Defendants" in part because travel to the United States is expensive.  (*Id*. at 20).  But the defendants have left or are leaving Dubai.  (*Id.* at 15; Docket Entry No 75 at 71).  The fourth private interest factor does not weigh in favor of dismissal.

The defendants have failed to meet their burden of persuasion to show that the private interest factors weigh in favor of dismissal. They similarly fail to meet the public interest factors test. These factors include:

> (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having a the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Zermeno*, 246 F. Supp. 2d at 658 (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999); *In re Air Crash*, 821 F.2d at 1162-63).

The defendants argue that Dubai has an interest in resolving this matter; that the law of the United Arab Emirates governs; and that Dubai courts are more familiar with this law than Texas courts. (Docket Entry No. 45 at 21). NOV disputes whether United Arab Emirates law applies. (Docket Entry No. 53 at 22; 24). The court need not resolve the choice-of-law dispute at this stage. Texas has a strong interest in resolving this case because it involves claims to defraud and deceive a Texas company. (Docket Entry No. 53 at 24). The United Arab Emirates has comparatively less interest in adjudicating a dispute that involves former residents of the country. Even if United Arab Emirates law applies, that factor is not dispositive. *Innovation First Int'l, Inc. v. Zuru, Inc.*, 513 F. App'x 386, 391 (5th Cir. 2013) (citation omitted). Court are often called upon to identify and apply foreign law, and there is no shortage of expert sources of information on that law.

The defendants contend that ongoing proceedings in Dubai would make litigation here "repetitious and wasteful." (Docket Entry No. 45 at 18). They allege that NOV has "instigated" criminal prosecutions against the defendants in Dubai, and they note that the defendants themselves have initiated proceedings in the Emirates Labor First Instance Court. (*Id*. at 3, 9). They argue that these proceedings involve the same facts as the Texas litigation, and that NOV must file its

counterclaims in the Emirates Labor Court instead of asserting them here. (*Id*. at 18). But the fact that NOV reported suspected criminal activity to the local authorities does not weigh against exercising jurisdiction in this civil action in Texas. The defendants do not argue that NOV can recover an adequate remedy from criminal proceedings. In fact, they note that the criminal proceedings have already closed. (*Id*. at 3). As for the Labor Court proceedings, the defendants note that they—not NOV—filed those cases on June 8, 2016, almost a month after NOV initiated this litigation in Texas state court. (*Id*. at 2). In deciding whether principles of international comity require a United States court to defer to parallel proceedings elsewhere, courts must look in part to "the order in which the actions are filed." *See, e.g.*, *Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.*, 466 F.3d 88, 94 (2d. Cir. 2006). The defendants here cannot use a later filed proceeding that they initiated to dislodge this court's jurisdiction.

The defendants have not met their burden of persuasion to show that the public interest factors weigh in favor of dismissal to Dubai. Taken together, the private and public interest factors weigh against dismissal in favor of litigation in Dubai. None of the defendants' objections to litigating in Texas are enough to dislodge the presumption for NOV's forum choice. *See Piper*, 455 U.S. at 255. Though "dismissal may be unwarranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law," NOV has demonstrated that its choice of a Texas forum was not to harass, impose favorable law that has no other connection to the parties or the dispute, or was otherwise arbitrary or improper. *Piper*, 454 U.S. at 249 n.15. The defendants have failed to show that "overall, the convenience of the alternative forum outweighs the appropriate deference shown to the plaintiff's choice of forum." *Royal Ten Cate USA, Inc. v. TT Inv'rs, Ltd.*, 562 F. App'x 187, 190 (5th Cir. 2014) (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 830 (5th Cir.

1986).  The request for dismissal under *forum non conveniens* to Dubai is denied.[4]

## IV.    Conclusion

This court has personal jurisdiction over the defendants as to NOV's intentional tort claims, and the court extends pendant personal jurisdiction over the breach of contract claims.  The defendants' motion to dismiss, (Docket Entry No. 45), is denied.  A scheduling conference is set for **July 28, 2017 at 10:00 a.m.**

SIGNED on July 11, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

---

[4] The parties submitted conflicting expert reports as to whether Dubai is an available and adequate forum, as federal case law defines the term.  It is not necessary to resolve this dispute, because the other factors of the *forum non conveniens* test weigh heavily against dismissal in favor of litigation in Dubai.