IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NATIONAL OILWELL VARCO, L.P., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. H-16-2261 |
| SADEESH SADAGOPAN, § | |
| MAJED HAMDAN, and § | |
| KHALED ZANTOUT § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

National Oilwell Varco sued three former employees, alleging that they committed fraud, breach of contract, and breach of fiduciary duties by causing NOV to enter into inflated contracts that gave them kickbacks and handsome profits. (Docket Entry No. 97). The defendants allegedly conspired with a former coworker, FM, who is not a party to this case. FM had an employment contract that required any disputes with NOV to be resolved in arbitration. The defendants did not have contracts with NOV that contained arbitration clauses. FM timely invoked the arbitration clause in his employment contract and began confidential arbitration proceedings.

Since them, the defendants have filed motions challenging this court's personal jurisdiction over them and seeking dismissal or transfer under forum non conveniens. The parties engaged in, and filed motions contesting, discovery targeted to the threshold issues. The court found that it had jurisdiction over the three former employees and that venue was proper in this district. (Docket Entry No. 77).

Two of the former employees, Majed Hamdan and Khaled Zantout, have, with new counsel,

1


recently decided that they are entitled to arbitrate rather than litigate the claims NOV asserts against them. (Docket Entry No. 109). The third former employee, Sadeesh Sadagopan, has moved to join the motion to dismiss or stay in favor of arbitration. (Docket Entry No. 110). His motion to join is granted. The defendants assert that although they are not parties to the contract between NOV and FM that contained the arbitration clause, NOV's claims against them are so intertwined with the claims against FM that the doctrine of intertwined-claims equitable estoppel entitles them to compel NOV to arbitrate. (Docket Entry No. 109 at 8–13). NOV opposes dismissal or stay in favor of arbitration. (Docket Entry No. 111).

The motion and response, the record, and the applicable law lead the court to conclude that it, rather than an arbitrator, must decide whether these nonsignatories can compel a signatory to an arbitration contract that they are not parties to; that these nonsignatories cannot use equitable estoppel to compel NOV to arbitrate claims it did not agree to resolve against these parties in that forum; and that the employees' litigation conduct waived any right to invoke arbitration they may have had. The motion to dismiss or stay in favor of arbitration is therefore denied. (Docket Entry No. 109). The reasons are set out below.

I. **The Arbitration Provisions in NOV's Contract with FM**

NOV's employment contract with FM contains several provisions relevant to arbitration. In the contract, FM and NOV:

> hereby agree that any dispute, controversy, or claim arising out of or relating to this Agreement, the employment relationship between [FM] and [NOV] or the termination thereof or the arbitrability of any controversy or claim, will be finally settled by confidential and binding arbitration . . . conducted in accordance with the Arbitration Rules of the American Arbitration Association.

(Docket Entry No. 109. Ex. 3-A, § 10(a)).

>FM and NOV agreed to be bound by the results of the arbitration between them:

>> . . . [FM] and NOV agree that this Section 10 has been adopted by [FM] and NOV to rapidly and inexpensively resolve any disputes between them and that this Section 10 will be grounds for dismissal of any court action commenced by either party arising out of or relating to this Agreement, the employment relationship between [FM] and [NOV] or the termination thereof or the arbitrability of any controversy or claim, other than (i) post-arbitration actions by either party seeking to enforce an arbitration award. . . .

*Id.* at § 10(b). Section 10(c) requires NOV to pay FM for arbitration expenses if the award is in FM's favor; and § 10(d) requires NOV and FM to keep the details of an arbitration proceeding confidential to the extent the law permits.

The employment agreements between NOV and the defendants do not include arbitration provisions.

## II. Who Decides Arbitrability?

A district court decides whether all or part of an action should be sent to arbitration by first looking at contract formation—whether the parties entered into any arbitration agreement at all—and then determining whether a claim is covered by the arbitration agreement. A threshold issue is what challenges to arbitrability are for the court to determine, and what challenges are for the arbitrator. *Vallejo v. Garda CL Sw., Inc.*, 948 F. Supp. 2d 720, 725 (S.D. Tex. 2013), *aff'd*, 559 F. App'x 417 (5th Cir. 2014). Arbitration is a matter of contract. Generally, a party cannot be required to arbitrate absent an agreement to do so. *First Options of Chi. v. Kaplan*, 514 U.S. 938, 943 (1995). If the parties did enter a contract to arbitrate, and that contract contains a clause delegating the decision of whether a given claim is within the scope of the arbitration clause to the arbitrator rather than the court, the court's work is over, and the arbitrator decides both whether the claim is arbitrable and, if so, what the merits result should be. The question here is whether the

court or the arbitrator decides whether the defendants can require NOV to arbitrate despite the absence of any contract requiring these parties to do so. The defendants rely on the delegation clause in the arbitration agreement between NOV and FM to argue that it applies not only to determining whether NOV's claims against the defendants are within the scope of that agreement, but also to determining whether the defendants can rely on intertwined-claims equitable estoppel to require NOV to arbitrate. (Docket Entry No. 109 at 7, 9, 12).

The defendants cite cases that address delegation clauses in arbitration contracts between both the party seeking to arbitrate and a party who may be resisting. If FM was seeking to compel arbitration, he would have a compelling argument that once the court found that FM and NOV had a contract to arbitrate and that it contained a delegation clause, the precise issues to be arbitrated were for the arbitrator to determine. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010); *see also Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). But the issue here is not whether two signatories who agreed to arbitrate against each other may be required to do so, but whether one party can compel another to arbitrate absent an agreement to do so. The defendants do not cite a case that applies the law on delegation clauses to this context. The cases that do address using equitable estoppel to allow a nonsignatory to an arbitration agreement to enforce that agreement against a signatory treat this gateway issue as for the court to determine, except in circumstances not present here. Whether the defendants, as nonsignatories, may enforce NOV's agreement to arbitrate with FM as if it were an agreement to arbitrate with them is a matter for the court, not an arbitrator, to decide. *Qpro Inc. v. RTD Quality Services USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011) ("When, as here, the issue is whether a nonsignatory to an arbitration clause may enforce it against a signatory, the courts

4

have viewed that as a matter for the court to decide." (citing *Arthur Andersen LLP v Carlisle*, 556 U.S. 624 (2009)).

The narrow circumstances in which a court will enforce a delegation clause when a nonsignatory is seeking to compel arbitration are not present here. One circumstance is when the nonsignatory seeking to compel a signatory to arbitrate arbitrability stands in the shoes of another signatory to the agreement. *See Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 470–74 (1st Cir. 1989). When, for example, a nonsignatory defendant is a bankruptcy assignee of the original signatory, or a successor entity to the signatory, the court will treat the contract as between the nonsignatory and signatory and enforce a delegation clause in that contract. *Id.*; *see also Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 207 (2d Cir. 2005).

The defendants are not successors or assignees of FM. They do not stand in his shoes; they had their own, separate employment agreements with NOV, that did not include arbitration provisions. The court cannot treat the FM arbitration agreement with NOV as if it were an arbitration agreement between NOV and the defendants. And because the party seeking to compel arbitration is not a signatory to a contract with a delegation clause, the cases that enforce the clause in that circumstance do not apply. *See, e.g.*, *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 713 (5th Cir. 2017).

NOV agreed to arbitrate its claims against FM and agreed that the arbitrator would decide whether specific claims were covered by the arbitration clause. *See* (Docket Entry No. 109. Ex. 3-A, § 10). NOV did not agree to arbitrate its claims against the defendants and did not agree to delegate the arbitrability of those claims to the arbitrator. The defendants rely on the court's equitable authority to require NOV to arbitrate because of the relationship of the claims against FM and

5

against the defendants. Whether intertwined-claims equitable estoppel applies here is for the court to determine, not the arbitrator.

## III. Does Equitable Estoppel Apply?

The most recent Fifth Circuit case about intertwined-claims estoppel is *Hays v. HCA Holdings, Inc.*, 838 F.3d 605 (5th Cir. 2016). The court considered, as a matter of first impression requiring an *Erie* guess, whether and when intertwined-claims estoppel can require arbitration, concluding that this doctrine applied only if there "is a 'tight relatedness of the parties, contracts, and controversies.'" *Id.* at 610 (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004)). Hays was an employment dispute. The plaintiff, a doctor, had an employment and arbitration agreement with some of the defendants, but not as to another defendant. *Id.* at 608. When he pursued litigation as to this defendant, it moved to compel arbitration. *Id.*

The court emphasized that Hays's pleadings set out "virtually indistinguishable" factual allegations, treating two different defendants in arbitration and litigation "as a single unit" and "as if they were interchangeable." *Id.* at 612–13. Hays's complaint and his counter-demand in arbitration "use[d] almost identical language, substituting only the names of the defendants." *Id.* at 612. Because Hays did not differentiate between parties and because all his claims "relate[d] to his alleged wrongful termination, intertwined with the underlying contractual obligations of the Agreement," the court held that those claims were arbitrable under intertwined-claims estoppel. *Id.* at 613. The court noted that the doctrine was intended precisely for the type of case Hays presented:

> Hays's current efforts to distinguish amongst defendants and claims are the archetype of strategic pleading intended to avoid the arbitral forum, precisely what intertwined claims estoppel is designed to prevent. We hold that the district court did not abuse its discretion in applying intertwined claims estoppel to compel Hays to arbitrate his remaining claims.

*Id.* at 613.

The Second Circuit case that the Fifth Circuit relied on, *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004), explains that the estoppel inquiry is "fact-specific" and cites case law permitting estoppel "when the merits of a dispute a nonsignatory sought to arbitrate were 'bound up with' and 'linked textually to' the terms of the contract that included the arbitration clause." *Id.* at 178 (citing *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 407 (2d Cir. 2001)).

The present case is different from both *Hays* and *JLM Industries*. In the present case, the defendants were employees of the same employer as FM. That is not the type of "close relationship" the doctrine applies to. *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193–94 (Tex. 2007). The defendants are not FM's principals or agents, affiliates, or assignees. They are independent individuals who allegedly conspired with one another and others to defraud a common employer, but that is not the type of close relationship the intertwined-claims estoppel cases describe. And this is not a strategic-pleading-to-avoid-arbitration case; NOV did not sue the defendants to avoid arbitrating or litigating with FM. Second, NOV's claims against the defendants are not "intimately founded in and intertwined with the underlying contract obligations." *In re Merrill Lynch*, 235 S.W.3d at 193–94 (quotations omitted). Not only are different contracts involved, but the claims for the defendants' alleged fraud do not depend on, and are not intertwined with, their underlying employment agreements.

In a case decided before *Hays*, the Fifth Circuit rejected an intertwined-claims estoppel argument. *USHealth Grp., Inc. v. South*, 636 F. App'x 194 (5th Cir. 2014) (per curiam). The plaintiffs argued that the claims against signatories and nonsignatories should be arbitrated together

to "prevent 'factual and legal whipsaw.'" *Id.* at 203. That case was different in that a signatory was attempting to compel a nonsignatory to arbitrate. The court held that the plaintiffs provided "no authority to support their contentions that such inseparability would warrant compelling a non-signatory to participate in arbitration, either as a standalone theory or as an equitable ground for such relief . . . ." *Id.* The court extended the distinction to the context of "concerted misconduct estoppel," noting that it too "only applies to keep a signatory from avoiding its arbitration agreement. . . . We specifically noted that the reverse does not hold true: a signatory may not use the same logic to estop a non-signatory from avoiding arbitration." *Id.* at 199 (emphasis omitted). In this case, however, NOV is not attempting to avoid an arbitration agreement with the defendants, or suing to avoid arbitrating with FM. The problem that these equitable estoppel doctrines were meant to address is simply not present here.

Equitable estoppel does not apply as a basis to require NOV to arbitrate the claims it has asserted against the defendants in litigation.

## III. Have the Defendants Waived Any Right to Invoke Arbitration?

Although parties may have an agreement to arbitrate, "[t]he right to arbitrate a dispute, like all contractual rights, is subject to waiver." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir.2009). Under this circuit's precedent, a party waives its right to arbitrate if it (1) "substantially invokes the judicial process" and (2) thereby causes "detriment or prejudice" to the other party. *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir.1986). However, in light of the federal policy favoring arbitration, "[t]here is a strong presumption against finding a waiver of arbitration." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004); *Al Rushaid v. National Oilwell Varco, Inc.*, 757 F.3d 416, 421–22 (5th Cir. 2014).

8

The Fifth Circuit has also addressed the extent to which a party must engage in litigation in order to waive its right to arbitration. The first question is whether the party has "engage[d] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (quotations omitted). Seeking a decision on the merits, seeking the court's intervention to enforce discovery rights and obligations, and filing frequent motions seeking court action, can contribute to a waiver finding. *See, e.g.*, *Janvey v. Alguire*, 847 F.3d 231, 243–44 (5th Cir. 2017). The second question is whether permitting arbitration after extensive litigation activities would prejudice the other party. *Miller Brewing*, 781 F.2d at 497.

NOV lists the litigation activity of the defendants. (Docket Entry No. 111 at 17–18). It is a long list. They filed motions to dismiss NOV's claims (Docket Entry Nos. 2, 45); they sought jurisdictional discovery from NOV, (Docket Entry No. 29), and sought the court's intervention in compelling that discovery and in seeking protection from some of the jurisdictional discovery NOV sought from them or from third parties, *see, e.g.*, (Docket Entry No. 65); and they asked the court to certify a ruling denying dismissal for an interlocutory appeal to the Fifth Circuit, (Docket Entry No. 79). It was not until two things occurred that they switched from litigating to seeking to arbitrate. First, they were unsuccessful in their jurisdictional and forum non conveniens challenges and in resisting discovery. Second, the arbitration involving FM ended. When, as here, a party waits to see how it will fare in court and, if disappointed, then seeks arbitration, a court is likely to find that it waived that right. To allow a "second bite at the apple through arbitration . . . would encourage litigants to delay moving to compel arbitration until they could ascertain how the case was going in federal district court." *In re Mirant*, 613 F.3d at 590 (quotations omitted). Such an

attempt to play "'heads I win, tails you lose' . . . is the worst possible reason for failing to move for arbitration sooner than [they] did." *Id.* To be sure, the individual defendants brought in new counsel, and that fresh look produced the effort to arbitrate. But the second bite effect is clear.

The second question is whether the move to arbitration would prejudice NOV. The cases make clear that prejudice can take the form of heavy legal expenses incurred in responding to the movants' litigation conduct; of allowing a party the advantages of discovery through litigation that would be unavailable in arbitration; the costs attendant to delay; and the risk of relitigating issues the court has already decided. All these are present here. In addition, the delay in seeking arbitration means that the efficiency of a joint arbitration with FM has been lost.

The present record amply discloses both extensive litigation conduct inconsistent with a desire to arbitrate and prejudice if the court were now to permit arbitration. The result is waiver.

## IV. Conclusion

Sadagopan's motion for joinder, (Docket Entry No. 110), is granted. The motion to dismiss or stay in favor of arbitration, (Docket Entry No. 109), is denied.

SIGNED on January 3, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge