# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISON

| | | |
|---|---|---|
| **NATIONAL OILWELL VARCO, L.P.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **No. 4:16-cv-02261** |
| **SADEESH SADAGOPAN, MAJED** | § | |
| **HAMDAN, and KHALED ZANTOUT** | § | |
| **Defendants.** | § | |

---

## EXPERT DECLARATION OF ABED AWAD

---

I, **Abed Awad, Esq.**, declare:

1.     My name is Abed Awad. I make this declaration based on my personal knowledge, and the information presented herein is true and correct.

2.     I am being compensated at the rate of $675 per hour for my work, independent of the opinions reached.  Attached hereto as *Exhibit A* is my resume.  Attached hereto as *Exhibit B* is a list of my expert testimonies/depositions for the last four (4) years.

3.     In light of my academic and legal experience in connection with laws of the United Arab Emirates (hereinafter "UAE" or "Dubai"), comparative law, Islamic law, and laws of Arab countries in general, counsel for National Oilwell Varco LP (hereinafter "NOV")  have asked me to provide opinions about whether courts in the UAE are an available and adequate forum for NOV's civil action against its former employees.

Case 4:16-cv-02261   Document 53-1   Filed in TXSD on 03/06/17   Page 2 of 40

4.      More specifically, they have asked me to opine on the following questions:

    i.      NOV's tort and breaches of contract causes of action arose out of and caused damage in Texas.  Would Dubai courts apply Texas law to these causes of action?

    ii.      Does Dubai law recognize NOV's causes of action?

    iii.      Does Dubai law require all submissions to the court, including all evidence, exhibits, and supporting documentation, to be translated into Arabic?

    iv.      Does the Dubai court hear live testimony at a trial and are litigants entitled to propound discovery (interrogatories, notices to produce, requests for admission, and/or notices to depose parties and third parties)?

    v.      Does the UAE suspend a civil action if a criminal matter involving the same parties is under investigation?

    vi.      Is NOV required under Dubai law to file a counterclaim in a Labor Case filed by the employees against it?

5.      It is my expert opinion that Dubai is not an available and adequate forum to determine NOV's causes of action for the following reasons:

    i.      Dubai courts will apply Dubai law, even though Texas law governs the majority of NOV's causes of action, because Dubai lacks a developed conflict of laws jurisprudence.  This is combined with the difficulty of proving Texas common law, which would require the translation of Texas statutes and case law into Arabic.

    ii.      The majority of NOV's causes of action do not exist under Dubai law.

    iii.      Dubai law requires that all submissions to the court be translated into Arabic, including all evidence, exhibits, and supporting documentation.  This is a monumental undertaking from a cost and time perspective.

    iv.      Dubai law does not permit discovery similar to Texas; in fact, Dubai jurisprudentially is opposed to discovery inasmuch as a litigant is not required to disclose any documents or evidence that support the claims of his opponent.  NOV is not permitted to propound interrogatories, notices to produce, requests for admission, or deposition notices, or send out subpoenas.

    v.      The Dubai court would suspend a civil action if a criminal matter involving the same parties was under investigation.

**Ex 2**

vi. Dubai law does not require NOV to file a counterclaim in the pending Labor Case in Dubai.

6. For the above reasons, it is my expert opinion that Dubai is not an available and adequate forum for NOV's action. The details and supporting authorities for my conclusions are set forth below.

## QUALIFICATIONS

### General Background and Education

7. My resume, attached hereto and made a part hereof as *Exhibit A*, sets forth my general education. I have a Bachelor of Arts in Political Science from Saint Peters' College. I also completed graduate courses at Columbia University, and I have graduate degrees from the University of London. My work at the University of London (School of Oriental & African Studies) included obtaining a graduate certificate in Comparative Law and a Masters degree in Near and Middle Eastern Studies (Islamic Studies). I received my law degree from Pace University School of Law in New York.

8. During law school, I focused the majority of my elective courses on comparative and international law. I was a managing editor of the Pace International Law Review. I have published on various areas of the law, including comparative law. After graduating from law school, I clerked for the Honorable George E. Sabbath, New Jersey Superior Court (Family Part and rotated in the Civil Part motion calendar).

9. I am fluent in both Arabic and English. I spent nine continuous years living in the Middle East. I attended elementary and high school in Arabic while residing in the West Bank, Palestine. Through my education and unique background, I developed fluency and expertise in

the study, understanding, and analysis of legal and cultural matters involving the legal systems of Muslim majority countries, like the United Arab Emirates.

*Academic and Practical Experience*

10.     I am admitted to practice law in New Jersey and New York. I established my law practice immediately after completing my clerkship in 1999.  With my international contacts, my native fluency in Arabic, and knowledge of the laws throughout the Middle East, North Africa, and South Asia, I attracted foreign and local clients with specific religious, language, and legal needs.

11.     I am founding partner of Awad & Khoury, LLP, in Hasbrouck Heights, New Jersey.  I have a diverse civil litigation law practice, including matrimonial law (with a focus on international and multi-jurisdictional law), commercial litigation, international and comparative law, and Islamic law.

12.     I am "AV" rated by Martindale Hubbell and I am a Fellow of the International Academy of Matrimonial Lawyers.

13.     My teaching career has focused primarily on international legal systems and the laws of Muslim countries. In particular, I have taught at Rutgers Law School as an adjunct professor since 2003. My courses include Islamic Jurisprudence (relating to both historical and modern Muslim-majority legal systems), Islamic Banking and Finance, and Matrimonial Litigation. I taught Islamic Jurisprudence at Pace Law School from 2009 through 2012. In 2011, I taught an intensive five-week Islamic Banking and Finance course for Seton Hall Law School's Study Abroad program in Amman, Jordan.  I have also lectured to American and Middle Eastern judges about comparative law.

14.     In 2010, the United States Commerce Department retained me to conduct a workshop for Iraqi commercial judges about the Recognition and Enforcement of Foreign

Money Judgments under American law and Middle Eastern Law. One of the primary objectives of the workshop was to explain to Iraqi judges the key points that American judges consider before recognizing foreign judgments. In 2010, I also conducted a workshop for Michigan state court judges examining Islamic family law and culture in American courts, which included discussions about conflicts of laws and jurisdiction.

15.     I am the U.S. Editor for ShariaSource. I am responsible for collecting and commenting on anything related to Islamic law in America. ShariaSource is a new initiative of Harvard Law School's Islamic Legal Studies Program. ShariaSource has editors around the world. ShariaSource will provide an online portal of resources and analysis on Islamic law in cooperation with scholars of Islamic law and policy in the United States and around the world. ShariaSource aims to be the go-to site for researchers, journalists, and policymakers as well as generally interested readers seeking knowledge about the complexities of Islamic law.

16.     Over the years, I have developed unique expertise and insight into different legal systems around the world. As part of my CLE lecturing, teaching, research, and writing, I have studied and researched the laws and legal systems of France, Great Britain, Egypt, Jordan, Morocco, Syria, Palestine, Iran, Saudi Arabia, the United Arab Emirates, Iraq, Lebanon, Pakistan, Bangladesh, India, Oman, Djibouti, and Mali, among others.  I also have substantial experience in litigation involving Muslim-majority countries' legal systems and laws.

17.     Therefore, I base my conclusions below on more than two decades of expertise in studying Islamic law, the laws of Muslim majority countries, and the cultures of the Muslim world, including the UAE. In addition, I have native fluency in the Arabic language.

18.     I have testified as an expert witness on foreign law in various American courts more than 40 times.  A list of the most recent cases for which I served as an expert witness is attached hereto as *Exhibit B*.  No American court has rejected me as an expert on foreign law.

**Brief Introduction to Dubai**

18.     The United Arab Emirates is a federation of seven emirates - Abu Dhabi, Dubai, 'Ajman, Al Fujayrah, Al-Shariqah, Umm al Qaywayn, and Ras al Khaymah.  It was established on December 2, 1971. Islam is the official religion of the UAE. Arabic is the national and official language of the country.

19.     Dubai is the most populous city among the federation and has rapidly emerged as the financial hub in the Middle East. The population of Dubai is approximately 1.8 million people. Dubai Arab natives (Emirati) are less than 15% of the population of Dubai. The vast majority - more than 85% of the population - are expatriates from around the world.

20.     The non-UAE residents are transient residents. Once their employment assignment concludes or their employment terminates, they return to their country of citizenship. Residing in Dubai is never permanent. You live in Dubai to make money, save it, and return home. The turnaround of expatriates is high. This is confirmed in this matter where defendant Sadeesh Sadagopan returned to his home country of India and defendant Majed Hamden returned to his home country in Lebanon. They no longer reside in Dubai.

**UAE Legal System**

21.     The UAE's legal system is a civil law system based on Egyptian law[1], Civil Law (French), and Islamic Law (Sharia)[2]. The Dubai court system is composed of trial level courts, appellate courts, and the court of cassation, which is the highest court of the land in

---

[1] Egyptian law is the most developed law among the Arab countries. Egypt adopted a Civil Code based on the French Code in the 1940s. The drafter of the Egyptian Civil Code was Al-Sanhuri. Most legal scholars consider him the most influential jurist in the Arab world. Not surprisingly, Al-Sanhuri was on the civil code drafting committee for many Arab countries. Egypt thus became the model legal system in the Arab world. With a substantial output of legal knowledge and expertise in Egypt, most Arab judges from around the Arab world consult the decisions of the Egyptian Court of Cassation regularly.

[2] Articles 1 of the UAE Civil Code provides that if there is no express provision applicable to an issue, Islamic law governs; and Article 2 of the UAE Civil Code provides that Islamic law is to be utilized to understand the provisions of the UAE Civil Code.

Dubai. Dubai Courts do not generally follow the common law principle of *stare decisis*; the decisions of the Court of Cassation – the highest court in Dubai – are persuasive authority and provide guidance for the lower courts on the interpretation of the law. Also, the opinions of scholars explaining the codes are persuasive authority.

### DUBAI IS NOT AN AVAILABLE AND ADEQUATE FORUM TO DETERMINE NOV'S CAUSES OF ACTION FOR A VARIETY OF REASONS

**Texas law governs NOV's action; the majority of the witnesses & evidence are in Texas**

22.     In Counts 1-3 and 5-6 of the Complaint, NOV asserts several intentional torts against the NOV Employee Defendants: fraud, fraud by nondisclosure, conspiracy, breach of fiduciary duty, and aiding and abetting.  *See* Compl. ¶¶ 52-60 and 65-75.  NOV's tort claims are alleged to arise from the NOV Employee Defendants' contacts with Texas, as can be seen below:

a.   NOV's fraud claim (Count 1) arises from the NOV Employee Defendants' fraudulent misrepresentations to NOV personnel located in Houston, Texas regarding the sham contracts with shell companies.  *See* Compl. ¶¶ 52-54;

b.   NOV's fraud by nondisclosure claim (Count 2) arises from the NOV Employee Defendants' corresponding failure to disclose the details of the sham arrangements with their financial interests during their communications with NOV personnel located in Houston, Texas.  *See* Compl. ¶¶ 55-57;

c.   NOV's conspiracy claim (Count 3) arises from the NOV Employee Defendants' actions in conspiring with their Texas-based co-conspirators and one another to defraud their Texas-based employer.  *See* Compl. ¶¶ 58-60;

d.   NOV's breach of fiduciary duty claim (Count 5) arises from the NOV Employee Defendants' fraudulent misrepresentations, nondisclosures, and conspiracy against NOV, which breach those defendants' fiduciary duties to their Texas-based employer.   *See* Compl. ¶¶ 65-69; and.

e.   NOV's aiding and abetting claim (Count 6) arises from the NOV Employee Defendants' active assistance to FM, the former NOV executive based in Houston, Texas, in defrauding NOV.  *See* Compl. ¶¶ 70-75.

24.     The above factual allegations are anchored in Texas. This combined with involvement of witnesses as FM, William B. Ewing (a Texas resident), and Ewing Construction Company, Inc. (a Texas corporation) makes it crystal clear that much of Defendants' actionable conduct as pleaded by NOV occurred in, was directed toward, and/or caused damage in Texas. In this case, according to Texas law, Texas law would govern NOV's causes of action. Dubai courts, however, will not apply Texas law; they will apply Dubai law on NOV's causes of action. I discuss this issue in detail below.

25.     According to NOV, many of its expected witnesses, and key witnesses for that matter, are located in Texas and within the subpoena range of the Texas courts.  FM is domiciled in Texas. It is clear from the Complaint that FM was the primary co-conspirator in the NOV Defendants' fraudulent scheme for years. William B. Ewing and Ewing Construction Company, LP are domiciled in Texas as well. Both are pleaded to have been active in the fraudulent scheme against NOV. NOV corporate witnesses, including, but not limited to, NOV representatives from the CFO to representatives from Accounting to the General Counsel (himself a fact witness) are all in Texas. Further, it is my understand that defendants Sadeesh Sadagopan and Majed Hamden no longer reside in Dubai.

26.     Proceeding in Texas is even required logistically and practically because the language of the Dubai courts is Arabic. The entire proceeding must be conducted in Arabic. The parties' submissions and proofs, including exhibits, expert reports, all supporting documentation of any sort, every single piece of paper must be translated into Arabic by a certified translator. Failure to provide translation bars the admission of the documents. *See, e.g.*, Cassation Case No. 410/2011 (confirming that Article 42 and 45 of the UAE Code of Civil Procedure require the litigants to translate into Arabic all foreign documents in support of defenses and claims by a certified translator). Additionally, all documents issued by the Court and documents submitted

by NOV's Dubai counsel and by Defendants' counsel would have to be translated into English
for NOV to adequately participate and keep abreast of the Dubai action.

27.     The NOV action as pleaded involves a fraudulent scheme stretching back ten
years. There will likely be a great many documents. It would be cost and time prohibitive to
translate all of the documentation.

28.     As noted above, Dubai courts will not apply Texas law in the NOV action.  While
theoretically, UAE law may provide that the law of the jurisdiction where the tort occurred is the
law to be applied to the action (Article 18 and 20, UAE Civil Code), in practice UAE courts do
not apply foreign law for various reasons. First, I will assume for argument purposes only that
according to UAE law Texas law would apply to NOV's tort causes of actions (NOV tort causes
of actions do not exist under Dubai law ¶¶30-34 below). UAE law requires NOV to translate into
Arabic all of the laws in Texas regarding tort causes of action, including statutes and case law.
The Dubai court has discretion to decide whether NOV proved Texas law and whether Texas law
violates Dubai public policy (which includes Islamic law), hence it would not apply.  Article 27,
UAE Civil Code (foreign law does not apply if it violates Islamic law, UAE public policy, and/or
morals).  If Texas law was not proven clearly to the Dubai Court, the law is considered
ambiguous, or if the law violated public policy or Islamic law, Dubai courts will apply Dubai
law. Article 28, UAE Civil Code (if the court is not satisfied with proof of the foreign law, the
court will apply UAE law). Not only is translating the entire tort system of Texas a monumental
undertaking, successfully proving the well developed Texas civil tort law to a Dubai court is not
likely.  Except in a few family law matters (which involved other Arab countries with similar
family laws), it is rare to find any published decisions where the Dubai court actually applied
foreign law. Second, NOV's causes of action sound both in contract and tort. Pursuant to Dubai
law, as a general rule and with rare exceptions, a litigant is not permitted to plead tort causes of

action where the parties have a contractual relationship. In that case, the contract causes of action control in all respects: governing law, remedies and damages.  While Texas conflict of laws would require the Texas court to apply Texas law on the majority of NOV's causes of action, UAE law would require the Dubai court to apply UAE law on NOV's entire action. The result would be that all of NOV's tort claims would disappear. *See, generally*, Dr. Abdullah Saif Al Suboosi, *The Interaction between Tort and Contract for Choice of Law Purposes*, pp. 10-11 (2015) ("In the UAE domestic law, it is well established that such interaction between tort and contract is not allowed. Accordingly, the plaintiff in any claim that might be counted as a tort or a contract can only sue in a contract rather than a tort, according to the principle of the 'binding force of the contract'. This is without any possibility to bring proceedings in tort rather than a contract, even if the tortious claim was more favorable to the plaintiff. [ . . .] . Accordingly one could say that in the case of an employment contract where a related tort occurred, the court seized would consider the claim as a contractual and subject it to the law of the contract."). *See, also,* John Gaffney, *Choice of Law and Jurisdiction Provision in the UAE* (observing that "where the UAE courts have jurisdiction, they will usually apply UAE law instead of the governing law chosen by the parties").

29.     The legal commentator heavily relied upon by Professor Martinez confirms my opinion.

> There are also no laws in the UAE which deal with the complicated nature of the conflicts of law concerning application. In principle, the law in the UAE recognizes the parties' autonomy for the choice of law clause; however, in practice (with the exception of family law matters), it is almost impossible to apply foreign law to a transaction in connection with an action heard before the UAE court. In most cases, the courts in the UAE will apply the local law and will have little or no regard to the foreign law in the absence of evidence provided by the parties of the provisions of the foreign law to which they have agreed. Essam Al

Tamimi, *Practical Guide to Litigation and Arbitration in the United Arab Emirates,* p. 30 (2003: Kluwer Law International).

**Dubai law does <u>not</u> recognize the majority of NOV's causes of action.**

30.    UAE law does not recognize a cause of action for breach of fiduciary duty.  The defendants are mere employees. While they have an obligation to loyalty and honesty in their employment with NOV under UAE law, a breach of this is not an independent cause of action like breach of fiduciary duty. This concept for civil compensation does not exist. In Dubai, it would sound in criminal law.

31.    UAE law does not recognize a civil cause of action for fraud. This is a criminal matter. If the Defendant is convicted of a crime, then the victim or plaintiff would pursue a civil action for any direct losses, and, even then, the civil matter will likely be stayed pending final determination of the criminal matter. Article 102, UAE Code of Civil Procedure.

32.    More important, the determination of the criminal matter impacts the civil action. The civil action would not sound in civil fraud because there is no civil fraud cause of action. The same applies to NOV's cause of action for fraud for non-disclosure. And, aiding and abetting does not exist as a cause of action in Dubai, either. Only the person directly responsible would be held liable. This would fall under possibly a criminal count, not a civil count. There is no cause of action for conspiracy to defraud, either. At most, it would possibly sound in a criminal fraud count. The concept of a conspiracy theory is problematic in the UAE, like in many other Muslim countries, as the same violates Islamic law inasmuch as Islamic law holds only the actual person causing the harm responsible.

33.     Similarly, there is no cause of action in Dubai for a constructive trust, either. A constructive trust is an equitable remedy creating an implied trust to claw back in the past as a legal theory to compensate an aggrieved plaintiff. UAE law does not support such claims.

34.     Clearly, sending NOV's action to Dubai would prejudice the majority of their causes of action. As such, NOV does not have an adequate remedy in Dubai. In fact, as explained above, all of NOV's tort causes of action would not survive under Dubai law.

**There is no discovery under Dubai law.**

35.     As noted above, much of the witnesses and evidence are located in Texas. If this matter is transferred to Dubai, NOV will be prejudiced for numerous reasons. There will be significant hurdles to obtain the documents relevant to this dispute in Dubai as UAE courts essentially allow *no discovery*, and compelling Texas-based witnesses to be deposed in Dubai is not possible under Dubai law.

36.     There is no discovery in Dubai. Dubai law is diametrically opposed to Texas law with respect to discovery. Dubai law provides that "a litigant is not permitted to compel his opponent to disclose evidence he has against himself." *See generally*, Dr. Yousef Abeedat, *Commentary on the Rules of Evidence in Civil and Commercial Matters in light of the UAE Rules of Evidence* (2012), p. 26.

37.     A litigant must move the court to compel a party to produce a document. As noted above, there is not a notice to produce mechanism. The Dubai Rules of Civil Procedure provides that production of a document from an opposing party is required only in three circumstances: (1) the law requires production; (2) the document is a joint document, like a signed contract; or (3) a party relied upon the document at any time during the litigation.

Abeedat, *supra*, pp. 26-29. With this non-disclosure jurisprudential principle applying to the litigants, to obtain discovery from third parties is also essentially non-existent.

38. Experts are court-appointed and generally must be from a Judiciary pre-approved list. With no oral hearing or trial, the court-appointed expert is not deposed or questioned at hearing by either party. The litigants are only entitled to submit a written comment/reply to the court-appointed expert report. The court-appointed expert may request documents from non-parties, but this is extremely rare and there is no enforcement mechanism.

39. The court-appointed experts receive minimal compensation, which is set by the Court. It has been my experience that the expert fees range from $2,000 to $5,000 for the entire appointment. Major reputable accounting firms and other professional firms generally do not accept court appointments nor most of them are not even included on the Judiciary approved list. Court-appointed experts routinely decline appointments because these matters are not commercially viable or profitable. For this reason, court-appointed experts do not spend adequate time on each file and are susceptible to fraud and bribes.

40. Professor Martinez relies heavily on one book: Essam Al Tamimi, *Practical Guide to Litigation and Arbitration in the United Arab Emirates* (2003: Kluwer Law International). This treatise actually confirms *my* conclusions.

> There is no system of discovery under the UAE Civil Procedure Law. While discovery plays an important part of trials in the common law system and is most popular in the U.S. legal system, it is not recognized in the UAE. Under the law of evidence, however, either party may ask permission from the Judge to see or to receive a copy of any document submitted by the other party or mentioned as relevant in supporting their case. The judge may then order the other party to make the document available, provided that: there is sufficient evidence to show the Judge that the document is in the possession of the other party and that they are able to produce or exhibit the same. The other party has relied on

that document in the court proceedings or referred to it in their pleadings but have not exhibited the same to the courts. Tamimi, *supra*, p. 62.

Merchants in the UAE are not compelled to disclose information nor required to maintain proper books of account. Tamimi, *supra*, p. 63.

41.    In other words, a party is only entitled to documents that its opponent <u>relies on</u> in the proceeding.  This is, of course, not "discovery."

42.    There is no right to propound interrogatories, notice to produce documents, or requests for admissions. There is no right to depositions. Attorneys do not have the right to serve subpoenas on third parties, nor do they have the right to depose the litigants. Effectively, there is no discovery.  The evidence process is document-driven. There is little weight placed on oral testimony; for that reason, in fact, it is nearly always the case that "all arguments, comments, and documents submitted to the court are made by way of written submissions." Tamimi, *supra*, p. 56.  Live witness testimony (including video depositions) is essentially unheard of.

43.    To summarize this section, under Dubai law, there is no discovery or pre-trial disclosure procedure like in Texas. A litigant is not required to produce any evidence that supports his or her opponent's case, and Dubai courts do not hear from witnesses, whether live or by video deposition. All in all, the Dubai Courts do not provide NOV the chance for <u>effective</u> relief.

**Dubai law does not prohibit NOV from filing its action in Texas and Dubai law does not require NOV to file a counterclaim in the NOV Defendant's Labor Case filed subsequent to the Texas Action.**

41.    In response to NOV's action in Texas, defendant Sadagopan and defendant Hamden filed a labor case in Dubai demanding unpaid wages and benefits. It is my

understanding that the third defendant Zantout has not filed any labor action. Of course, they would be able to bring these claims in the Texas action as counterclaims.  The defendant's commencement of a standard run-of-the-mill labor action seeking unpaid salary and fringe benefits appears timed to create an appearance that there is a pending foreign action into which NOV's claims can be shoehorned. That is not the case.

42.    A pending labor case in Dubai does not make Dubai an available and adequate forum for NOV's claims.  At the outset, there is no entire controversy doctrine under UAE law. NOV is not required under UAE law to file a counterclaim in the Labor Case. NOV is free to file its own independent action against the defendants in Texas. UAE law does not prohibit or prevent NOV from filing its claims in Texas. Tamimi confirms my opinion, which is a plain reading of Article 97, 98, 99, and 100 of the UAE Code of Civil Procedure:

> As mentioned, the defendant in an action is not required to file his counterclaim in the main action. He may file his counterclaim in a separate proceeding before the court. Tamimi, *supra*, p. 55

43.    The statute of limitations for labor cases is one year. Article 6, UAE Labor Code. In fact, the statute of limitations under UAE law limits the financial claim to one year from the date the claim accrued, not from time of termination. By way of clarification, an employee was entitled to compensation for over time in June 2015. Employee did not make a claim for the overtime amount until July 2016. Employee's claim is barred. It does not matter that the employee in July 2016 was still employed by the employer. *See, e.g.,* Cassation Case No. 47/2012 & 75/2012 (6/11/2012) (holding that the statute of limitations for employee claims is one year from date of entitlement/accrual of claim).

44.    To determine this labor dispute, the Dubai Court will review the employee contract and determine date of termination. Based on this information, the Court would order the

employer to pay any unpaid wages.  The NOV action in Texas is an extensive and complex civil action based on contractual claims and tort claims, much of which occurred in and/or was directed toward Texas and will require extensive discovery and investigation.

## RESPONSE TO PROFESSOR MARTINEZ'S DECLARATION

45.    I reviewed the Declaration of Professor Jenny Martinez. I disagree with Professor Martinez's conclusion that Dubai Courts are an available forum. Professor Martinez's opinion is founded on two faulty arguments: (1) two rankings of the Dubai legal system, which are based on skewed generalities and limited to commercial courts; and (2) trying to shoehorn several provisions from the Dubai Civil Code to forcefully fit into similar causes of action as those of NOV in the Texas action.  Her opinions appear to be the result of superficial research with no real experience in studying, applying and/or working with UAE law.

46.    Contrary to Professor Martinez's conclusion, Dubai law does not have pre-trial discovery. I already examined at length the limited to non-existent discovery available under Dubai law. This glaring defect in her argument undermines both the credibility of her opinions and her entire conclusion that Dubai is an adequate and available forum for NOV's claims.

47.    Professor Martinez's overreliance on the World Bank Group Index further undermines her conclusions. Professor Martinez acknowledged in her report that "the World Bank specifically measures contract disputes for ease of comparison of claims across countries." Martinez Declaration, p. 6.

48.    In other words, the World Bank Group Index really does not apply to the case at bar. NOV's claims sound primarily in intentional torts.

49.     Furthermore, the World Bank Group Index based its evaluation of the Dubai Court System on data from one court: the Dubai Commercial Court. The Dubai Court of First Instance has five divisions: Civil Division, Commercial Division, Personal Status Division (family law), Labor Division and Real Estate Division. The World Bank Group relied exclusively on the data from the Commercial Division. The Commercial Division does not have jurisdiction to determine tort matters.

50.     Professor Martinez relied on World Justice Project Rule of Law Index, which also lacks credibility or relevance to the case at bar.  The credibility of the Rule of Law Index is suspect in as much as Dubai was ranked higher than the United States in the Civil Justice category. The United States Civil Justice ranked 28/113 and the United Arab Emirates ranked 25/113. **Exhibit "C"**. The United States Criminal Justice ranked 22/113 and the United Arab Emirates ranted 14/113. **Exhibit "D"**. The Civil Justice Category covers: people can access and afford civil justice, civil justice is free of discrimination, civil justice is free of corruption, civil justice is free of improper government influence, civil justice is not subject to unreasonable delay, civil justice is effectively enforced and alternative dispute resolution mechanisms are accessible, impartial and effect. The Criminal Justice category covers: criminal investigative system is effective, criminal adjudication system is timely and effective, correctional system is effective in reducing criminal behavior, criminal system is impartial, criminal system is free of corruption, criminal system is free of improper government influence, and due process of law and rights of the accused.

51.     The UAE ranking cannot be reconciled with the annual human rights reports about the UAE issued by Human Rights Watch,[3] Amnesty International[4] and Freedom House[5] that detail the extensive and continuing human rights abuses.

52.     Furthermore, it is not surprising that a basic breach of contract dispute with no discovery, no trial, and no oral testimony, is resolved in 495 days. Indeed, with no discovery, it is surprising that Dubai contract disputes take so long to resolve.

53.     I have many colleagues who practice law in Dubai. I have worked with many attorneys in Dubai in connection with contract disputes and litigation pending in the US and in the UAE. Without exception, I and every attorney I know advise clients to have a binding arbitration clause or opt for the Dubai International Financial Centre ("DIFC") forum because the UAE national legal system has numerous problems from protracted delays to unfamiliarity with international commercial matters to the language barrier requiring costly translations, coupled with the fact there is no discovery and there is a deference/bias to local litigants. In addition, only UAE citizens are admitted to appear in court. These problems with the national judiciary became an obstacle to Dubai's long-term objective of establishing Dubai as an international commercial hub. For this reason, the DIFC was established to resolve this issue. Most multinational

---

[3] "The United Arab Emirates (UAE) continued in 2015 to arbitrarily detain and in some cases forcibly disappear individuals who criticized the authorities, and its security forces continued to face allegations that they torture detainees in pretrial detention. The UAE passed an anti-discrimination law that further jeopardizes free speech and is discriminatory in that it excludes references to gender and sexuality. Authorities denied access to the country to activists who criticized the UAE's mistreatment of migrants workers."   https://www.hrw.org/world-report/2016/country-chapters/united-arab-emirates#eaa21f

[4] "The authorities arbitrarily restricted freedom of expression, arresting and prosecuting government critics. A new law on combating discrimination and hatred imposed further limits on the rights to freedom of expression and association. Security forces subjected dozens of people to enforced disappearance. Torture and other ill-treatment of detainees was common. Prisoners of conscience remained imprisoned following unfair trials. Women faced discrimination in law and in practice. Migrant workers were inadequately protected by law and faced exploitation and abuse. The death penalty remained in force and there was one execution." https://www.amnesty.org/en/countries/middle-east-and-north-africa/united-arab-emirates/report-united-arab-emirates/

[5] Freedom Status: No Free; Aggregate score: 20; Freedom Rating: 6.0; Political Rights: 6.0; Civil Liberties: 6.0 https://freedomhouse.org/report/freedom-world/2016/united-arab-emirates

corporations and international businessmen do not want to be subject to the Dubai national court system; the majority of contracts have binding arbitration clauses selecting an arbitration center located in Dubai and/or agreements to submit to the jurisdiction of the DIFC. The most popular are the Dubai International Financial Center/London Court of International Arbitration and the Dubai International Arbitration Center.

54.     DIFC was established in 2004. Federal Decree No. 35 of 2004. It is a Financial Free Zone with independent jurisdiction within the UAE.  DIFC created its own legal and regulatory framework for all civil and commercial matters.  Basically, DIFC is exempt from UAE laws because DIFC has its own procedural and substantive law. As a common law judiciary, the language of the judiciary is English. There is no requirement to be a UAE citizen to be admitted to the DIFC bar. While most of the international law firms in Dubai are not admitted to appear before the Dubai national courts, most of them are admitted to practice before the DIFC courts. DIFC Courts have exclusive jurisdiction over any civil or commercial case when it relates to DIFC. DIFC Courts also have jurisdiction where parties select DIFC as the forum and choice of law in their contract. It is a legal system within a legal system in the UAE. DIFC and Arbitration Centers, not the national Dubai courts, are the legal system of choice for all international commerce and trade in Dubai. ***DIFC does <u>not</u> have jurisdiction in the NOV matter.***

55.     Professor Martinez's entire opinion that NOV's causes of action are available under Dubai law is incorrect. As detailed above, NOV's causes of action sound both in contract and tort. Pursuant to Dubai law, as a general rule, a litigant is not permitted to plead tort causes of action where the parties have a contractual relationship. Here, the contract causes of action control the governing law, remedies and damages.  NOV's tort claims will be barred under Dubai law.

56.     Irrespective of the fact that NOV's tort claims are not actionable in Dubai based on the existence of a contractual relationship between the parties, Professor Martinez's references to several Dubai Civil Code provisions to support NOV's tort causes of action is misplaced and incorrect.

57.     Professor Martinez argues that Article 185 of the UAE Civil Code covers NOV's claims for fraud. This is not correct. Article 185 does not cover any of NOV's claims inasmuch as Article 185 addresses "trickery" as it relates to consent to form a contract. Article 185 comes under the heading "Defect in Consent." The table of contents of Chapter 1 of the UAE Civil Code indicates as much:

> CHAPTER 1 - Personal obligations and rights
>
> Part I - Contracts
> Section 1 - General provisions
> Section 2 - The elements, validity and effect of the contract, and options
>   1. The making of the contract
>   2. Agency in contracting
>   3. The capacity to contract
>   4. Defects in Consent
>       a. Duress
>       b. *Deception and cheating*
>          *Article 185. Misrepresentation is when one of the two contracting parties deceives the other by means of trickery of word or deed which leads the other to consent to what he would not otherwise have consented to.*
>
>          *Article 186. Deliberate silence concerning a fact or set of circumstances shall be deemed to be a misrepresentation if it is proved that the person misled thereby would not have made the contract had he been aware of that fact or of circumstances.*
>       c. Mistake

> *See, e.g.,* Union Supreme court, 74/Judicial Year 24 ("It is settled law that deception or fraud is where one of the contracting parties deceives the other by means of trickery by word or deed leading him to consent to what otherwise he would not have consented to.  The deliberate silence of the contracting party in respect of a fact or surrounding circumstance is regarded as a deception if it is established that the person thus deceived would not have made the contract if it had known of that fact or circumstance.  The law has laid down a general rule for deception and fraud and cheating, as set out in the introductory part of the Commentary in the Civil Code – articles 185 et seq.")

58.     Professor Martinez argues incorrectly that Article 304 of the UAE Civil Code covers NOV's claims. James Whelan's *UAE Civil Code and Ministry of Justice Commentary* (2010) is a well-known scholarly commentary on the UAE Civil Code.  The commentary on Article 304 illustrates its limited use for NOV claims.

> The misappropriator is bound to return the thing misappropriated to its owner at the place in which the misappropriation occurred. If he meets the owner of the goods in another place, and he has the misappropriated goods with him, the owner will then have the option either to take back the goods there and then or, if he wishes, to demand that they be returned to the place where the misappropriation took place, at the expense of the misappropriator: *Al-Majalla*, article 890. If the misappropriator has destroyed or consumed the goods or has become unable to restore them, as in the case of a bird that has flown, he must give back similar goods or the value thereof.
>
> This provision is general and embraces both chattels and land. Land is capable of being misappropriated just in the same way as chattels.
>
> The general nature of the article includes cases of destruction, damage, consumption, *itlāf*, and inability to return the property, for any reason.
>
> *See* James Whelan's UAE Civil Code and Ministry of Justice Commentary (2010).

21

**Ex 2**

59.     Simply put, Article 304 would not cover the nature of the claims NOV has pled. This is yet another defect in Professor Martinez's argument and indicates an over-reliance on a literal reading of U.A.E. statutes without the necessary experience to correctly understand and interpret the same.

60.     Professor Martinez also argues that Article 309 of the UAE Civil Code would cover NOV's causes of action.  The scholarly commentary again proves that Article 309 does not apply to NOV's claims. Article 309 covers bailments of property or goods. NOV's causes of action involve intentional torts and an embezzlement financial scheme.

> In *Al-Majalla*, in the case of a bailment, if the bailee denies the bailment he will be treated as a misappropriator. If the goods suffer *talaf* after the denial while they are still in his hands, then he will be strictly liable even without any wrongdoing on his part.
>
> The rule is that if a trustee, such as a bailee or a borrower, is guilty of a wrongdoing, or of a default in the preservation of the goods or if he withholds them without right from the owner or falsely alleges that they are his, or dies leaving others in ignorance about them, and the goods then perish even without any wrongdoing, the trustee will become strictly liable, and will have to pay compensation by providing the like if appropriate, or by paying the value thereof. The drafting of this article reflects this provision of Islamic jurisprudence. *See* James Whelan's UAE Civil Code and Ministry of Justice Commentary (2010).

61.     Professor Martinez further argues that Article 246 would cover NOV's claims. This applies to enforcement of contracts, not to tort actions. Article 246 simply provides that a person must perform his/her duties under a contract in good faith. This is a breach of contract theory.

62.     Professor Martinez argues that "the fact that some of these civil breaches may also constitute crimes does not render civil remedies unavailable." She cites Article 297 for this

proposition. True, but what civil remedies are available? NOV's causes of action do not exist under Dubai law. More importantly, NOV has to convince a prosecutor to pursue its claims against these defendants, where two of them  do not reside in Dubai at this time. Much of the evidence and witnesses are in Texas. Based on my experience with colleagues in Dubai, unless the crime is passing a bad check or forging financial documents and the evidence is document intensive, Dubai courts will not pursue complicated tort cases where the majority of the evidence is located outside of Dubai.

63.     Article 297 provides that after one concludes the criminal matter with a conviction and if one is not made whole by restitution, then one is free to pursue a civil action. Article 102 provides that when a criminal matter is pending, the civil matter is likely to be stayed. So NOV would be prejudiced for as long as it would take the prosecutor to decide whether to pursue the investigation, and when it concludes its investigation, before it could start discovery and prepare its action. This prohibits the UAE from being an available forum.

**CONCLUSION**

64.     Texas law governs the majority of NOV's causes of action. Much of the evidence and many witnesses are in Texas. Two of the defendants do not even reside in Dubai. Dubai law requires that all submissions to the court be translated into Arabic, including all evidence, exhibits, and supporting documentation. This is a substantial undertaking and is costly in money and time. Without depositions, document production, interrogatories, requests for admissions, and no subpoena power or other related discovery, NOV would not be able to reasonably prosecute its action. The criminal investigation in Dubai – as most of NOV's causes of action sound in criminal law in Dubai – would cause substantial delay before NOV could pursue its civil action, if at all.  Finally and perhaps most importantly, the majority of NOV's causes of

action do not exist under Dubai law. In fact, Dubai law would bar all of NOV's tort causes of action. All of the foregoing proves that Dubai is not an available and adequate forum.

I declare under penalty of perjury that the foregoing is true and correct.

ABED AWAD, ESQ.

Dated: 12/29/16

Sworn to and subscribed before me

this 29th day of December 2016;

NOTARY PUBLIC

SABRINA DENMAN
NOTARY PUBLIC OF NEW JERSEY
ID # 50016056
My Commission Expires 5/18/2020

# EXHIBIT A

# ABED AWAD, ESQ.

## AWAD & KHOURY, LLP
777 Terrace Avenue, Suite 303
Hasbrouck Heights, NJ 07604
Tel: 201.462.9500
Fax: 201.462.9501

## LEGAL EXPERIENCE

**Awad & Khoury, Attorneys at Law,** Hasbrouck Heights, NJ                    Sept 1999-Present
*Partner*
- Practice areas: complex civil litigation, matrimonial, commercial, Islamic law, comparative & international law
- Admitted in New Jersey State Court, New Jersey Federal District Court and Third Circuit
- Admitted in New York State Court and New York Federal Court (Southern and Eastern Districts)
- Provide services as an expert witness in Islamic Law and culture/Middle Eastern Law (Testified, consulted and/or provided expert reports for courts and attorneys throughout the United States and England concerning the interpretation and application of the following laws: *shari'a* (Islamic), Egyptian, Syrian, Qatar, Kuwaiti, United Arab Emirates, Palestinian, Jordanian, Lebanese, Saudi Arabian, Moroccan, Iraqi, Iranian, Libyan, Pakistani, Mali, Indonesian, Bangladesh and Ja'fari.

**City of Paterson**, Paterson, NJ                    Sept 2003-Mar 2004
*Assistant Corporation Counsel*
- Assigned to litigation section
- Handled labor arbitrations and labor-related matters for the City, among other civil litigation matters
- Advised the City on various legal matters, from the constitutionality of local enactments to structuring public bids

## JUDICIAL CLERKSHIP AND JUDICIAL INTERNSHIPS

**Honorable George E. Sabbath**, New Jersey Superior Court (Family Part)                    Sept 1998-Sept 1999
*Law Clerk*
- Drafted opinions
- Wrote legal memoranda
- Prepared cases for motions, trials, and hearings

**Honorable Francis A. Nicolai**, New York Supreme Court 9th District                    Jan 1998-May 1998
*Judicial Intern*
- Conducted legal research regarding cases pending before the court
- Attended trials and hearings

**Inter-University Associates, Inc.,** Hastings on Hudson, NY                    June 1996-Aug 1997
*Research Associate*
- Translated and reviewed Arabic legal texts for 18 volume treatise: *Constitutions of the Countries of the World*
- Conducted legal research in Arabic relating to Arab countries' press and constitutional laws

## PROFESSIONAL MEMBERSHIPS

- New Jersey State Bar Association
- New York State Bar Association
- American Bar Association - Middle East Law Committee
- International Law Association
- New Jersey Muslim Lawyers Association
- New York Muslim Lawyers Association
- American-Arab Anti-Discrimination Committee

## ACADEMIC EXPERIENCE

**Rutgers University School of Law,** Newark, NJ                    Jan 2003-Present
*Adjunct Professor*
- Courses taught: Islamic Jurisprudence; Matrimonial Litigation

**Pace University School of Law,** White Plains, NY                  Jan 2009-2012
*Adjunct Professor*
- Course taught: Islamic Jurisprudence

**Seton Hall Law Study Abroad Program**, Amman, Jordan      July 2011-Aug 2011
*Adjunct Professor*
- Course taught: Islamic Banking and Finance

## EDUCATION

**Pace University School of Law,** White Plains, NY                  May 1998
Juris Doctorate
- Honors: New York State Bar Association Law Student Ethics Essay Award, 1997
- Activities: Managing Editor, *Pace International Law Review,* 1997-1998

**School of Oriental and African Studies (SOAS)**, University of London, England      1994-1995
- Certificate, Comparative Law, June 1994
- Masters, Near and Middle East Studies, June 1995

**Columbia University**, New York, NY                                1992-1993
Completed Graduate-level coursework in: Islamic Revivalist Movement, Islamic Legal Texts, Arabic Composition and Modern Arabic Poetry

**Saint Peter's College,** Jersey City, NJ                            May 1991
Bachelor of Arts, Political Science

## CERTIFICATES

- Certificate, National Institute of Trial Advocacy                  2000
- Certificate, Film Commission Fundamentals                          2000
- Certified Mediator, New Jersey Superior Court                      1999
- Certificate International Law, Pace University School of Law       1998

## LANGUAGES

- Modern Standard Arabic (native fluency in reading, writing, speaking)
- Colloquial Arabic (fluent in various dialects)

2

**Ex 2**

- English (native fluency in reading, writing, speaking)

## MEDIA COMMENTATOR - POLITICAL & LEGAL

**Al-Jazeera**                                                                  Jan 2004-Nov 2004 (weekly)

*Political and Legal Commentator*                                   Dec 2004-Present (regularly)

- Appear on television and radio networks over 200 appearances as a political and legal commentator for Al-Jazeera, including but not limited to *PBS, ABC, CNN, Huffington Post Live, Canadian Broadcasting Corporation*, *CNNfn*, *BBC World Service Radio*, *BBC World Service Arabic Television*, *ART, NPR, LBC, Al-Rafidain TV, Al-Qataria, Al-Saah TV, Fox, Al-Arabia, Channel 4* (England), *Shams Radio, Vatican-Arabic Radio, Monte Carlo Radio*, and *The Voice of Arabs Radio* (Cairo)
- Quoted in numerous media outlets including *The New York Times, Washington Post, Boston Globe, Philadelphia Inquirer, Chicago Tribune*, Newsweek, CNN.com, Fox.com, *Salon.com, Fort Worth Star-Telegram, American Prospect, Star Ledger, Herald News, Bergen Record, Village Voice, New Jersey Law Journal, Chicago Lawyer, ABA Law Student Magazine, Hollywood Reports, Variety,* and *Screen International*

## AWARDS

- Fellow, International Academy of Family Lawyers                                2010-Present
- AV Rating, Martindale-Hubbell                                                 2009-Present
- Avenue Magazine's Legal Elite                                                 2010
- Vision and Achievement Award, Mental Health Association in Passaic County     2009
- Community Activism Award, Arab-American Anti-Discrimination Committee          2007
- National Lawyers Weekly Magazine's Lawyer of the Year                         2002

## MEMBERSHIPS

- NJ Supreme Court District XI Ethics Committee of Passaic County, *Member*                2009-2013
- Muslim Women Lawyers for Human Rights (Karamah), *Member, Board of Directors*            2003-10/2014-Present
- Alphabet Kids, Inc., *Member, Advisory Board*                                            2009-Present
- Rutgers University Contemporary Arab Studies Program, *Member, Steering Committee*       2005
- New Jersey Electoral College, *Member*                                                   2004
- NJ State Democratic Committee-Affirmative Action Delegate Selection Committee, *Member*  2004
- Passaic County Improvement Authority, *Member, Board of Directors*                       2007-2010

## SELECTED LECTURES ON FAMILY LAW

- Karamah, CLE Panelist, Washington, D.C.                                       July 25, 2016
  *Islamic Marriage Contracts*
- National Council of Juvenile and Family Court Judges                          July 19, 2016
  79th Annual Conference. CLE Lecturer, Monterey, CA
  *Islamic Family Law in American Courts*
- 2016 Family Division/Domestic Violence Education Conference                   Apr 11, 2016
  *International Parental Child Abduction*
- New Jersey Association for Justice, CLE Lecturer, East Rutherford, NJ          Nov 19, 2015
  *Matrimonial Law*

- American Bar Association, CLE Lecturer                                         Nov 17, 2015

3

*International Family Law: Islamic Family Law in American Courts*
- Karamah, CLE Panelist, Washington, D.C.                                    Aug 14, 2014
  *Islamic Marriage Contracts*
- National Council of Juvenile and Family Court Judge                         July 16, 2013
  76th Annual Conference. CLE Lecturer, Seattle, WA
  *Islamic Family Law in America: A rich, diverse and evolving jurisprudence*
- Pennsylvania Bar Association, CLE Lecturer                                  July 12, 2013
  *Islamic Family Law in American Court: Practitioner's Perspective*
  New Jersey Association for Justice (formerly ATLA), CLE Lecturer           April 2012
  *Immigration and Cultural Issues in Family Law*
- The Iowa State Bar Association, CLE Lecturer, IA                            Oct 28, 2011
  *International Family Law: Islamic Law & Culture in American Courts*
- Middlesex County Bar Association, Lecturer, NJ                             Oct 17, 2011
  *The Impact of Religion & Culture in Divorce*
- American Academy of Matrimonial Lawyers-Ohio Chapter, Lecturer            Oct 10, 2011
  *Culture, Religion & Divorce in American Courts*
- Middlesex County Bar Association, Panelist, NJ                             June 15, 2011
  *Culture, Religion & Divorce in New Jersey*
- Karamah, CLE Panelist, Washington, D.C.                                    March 31, 2011
  *International Child Abductions*
- International Academy of Matrimonial Lawyers- Florida Chapter, Panelist    Feb.19, 2011
  *Muslim Religious Divorces & American Divorce Litigation*
- Karamah, CLE Panelist, Washington, D.C.                                    Jan 20, 2011
  *Muslim Marriage Contracts in American Courts - Recent Cases*
- American Academy of Matrimonial Lawyers-Illinois Chapter, Lecturer        Nov 5, 2010
  *Islamic Family Law in American Courts*
- Advanced Law and Leadership Program, Karamah, Lecturer, Washington, D.C.   July 2010
  *Muslim Marriage Contracts in American Courts - Recent Cases*
- Arab Community Center for Economic & Social Services, Lecturer, MI         Feb 24-25, 2010
  *Islamic Family Law in American Courts*
  Led a half-day workshop training for Michigan State Court Judges on Islamic family law in American courts;
  Led a half-day workshop training for Michigan attorneys, court personnel & community service providers
- Karamah, Guest Lecturer, Washington D.C.                                   Nov 18, 2009
  *Family Law Reform Trends in the Arab World:  Egypt, Jordan, Morocco, Kuwait,*
  *United Arab Emirates & Saudi Arabia*
- American Civil Liberties Union of Texas Panelist, CLE Panelist             Sept 25, 2009
  *Intersection of Islamic Law and Texas Family Law*
- National Association of Muslim Lawyers Convention, Panelist                Nov 2007
  *Muslim Americans and Family Law in U.S. Courts*
- Islamic Society of North America Convention, Panelist                      Sept 2006
  *Caught Between Two Worlds: Islamic & American Family Laws Regarding Marriage, Divorce*
  *& Child Custody*
- Muslim Women Leadership Conference, Karamah, Lecturer      2004, 2006. 2008, 2009 (Summer)
  *American Muslim Divorce Litigation: A Practitioner's Perspective from the Trenches*

## SELECTED LECTURES ON COMMERCIAL LAW

- The Intersection of Islamic Finance and Corporate Insolvency              Nov 20, 2015
  World Bank, Panelist, Washington, DC
- The Institute for Public-Private Partnerships (IP3), Panelist             July 28, 2015
  *Introduction to the moral foundation of Islamic Finance*
- Eight International Conference on Contracts, Texas Wesleyan School of Law, Panelist   Feb 22, 2013

4

**Ex 2**

*Middle Eastern and Islamic Commercial Law*

- New York City Bar Association, Panelist, NY                                                    Nov 29, 2011
  "Shariah Law and Islamic Finance – A Threat to America?"
- U.S. Department of State Training of Iraqi Judges, Lecturer, Washington, D.C.       Sept 28, 2010
  "Recognition & Enforcement of Foreign Money Judgment by American Courts
  and Middle East Courts"
- New York City Bar Association, CLE Panelist, NY                                              Feb 2010
  "Islamic Capital Markets: Past, Present & Future"
- Journal of Law & Religion Symposium, Panelist, Hamline University Law School    Oct 16, 2009
  "Food, Clothing & Shelter – An Economic Human Right: Islamic Law of Bankruptcy"
- American Bar Association, Panelist, Chicago, IL                                                 Aug 2009
  "Islamic Financial Products"
- New York City Bar Association, CLE Panelist, NY                                              June 2009
  "Structuring a Shariah Compliant Transaction"
- New York City Bar Association, CLE Panelist                                                    Sept 2008;
  "Business & Commercial Entities Approved Under Classical Shariah Doctrine"       March 2007
- New York City Bar Association, CLE Panelist                                                    Jan 2008
  "Fatwas to Solve Commercial Disputes"
- Rutgers Law School-Newark, Lecturer                                                              2006
  "Islamic Commercial Law in Comparative Context"

## SELECTED LECTURES ON SHARI'A GENERALLY

- ISIS are a Bunch of Criminals Who Do Not Represent Islam and the Quran, says Rutgers    Nov 18, 2015
  Professor
  Smerconish
- Islamic Law and U.S. Civil Law: Women's Right from a Comparative Legal Perspective    Feb 28, 2013
  Howard Law School
- Princeton Adult School, Why is Islamic Jurisprudence relevant today?                    Nov 13, 2012
- Illinois Law School, Jewish Law Students Association, Panelist, IL                        Nov 8, 2011
  "Religions in the Courtroom"
- International Law Weekend, Panelist, ABILA & ILSA, NY                                     Oct 21, 2011
  "The Anti-Shari'a Movement-Unconstitutional Discrimination or Homeland Security?"
- U.S. Military Academy (West Point) Gender Equity Conference, Panelist, NY            April 7, 2011
  "Women and Islam"
- Murray State University, Lecturer, KY                                                            March 25, 2011
  "Muslim America, Sharia & the Constitution"
- New York University, Panelist, NY                                                                April 13, 2011
  "Constitutionality of the Anti-Sharia Legislation"
- New York City Bar Association, Panelist, NY                                                    Dec 9, 2010
  "Sharia in American Courts & the Oklahoma Ban on Sharia"
- New York County Lawyer Association, Panelist, NY                                            May 2010
  "Islamic Law 101"
- New York City Bar Association, Panelist, NY                                                    April 2010
  "What You Need to Know about Islamic Law"
- Seton Hall School of Law, Panelist, NJ                                                            March 25, 2010
  "Religion and Law: Cannon law, Jewish law & Islamic law"
- New York City Bar Association, Panelist, NY                                                    July 2009
  "Capital Punishment & Islamic Law"
- New York City Bar Association, Panelist, NY                                                    May 2009
  "Honor Killing" & Islamic Law: Two Recent Fatwas
- Channel 4 (UK), Expert                                                                              June 2008

5

"The Future of Islam in America"

- SilverDocs, Panelist, MD                                                                   June 2007
  "Beyond Belief: Religion In Film"
- New York University, Guest Lecturer, NY                                          April 2007
  "The Evolution of Gender Relations in the Cultures of the Near East from Assyria to Islam"
- New Jersey Bar Association Annual Convention, Panelist, NJ                May 2006
  "Arab & Muslim Cultural Issues in New Jersey Courts"
- Youth for Understanding Host Families and Staff Retreat, Lecturer          April 2006;
  "Introduction to Islam"                                                              June 2006
- Seton Hall University-Whitehead School of Diplomacy & International Relations,    Nov 2006
  Lecturer, "Introduction to Islamic Law"
- Union County Women's Bar Association, Lecturer, NJ                              2004
  "Islamic Law in New Jersey Court"


## LECTURES – OTHER

- Saint Joseph's University, Guest Lecturer, Philadelphia, PA                   Oct 31, 2009
  *Effective Long-Term Strategies To Understand and To Prevent Terrorism*
- National Democratic Institute (NDI), Two-Day Workshop Trainer, Rabat, Morocco    Feb 2009
  *Election Campaign Financing: An American Perspective with Skills & Strategies to
  Raise Money for Candidates*
- NDI, American GOTV, Two-Day Workshop Trainer, Casablanca, Morocco          Feb 2007
  *Skills & Strategies to Increase Voter Turnout*
- Rutgers University School of Law, Lecturer, NJ                                  Nov 2006
  *Sovereignty & Terrorism*
- Rutgers University School of Law, Panelist                                       April 2016
  *Religious Discrimination in the Work Place*


## SELECTION OF PUBLISHED MATERIAL

- *Five Things you didn't know about religious veils,* CNN.com (June 9, 2015)
- *What ISIS – and the West – get wrong about Jihad,* CNN.com (May 29, 2015)
- *Al-Rida wa Hukum al-'idam* (Apostasy and the death penalty (Arabic), Al-Hawadeth Newspaper (Dec 2014).
- *Does Islam really condemn converts to death?* CNN.com, (June 6, 2014).
- *Islamic Family Law in American Court: A Rich, Diverse and Evolving Jurisprudence*, in Islamic Family Law in the West (Routledge) (2014).
- *Marriage: Legal Foundations* in Oxford Encyclopedia of Women and Islam (2013).
- *Divorce: Legal Foundations* (co-authored) in Oxford Encyclopedia of Women and Islam (2013).
- *Who is Next? Egyptian, Beware of the Military (Arabic)*, Al-Quds Al-Arabi (July 16, 2013).
- *The True Story of Sharia in American Courts*, The Nation Magazine (June 13, 2012).
- *Chipping Away At Divorce Quagmire for Muslim and Jewish Women,* New Jersey Law Journal (Feb 13, 2012).
- *Negative Connotations Surrounding Sharia Must Be Dispelled,* Jurist-Sidebar (Feb 2, 2012).
- *Appeals Court Had the Chance To Do Right By a Wife and Children – But Declined It,* North Carolina Lawyers Weekly (Dec 26, 2011).
- *Q & A: What Sharia Law Actually Means*, Salon.com (Feb 28, 2011).
- *Iflas& Chapter 11: Classical Islamic Law and Modern Bankruptcy Law*, 44 Int'l Law. 975 (2010) (co-authored).
- *Oklahoma Amendment is Unconstitutional: Barring Court from Considering Sharia Law Violated the*

*Supremacy Clause & the First Amendment*, Nat'l L.J. (Nov 15, 2010).

- *Religion-Based Claim in Abuse Case Wisely Pierced by Appeals Court*, N.J. L.J. (Sept 17, 2010).
- *Co-author* of Umar's Magic Oven (children's book) (2010).
- *Court Enforces Mahr Provision in Muslim Marriage Contract*, N.J. L.J. (Sept 9, 2002).
- *Beware of International Service of Process*, N.J. L.J. (March 13, 2002).
- *When Custody Disputes Go Global*, N.J. L.J. (Aug 7, 2000).
- *Attorney Client Sex Should Always Be Off Limits*, N.J. L.J. (March 13, 2000).
- *Attorney-Client Sexual Relations,* 22J. Legal Prof. 131 (1998).
- *The Concept of Defect in American & English Products Liability Discourse: Despite Strict Liability Linguistics, Negligence is Back With A Vengeance!,* 10(1) Pace Int'l L. Rev. (1998).
- *U.S. Claims Against Iraq Outside UNCC Jurisdiction: Focus on Letters of Credit,* 22(2) Middle East Exec. Rep. 9 (Feb 1999).
- *Enforcement & Setting Aside of Arbitral Awards in Egypt* (*work in progress*).
- Translation and Annotation of *Chapter on Bankruptcy in Ibn Qudama's Al-Mughni: Translation with Commentary* (work in progress).
- Civil Procedure in the Arab Middle East (work in progress)**.**

7

**Ex 2**

# EXHIBIT B

**ABED AWAD, ESQ.**

**AWAD & KHOURY, LLP**
777 Terrace Avenue, Suite 303
Hasbrouck Heights, NJ 07604
Tel: 201.462.9500
Fax: 201.462.9501

### EXPERT TESTIMONY IN THE PAST FOUR YEARS

To the best of my knowledge, recollection, and search of my records, the following are cases in which I have testified in the past four years:

- *Bangaly v. Baggiani, et al*, Ill., No. 09-L-2542 (2012)
  (Expert Testimony at Trial)

- *Bassiouni v. Bassiouni*, Mass., No. SU12D-1453-DR (2013)
  (Expert Testimony at Trial)

- *Sajjad v. Cheema*, N.J. Super., No. FM-12-2492-10 (2013)
  (Expert Testimony at Trial)

- *Ali v. Stephens*, E.D.Tex, F. Supp. 3d, No. 9:09-CV-52-ZJH (2014)
  (Expert Testimony at Trial)

- *Hedayati v. Hedayati*, Fla. Supp., No. 2013-DR-017480-O (2014)
  (Expert Testimony at Trial)

- *Mustafa v. Mustafa*, P.A. C.P, No. 008548 (2014)
  (Expert Testimony at Trial)

- *Azhar v. Choudhri*, Tex. Dist., No. 2015-36895 (2015)
  (Expert Testimony at Trial)

- *Ileiwat v. Labadi*, P.A. C.P., No. 008469 (2015)
  (Expert Testimony at Trial)

- *Ahmed v. Khan*, N.J. Super., No. FD-20-040-17 (2016)
  (Expert Testimony)

- *Nambiar v. Karam*, Fla. Supp., No. 2016-003842-FC-04 (2016)
  (Expert Testimony at Trial)

**Ex 2**

# EXHIBIT C

# United States



| | Factor Trend | Factor Score | Regional Rank | Income Rank | Global Rank |
|---|---|---|---|---|---|
| Constraints on Government Powers | — | 0.81 | 11/24 | 13/36 | 13/113 |
| Absence of Corruption | — | 0.73 | 13/24 | 20/36 | 20/113 |
| Open Government | — | 0.78 | 10/24 | 12/36 | 12/113 |
| Fundamental Rights | — | 0.75 | 16/24 | 20/36 | 21/113 |
| Order & Security | — | 0.80 | 18/24 | 26/36 | 31/113 |
| Regulatory Enforcement | — | 0.71 | 13/24 | 19/36 | 19/113 |
| Civil Justice | — | 0.65 | 16/24 | 27/36 | 28/113 |
| Criminal Justice | — | 0.68 | 16/24 | 22/36 | 22/113 |

Overall Score **0.74** Regional Rank **13/24** Income Rank **18/36** Global Rank **18/113**

High ▢▢▢ Low   ▼ Trending down   ▲ Trending up

■ United States   ▓ EU & EFTA & North America   ░ High Income

## Constraints on Government Powers

| 1.1 | Limits by legislature | 0.86 |
|---|---|---|
| 1.2 | Limits by judiciary | 0.83 |
| 1.3 | Independent auditing | 0.81 |
| 1.4 | Sanctions for official misconduct | 0.69 |
| 1.5 | Non-governmental checks | 0.84 |
| 1.6 | Lawful transition of power | 0.83 |

## Absence of Corruption

| 2.1 | No corruption in the executive branch | 0.71 |
|---|---|---|
| 2.2 | No corruption in the judiciary | 0.87 |
| 2.3 | No corruption in the police/military | 0.79 |
| 2.4 | No corruption in the legislature | 0.56 |

## Open Government

| 3.1 | Publicized laws and government data | 0.75 |
|---|---|---|
| 3.2 | Right to information | 0.72 |
| 3.3 | Civic participation | 0.83 |
| 3.4 | Complaint mechanisms | 0.81 |

## Fundamental Rights

| 4.1 | Equal treatment / no discrimination | 0.52 |
|---|---|---|
| 4.2 | Right to life and security | 0.88 |
| 4.3 | Due process of law | 0.70 |
| 4.4 | Freedom of expression | 0.84 |
| 4.5 | Freedom of religion | 0.77 |
| 4.6 | Right to privacy | 0.84 |
| 4.7 | Freedom of association | 0.86 |
| 4.8 | Labor rights | 0.58 |

## Order & Security

| 5.1 | Absence of crime | 0.79 |
|---|---|---|
| 5.2 | Absence of civil conflict | 1.00 |
| 5.3 | Absence of violent redress | 0.62 |

## Regulatory Enforcement

| 6.1 | Effective regulatory enforcement | 0.69 |
|---|---|---|
| 6.2 | No improper influence | 0.83 |
| 6.3 | No unreasonable delay | 0.53 |
| 6.4 | Respect for due process | 0.75 |
| 6.5 | No expropriation w/out adequate compensation | 0.74 |

## Civil Justice

| 7.1 | Accessibility and affordability | 0.41 |
|---|---|---|
| 7.2 | No discrimination | 0.46 |
| 7.3 | No corruption | 0.87 |
| 7.4 | No improper government influence | 0.75 |
| 7.5 | No unreasonable delay | 0.61 |
| 7.6 | Effective enforcement | 0.66 |
| 7.7 | Impartial and effective ADRs | 0.80 |

## Criminal Justice

| 8.1 | Effective investigations | 0.76 |
|---|---|---|
| 8.2 | Timely and effective adjudication | 0.74 |
| 8.3 | Effective correctional system | 0.56 |
| 8.4 | No discrimination | 0.46 |
| 8.5 | No corruption | 0.73 |
| 8.6 | No improper government influence | 0.80 |
| 8.7 | Due process of law | 0.70 |

**Ex 2**

# United Arab Emirates

Region: Middle East & North Africa
Income Group: High Income

| | Overall Score | Regional Rank | Income Rank | Global Rank |
|---|---|---|---|---|
| | 0.66 | 1/7 | 30/36 | 33/113 |



| | Factor Trend | Factor Score | Regional Rank | Income Rank | Global Rank |
|---|---|---|---|---|---|
| Constraints on Government Powers | | 0.61 | 2/7 | 32/36 | 45/113 |
| Absence of Corruption | | 0.80 | 1/7 | 15/36 | 15/113 |
| Open Government | | 0.39 | 5/7 | 36/36 | 102/113 |
| Fundamental Rights | | 0.46 | 4/7 | 36/36 | 90/113 |
| Order & Security | | 0.89 | 1/7 | 11/36 | 12/113 |
| Regulatory Enforcement | | 0.68 | 1/7 | 21/36 | 21/113 |
| Civil Justice | | 0.68 | 1/7 | 24/36 | 25/113 |
| Criminal Justice | | 0.74 | 1/7 | 14/36 | 14/113 |

High ▭ Low   ▼ Trending down   ▲ Trending up

■ United Arab Emirates   ▨ Middle East & North Africa   ▨ High Income

## Constraints on Government Powers

| | |
|---|---|
| 1.1 Limits by legislature | 0.55 |
| 1.2 Limits by judiciary | 0.67 |
| 1.3 Independent auditing | 0.74 |
| 1.4 Sanctions for official misconduct | 0.79 |
| 1.5 Non-governmental checks | 0.36 |
| 1.6 Lawful transition of power | 0.59 |

## Absence of Corruption

| | |
|---|---|
| 2.1 No corruption in the executive branch | 0.79 |
| 2.2 No corruption in the judiciary | 0.86 |
| 2.3 No corruption in the police/military | 0.84 |
| 2.4 No corruption in the legislature | 0.73 |

## Open Government

| | |
|---|---|
| 3.1 Publicized laws and government data | 0.34 |
| 3.2 Right to information | 0.37 |
| 3.3 Civic participation | 0.34 |
| 3.4 Complaint mechanisms | 0.51 |

## Fundamental Rights

| | |
|---|---|
| 4.1 Equal treatment / no discrimination | 0.61 |
| 4.2 Right to life and security | 0.46 |
| 4.3 Due process of law | 0.73 |
| 4.4 Freedom of expression | 0.36 |
| 4.5 Freedom of religion | 0.46 |
| 4.6 Right to privacy | 0.25 |
| 4.7 Freedom of association | 0.28 |
| 4.8 Labor rights | 0.51 |

## Order & Security

| | |
|---|---|
| 5.1 Absence of crime | 0.93 |
| 5.2 Absence of civil conflict | 1.00 |
| 5.3 Absence of violent redress | 0.73 |

## Regulatory Enforcement

| | |
|---|---|
| 6.1 Effective regulatory enforcement | 0.68 |
| 6.2 No improper influence | 0.91 |
| 6.3 No unreasonable delay | 0.63 |
| 6.4 Respect for due process | 0.53 |
| 6.5 No expropriation w/out adequate compensation | 0.65 |

## Civil Justice

| | |
|---|---|
| 7.1 Accessibility and affordability | 0.52 |
| 7.2 No discrimination | 0.61 |
| 7.3 No corruption | 0.84 |
| 7.4 No improper government influence | 0.70 |
| 7.5 No unreasonable delay | 0.72 |
| 7.6 Effective enforcement | 0.67 |
| 7.7 Impartial and effective ADRs | 0.67 |

## Criminal Justice

| | |
|---|---|
| 8.1 Effective investigations | 0.66 |
| 8.2 Timely and effective adjudication | 0.80 |
| 8.3 Effective correctional system | 0.73 |
| 8.4 No discrimination | 0.71 |
| 8.5 No corruption | 0.87 |
| 8.6 No improper government influence | 0.71 |
| 8.7 Due process of law | 0.73 |

Ex 2



## Factor 3: Open Government

**3.1 Publicized laws and government data**
Measures whether basic laws and information on legal rights are publicly available, presented in plain language, and are made accessible in all languages. It also measures the quality and accessibility of information published by the government in print or online, and whether administrative regulations, drafts of legislation, and high court decisions are made accessible to the public in a timely manner.

**3.2 Right to information**
Measures whether requests for information held by a government agency are granted, whether these requests are granted within a reasonable time period, if the information provided is pertinent and complete, and if requests for information are granted at a reasonable cost and without having to pay a bribe. It also measures whether people are aware of their right to information, and whether relevant records are accessible to the public upon request.

**3.3 Civic participation**
Measures the effectiveness of civic participation mechanisms, including the protection of the freedoms of opinion and expression, assembly and association, and the right to petition the government. It also measures whether people can voice concerns to various government officers, and whether government officials provide sufficient information and notice about decisions affecting the community.

**3.4 Complaint mechanisms**
Measures whether people are able to bring specific complaints to the government about the provision of public services or the performance of government officers in carrying out their legal duties in practice, and how government officials respond to such complaints.



## Factor 4: Fundamental Rights

**4.1 Equal treatment and absence of discrimination**
Measures whether individuals are free from discrimination - based on socio-economic status, gender, ethnicity, religion, national origin, or sexual orientation, or gender identity - including with respect to public services, employment, court proceedings, and the justice system.

**4.2 The right to life and security of the person is effectively guaranteed**
Measures whether the police inflict physical harm upon criminal suspects during arrest and interrogation, and whether political dissidents or members of the media are subjected to unreasonable searches or to arrest, dentention, imprisonment, threats, abusive treatment or violence.

**4.3 Due process of law and rights of the accused**
Measures whether the basic rights of criminal suspects are respected, including the presumption of innocence and the freedom from arbitrary arrest and unreasonable pre-trial detention. It also measures whether criminal suspects are able to access and challenge evidence used against them, whether they are subject to abusive treatment, and whether they are provided with adequate legal assistance. In addition, it also measures whether the basic rights of prisoners are respected once they have been convicted of a crime.

**4.4 Freedom of opinion and expression is effectively guaranteed**
Measures whether an independent media, civil society organizations, political parties, and individuals are free to report and comment on government policies without fear of retaliation.

**4.5 Freedom of belief and religion is effectively guaranteed**
Measures whether members of religious minorities can worship and conduct religious practices freely and publicly, and whether non-adherents are protected from having to submit to religious laws.

**Ex 2**

## Factor 7: Civil Justice

**7.1 People can access and afford civil justice**
Measures the accessibility and affordability of civil courts, including whether people are aware of available remedies, can access and afford legal advice and representation, and can access the court system without incurring unreasonable fees, encountering unreasonable procedural hurdles, or experiencing physical or linguistic barriers.

**7.2 Civil justice is free of discrimination**
Measures whether the civil justice system discriminates in practice based on socio-economic status, gender, ethnicity, religion, national origin, sexual orientation, or gender identity.

**7.3 Civil justice is free of corruption**
Measures whether the civil justice system is free of bribery and improper influence by private interests.

**7.4 Civil justice is free of improper government influence**
Measures whether the civil justice system is free of improper government or political influence.

**7.5 Civil justice is not subject to unreasonable delay**
Measures whether civil justice proceedings are conducted and judgments are produced in a timely manner without unreasonable delay.

**7.6 Civil justice is effectively enforced**
Measures the effectiveness and timeliness of the enforcement of civil justice decisions and judgments in practice.

**7.7 Alternative dispute resolution mechanisms are accessible, impartial, and effective**
Measures whether alternative dispute resolution mechanisms (ADRs) are affordable, efficient, enforceable, and free from corruption.

## Factor 8: Criminal Justice

**8.1 Criminal investigative system is effective**
Measures whether perpetrators of crimes are effectively apprehended and charged. It also measures whether police, investigators, and prosecutors have adequate resources, are free of corruption, and perform their duties competently.

**8.2 Criminal adjudication system is timely and effective**
Measures whether perpetrators of crimes are effectively prosecuted and punished. It also measures whether criminal judges and other judicial officers are competent and produce speedy decisions.

**8.3 Correctional system is effective in reducing criminal behavior**
Measures whether correctional institutions are secure, respect prisoners' rights, and are effective in preventing recidivism.

**8.4 Criminal system is impartial**
Measures whether the police and criminal judges are impartial and whether they discriminate in practice based on socio-economic status, gender, ethnicity, religion, national origin, sexual orientation, or gender identity.

**8.5 Criminal system is free of corruption**
Measures whether the police, prosecutors, and judges are free from bribery and improper influence from criminal organizations.

**8.6 Criminal justice is free of improper government influence**
Measures whether the criminal justice system is independent from government or political influence.

**8.7 Due process of law and rights of the accused**
Measures whether the basic rights of criminal suspects are respected, including the presumption of innocence and the freedom from arbitrary arrest and unreasonable pre-trial detention. It also measures whether criminal suspects are able to access and challenge evidence used against them, whether they are subject to abusive treatment, and whether they are provided with adequate legal assistance. In addition, it measures whether the basic rights of prisoners are respected once they have been convicted of a crime.

**Ex 2**