IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL OILWELL VARCO, LP,<br>    Plaintiff, | § § § § § | |
| v. | § § | NO. 4:16-cv-02261 |
| SADEESH SADAGOPAN,<br>MAJED HAMDEN<br>AND KHALED ZANTOUT,<br>    Defendants. | § § § § § | JURY |

**NOV'S REPLY IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT
AND MOTION TO STRIKE DEFENDANTS' EXHIBITS**

**I.
REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

**A.    Defendants' Choice of Law Argument is Waived, Wrong, and Moot**

Defendants' main argument against NOV's Motion for Default Judgment (the "Motion") is the theory that, despite Defendants' decision to default on NOV's claims rather than face discovery on them: (a) the law of the United Arab Emirates (UAE) applies to NOV's tort causes of action, (b) UAE law does not offer those causes of action in tort, and (c) as a result, NOV should be barred from recovering damages for those claims.  Defendants' choice-of-law argument fails for three reasons: (1) Defendants have waived the right to argue choice-of-law at this stage; (2) Defendants have not shown a conflict between Texas and UAE law regarding the remedies available to NOV; and (3) because the UAE has no interest in the matter with no citizen or resident in this case, any conflict of law would be a "false conflict" necessitating that Texas law apply for this case.

### 1.     Defendants waived the right to raise choice-of-law issues at this stage

"Choice-of-law issues are waivable." *ARV Offshore Co., Ltd. v. Con–Dive, L.L.C.*, No. H-09-0944, 2012 WL 176322, at *6 (S.D. Tex. Jan. 20, 2012) (citing *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743 (5th Cir. 2011)). "A choice-of-law issue must be raised to the district court in time to be properly considered." *Id.* (internal quotation and citation omitted).

Waiver of choice-of-law issues can occur in multiple ways. It can occur when a party solely briefs the issues under Texas law. *See Playboy Enterprises, Inc. v. Sanchez-Campuzano*, 519 Fed. App'x. 219, 225 (5th Cir. 2013) (holding that the defendant waived his choice-of-law argument when, aside from one footnote, he "applied Texas law in his briefing before the district court."). It can occur when a party fails to cite any statute or case law that is claimed to apply. *See Howard v. Maxum Indem. Co.*, No. 3:16-CV-2487-G, 2017 WL 292424, at *3 (N.D. Tex. Jan. 23, 2017) (holding that the plaintiff waived his argument that Oklahoma law applied by failing to point the district court to any Oklahoma law or cases on the legal issue in question). It can occur when a party fails to argue the issue before trial, only to raise a choice-of-law argument during post-trial briefing regarding damages. *See ARV Offshore Co.*, 2012 WL 176322 at *1 (noting that the only remaining issue was the amount of recoverable damages), *6 (holding that the defendant waived choice-of-law issues by failing to argue them until post-trial briefing).

Here, Defendants waived choice of law arguments in all of the above ways. For two years, Defendants have consistently briefed NOV's claims under the framework of Texas law. *See, e.g.*, Defs.' Resp. to Mot. to Remand [Dkt. 20] p.14 ("Joint and several liability is only available when defendants' acts produce an indivisible injury. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 654 (Tex. 1996)."); Defs.' Mot. Dismiss or in the Alternative, to Stay [Dkt. 109] p.13 ("Thus, the arbitration clause requires arbitration of tort claims (i.e., fraud and conspiracy claims), breach of contract claims, and claims arising under Texas law (i.e., breach of

2

fiduciary and aiding and abetting breach of fiduciary duty)…"). Even now, Defendants' arguments related to NOV's damages are solely directed towards Texas law. *See* Response pp. 21-28. Defendants have also not pointed the Court to a single UAE law or case that they claim would govern NOV's claims in place of Texas law. Defendants have accordingly waived the issue. *See Playboy Enterprises*, 519 Fed. App'x. at 225; *Howard*, 2017 WL 292424, at *3.

Defendants further waived the right to argue choice-of-law by electing to default rather than face discovery on NOV's claims. As the Court may recall, on January 3, 2018 the Court denied Defendants' second motion to dismiss, removing Defendants' final roadblock to party discovery. *See* Dkt. 112. NOV then sought a pre-motion conference to compel certain discovery and confirm Defendants' depositions. On January 22, 2018, Defendants filed a "Rule 44.1 Notice," claiming that UAE law applied. *See* Dkt. 113. Later the same day, the Court set a pre-motion discovery conference for hearing on January 26. *See* Dkt. 114. Minutes before that hearing began, Defendants filed notices indicating that they no longer intended to defend against NOV's claims and requested a default. *See* Dkt. 115, Dkt. 116. Based on those notices, the Court denied NOV's request for party discovery as moot and set this case for judgment by default. *See* Dkt. 117. Defendants then agreed to an entry of their default, which was accepted and entered by the Court. *See* Dkt. 118, Dkt. 119.

As this sequence of events shows, Defendants' decision to default was done to prevent NOV from obtaining additional proof of its claims in party discovery including Defendants' depositions. By preventing this discovery through a voluntary default, Defendants also waived any issues potentially impacted by that discovery.

In Texas,[1] the question of which choice of law should apply is a mixed question of fact and law. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). Moreover, the party seeking to have non-Texas law apply "must satisfy its burden of proof with respect to fact questions necessary to the choice of law decision." *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). "The facts on which choice-of-law rulings depend must be determined by the Court after considering the affidavits, <u>depositions,</u> and other matters submitted by the parties." *Mayo v. Hartford Life Ins. Co.*, 220 F. Supp. 2d 714, 730 n.37 (S.D. Tex. 2002) (emphasis added). Thus, by avoiding their depositions and other discovery through a default, Defendants also waived their right to claim that non-Texas law should apply based on their version of the "facts." *Cf. ARV Offshore Co.*, 2012 WL 176322 at *1, 6; *Hughes Wood*, 18 S.W.3d at 205.

    **2.**    **Defendants have not shown any conflict between Texas and UAE law for the remaining issue at hand: the <u>remedies</u> NOV is entitled to receive against Defendants for the injuries pled.**

Texas courts analyze choice-of-law questions based on the "particular substantive issue" at hand. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). Thus, if a choice of law argument is raised as to the proper amount of damages to award, Texas courts will look to the relevant sources of law on the specific damages issue in question. *See id.* If the parties agree that damages would be the same under either law, or if the party raising the issue fails to show otherwise, Texas courts will presume that both laws would allow for the same recovery and apply Texas law when deciding the damages for the judgment. *See id.* at 848 n.15.

Here, the Court has already found jurisdiction over NOV's tort claims and Defendants in default of their liability to NOV for them. *See* Dkt. 77; Dkt. 119. The only remaining issue is

---

[1] As this is a diversity case, the Court is required to apply the choice of law rules of the forum state, *i.e.* Texas. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004).

the appropriate recovery to award NOV from Defendants in the final judgment. *See* Dkt. 117 (minute entry setting deadlines for briefing and a hearing on "damages"). Thus, the possibility that UAE law might treat NOV's tort claims under the framework of contract makes no difference to the issue at hand. Moreover, on the issue of available remedies, Defendants have previously admitted to the Court that Texas and UAE law do not conflict in any way:

> *Capital*, the court held that the UAE was an adequate forum because it recognizes causes of action similar to breach of contract. *Capital*, 2013 WL 557236, at *16. Because the remedies sought by NOV are available in the UAE, it is an adequate forum for NOV's claims. *See* Exhibit 7, at 10-11

Dkt. 45 at ¶ 52; *see also* Dkt, 45-4 at ¶¶ 27, 29 (statements from Defendants' UAE law expert explaining that, while UAE law does not track Texas law in terms of specific causes of action, UAE law would still allow NOV to recover for the types of harms claimed in this case, including by way of a return of the value received or other "unjust enrichment").

Defendants' recent briefing does not claim or offer any evidence to suggest that under UAE law, NOV would be entitled to less recovery from Defendants for the injuries pled in the Complaint. *See generally* Dkt. 113, Dkt. 113-1, Dkt. 121. In fact, other than admitting that the remedies sought by NOV are also available in the UAE, Defendants have failed to show any legal standards or boundaries of civil recovery under UAE law. "When the parties have failed to conclusively establish foreign law, a court is entitled to look to its own forum's law in order to fill any gaps." *Banco de Credito Indus. v. Tesoreria General*, 990 F.2d 827, 837 (5th Cir. 1993). Thus, because Defendants admit that NOV's remedies are the same and have failed to establish otherwise, the Court can enter final judgment based on Texas law remedies without the need for any choice-of-law analysis. *See id.*; *see also* Restatement (Second) Conflict of Laws § 136 cmt. h (1971) ("[W]here either no information, or else insufficient information, has been obtained

about the foreign law, the forum will usually decide the case in accordance with its own law, except when to do so would not meet the needs of the case or would not be in the interests of justice.").

### 3. Any claimed conflict is a "false conflict" due to the UAE's complete lack of interest over the outcome in this case.

Defendants note in Response that "[f]or choice of law issues relating to tort claims, Texas courts use the 'most significant relationship test' set forth in Sections 6 and 145 of the ALI's Restatement (Second) of Conflict of Laws." Response p.2. While true, the "most significant relationship" test is framed in terms of the specific issue at hand. *See Torrington*, 46 S.W.3d at 848-49. Thus, for choice of law issues related to damages, the Texas Supreme Court has explained the analysis as follows:

> [W]e must evaluate the contacts in light of the state policies underlying the particular substantive issue. The primary purpose of awarding compensatory damages in civil actions is not to punish the defendant, but to fairly compensate the injured plaintiff. A state's compensatory damages law balances the need to compensate the plaintiff against the goal of protecting resident defendants from undue liability and excessive litigation.
>
> Considering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability, are less important. **Rather, the most important contacts in determining which state's law governs compensatory damages will usually be the ones with the most direct interest in the plaintiff's monetary recovery and/or the most direct in protecting the defendant against financial hardship.**

*Id.* (emphasis added) (internal citations and quotations omitted).

Additionally, if a conflict-of-law analysis reveals that only one of the forums has an underlying interest in its law being applied to a given issue, then any conflict between the laws is a "false conflict," requiring that the law of the interested forum apply. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984). Thus, if only one of the forums has an interest in the amount of recovery awarded in a case, Texas courts will apply the law of the interested

forum based on the false conflict. *See id.*; *see also Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 259–60 (Tex. App.—San Antonio 1999, pet. denied) (finding that any conflict between Texas and Mexico law regarding available damages was a false conflict because "there is not a Mexican defendant who would be protected by the limitations in damages under Mexican law" and thus "Mexico has no interest in this litigation."); *Baird v. Bell Helicopter Textron*, 491 F. Supp. 1129, 1141 (N.D. Tex. 1980) (presuming that British Columbia was uninterested in the recovery awarded against the defendant because he was not a Canadian citizen).

Here, the Court has already found that "Texas has a strong interest in resolving this case because it involves claims to defraud and deceive a Texas company." Dkt. 77 p. 16. For the same reason, Texas maintains a strong interest in seeing that its civil damages laws apply to NOV's claims in this case. *See Torrington*, 46 S.W.3d at 849 ("We have noted that a plaintiff's domiciliary state usually has a strong interest in seeing its compensatory damages law applied."). Conversely, the UAE has no interest in its damages laws being applied here, because Defendants are not UAE citizens or residents. *See* Response pp. 12-13 ("Defendants Hamdan and Zantout are citizens of Lebanon. Defendant Sadagopan is a citizen of India."); July 11, 2017 Mem. Op. [Dkt. 77] at p.14 ("Two of the defendants have left the United Arab Emirates, and the third is facing imminent departure."); *e.g. Ford Motor Co.*, 9 S.W.3d at 259–60; *Baird*, 491 F. Supp. at 1141.[2] Because Texas has a strong interest in its damages laws controlling this issue and the

---

[2] Moreover, as NOV is the sole party in this case with an ongoing UAE contact through its office in Dubai, to the extent the UAE may have any interest in this case at all, that interest can be presumed to be the same as Texas: ensuring that NOV is fully compensated and that Defendants are held responsible. *Cf. Baird*, 491 F. Supp. at 1141 (recognizing that while British Columba is likely uninterested in the outcome of a case against a non-citizen <u>defendant</u>, "[it] is likely to have the implicit paternalistic interest in seeing that its injured citizens are compensated and that those parties causing their injuries are held responsible. That interest would be furthered by the application of Texas law.").

UAE has none, this presents a "'false conflict' between U.S. and [UAE] governmental interests which necessitates that Texas law apply." *Ford Motor Co.*, 9 S.W.3d at 261.[3]

**B.  NOV's Pleadings Support a Default Judgment on Each Cause of Action**

Defendants argue that NOV's allegations in the Complaint offer an "insufficient basis" to support a default judgment on any claim. Response pp. 13-21. In doing so, Defendants address NOV's allegations for each known scheme (GBS, Orient, Viyatek, Spreadsheet) individually, and then for NOV's two derivative claims generally, to argue that each reflects an "insufficient basis" for a default judgment against Defendants. *Id.*

First, Defendants' scheme-by-scheme analysis is not the correct standard for determining whether a default judgment against Defendants is substantively warranted in this case. Instead, the test is whether the factual allegations in NOV's Complaint raise a right to relief above the speculative level for each <u>claim</u> (*i.e.* fraud, breach of fiduciary duty, conspiracy, etc.) assuming that NOV's factual allegations are true. *See Wooten v. McDonald Transit Assocs. Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

Taking NOV's Complaint claim-by-claim, there is no question that the factual allegations raise NOV's right to relief above the speculative level for each of NOV's causes of action against Defendants. Specifically, as further described in NOV's Motion, the Complaint alleges facts outlining: (1) Defendants' direct actions and active participation with each other and FM in carrying out multiple fraudulent schemes (*see* Compl. ¶¶ 1, 19-40), supporting NOV's right to

---

[3]  Although a full conflict-of-law analysis is not required for this and the other reasons above, that analysis would also weigh heavily in favor of applying Texas law to the remaining issues in this case. *See* Restatement (Second) of Conflict of Laws §§ 6, 145 (factors to consider); *see generally* Mem. Op. [Dkt. 77] (finding that Texas has a comparatively greater interest than the UAE because, among other things, NOV suffered the harm in Texas, Defendants committed intentional torts while in Texas, and Defendants no longer reside in the UAE).

8

relief for fraud, fraud by nondisclosure, and conspiracy to defraud, (2) Defendants' contracts regarding NOV's code of conduct and ethics policies and breaches thereof (*see* Compl. ¶¶ 13-14), supporting NOV's right to relief for breach of contract; and (3) Defendants' and FM's fiduciary relationships with NOV (*see* Compl. ¶¶ 9-12, 15-16), supporting NOV's right to relief for breach of fiduciary duties and aiding and abetting of the same.

Because the facts pled by NOV raise a right to relief above the speculative level for each cause of action against Defendants, default judgment is substantively warranted for each claim. *See Wooten*, 788 F.3d at 498. Moreover, the Court has already reached this same conclusion, albeit indirectly, in making multiple prior rulings in this case. *See, e.g.*, Mem. Op. [Dkt. 77] pp.2-3, 8-13 (finding specific personal jurisdiction over each claim based on the forum contacts pled for each); Order Granting Mot. for Leave [Dkt. 96] p.2 (noting that while the additional facts regarding Orient and Viyatek added to the Fourth Amended Complaint "widen the scope of the alleged conspiracy, the conspiracy claim has long been in the case."); Mem. and Op. [Dkt. 112] p.1. (summarizing NOV's Complaint as "alleging that [Defendants] committed fraud, breach of contract, and breach of fiduciary duties by […]" and that "defendants allegedly conspired with a former coworker…").

## C. NOV's Pleadings and Evidence Supports the Recovery Sought by NOV

Because NOV's pleadings are sufficient to enter a default judgment for each claim against Defendants, the question for the Court to decide is the form of relief that NOV should receive for those claims. *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813-14 (N.D. Tex. 2015). Here, NOV seeks $21,796,757 in compensatory damages, exemplary damages to the fullest extent the Court deems proper to award, post-judgment interest, and costs of court. Motion p.19. Defendants do not claim that any of this relief goes beyond the relief pled for in the Complaint. *See generally* Response. Thus, the sole

remaining issue is whether NOV has demonstrated that "the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2nd Cir. 1992). This demonstration can be made by affidavit. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). And because the compensatory damages are framed in terms of disgorgement, NOV's evidence must "permit[] at least a reasonable approximation of the amount of the wrongful gain," while "[r]esidual risk of uncertainty in calculating net profit is assigned to the defendant[s]." Restatement (Third) of Restitution and Unjust Enrichment. at § 51(5)(d); *see also Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).[4]

As set out in the Motion, NOV's evidence demonstrates that the $21,796,757 sought as compensatory damages is, at minimum, a reasonable approximation of the wrongful gain that naturally flowed from the injuries pled in the Complaint, if not the on-the-nose amount. Put differently, if NOV's evidence were introduced at trial, it would easily support a verdict that NOV was entitled to $21,796,757 as compensatory damages (either disgorgement or actual) for the injuries identified in the Complaint.

Critically, Defendants' Response does not claim that NOV's calculation of damages goes beyond the injuries pled in the Complaint. Instead, Defendants claim that the injuries *themselves* do not factually exist, and that "Defendants are entitled to a take-nothing judgment" as a result. *See* Response pp. 17-21. First, Defendants' attempt to raise fact issues about NOV's injuries is untimely and waived. By electing to default, Defendants gave up the right to claim that NOV's injuries did not factually occur or are different than those pled. *See Breazell v. Permian*

---

[4] As NOV's Motion explains, the compensatory damages sought by way of disgorgement are effectively the same as the actual damages collectively sought for NOV's tort and contract claims, and are proved by the same allegations and evidence.

*Trucking & Hot Shot, LLC*, No. 7:15-cv-199-XR, 2017 WL 3037432 at *3 (W.D. Tex. Jul. 18, 2017) ("[B]ecause of the default judgment, the Court must accept Plaintiff's factual allegations as true."). This is particularly true here, where Defendants specifically elected to take a default to deprive NOV of financial records, depositions, and other discovery that may have shown NOV's current awareness of the fraud/injuries to be dramatically incomplete/low. Regardless, the extent of NOV's injuries is not subject to challenge at the default judgment stage by news articles and self-serving statements offered with no chance for cross-examination. *See id.* ("[B]ecause of Defendant's default, there is no evidence contrary to Plaintiff's assertions at the damages hearing."). Accordingly, Defendants' "cannot prove" or "cannot show" factual disputes must be rejected on their face. See id.

Beyond the factual issues, Defendants offer two legal arguments against the compensatory damages requested by NOV. First, Defendants point out that in Texas, disgorgement: (a) may or may not be an appropriate measure of damages for fraud and (b) is not an appropriate measure for breach of contract. Response pp. 21-22. While Defendants are correct in this regard, NOV's remedies for its causes of action are cumulative, allowing NOV to elect the non-cumulative damage measure(s) that provide the greatest potential for recovery. *See Boyce Iron Works v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). Here, NOV's options on remedies effectively work out to the same number: the $21,796,757 in compensatory damages ($18,791,503 as the scheme proceeds and $3,005,254 as the non-salary awards during schemes) can be viewed interchangeably as the proper amount under theories of disgorgement or actual damages. This issue is therefore a distinction without a difference.

Second, Defendants claim that the $3,005,254 in non-salary awards (bonuses and stock) is not properly subject to NOV's claim for disgorgement. Response p.23. However, while

11

couched as a legal issue, Defendants proceed to argue this point by disputing facts, claiming that the awards were, among other things, "well-earned," "made to all eligible and similarly-situated NOV employees," "not causually related to any wrongdoing," and so on, making disgorgement "not warranted under the circumstances." *Id.* NOV, of course, disputes Defendants' allegations—including the "outstanding contributions and personal sacrifices [ ] to NOV" each Defendant claims by declaration—and would willingly lay them bare if given the opportunity for a cross-examination at trial. But just as NOV will no longer have that opportunity due to Defendants' default, NOV also has no need to address Defendants' self-serving fictions at the default judgment stage. Instead, as NOV's Motion explains: (1) NOV has an adequate legal basis to seek recovery for the non-salary bonuses and stock that Defendants extracted from NOV by affirming compliance with NOV's Code of Conduct and Ethics Policies while carrying out the known schemes against NOV; and (2) the proper calculation of those damages (*i.e.* the sum total of Defendants' improperly procured awards) is $3,005,254. Motion pp. 13-14.

**D.    Texas' Proportionate Responsibility Statute Does Not Apply**

Defendants' final arguments are that the Court should apportion the liability of each Defendant based to Texas' proportionate responsibility statute and/or reduce Defendants' liability "by the sum of the dollar amount of any settlement agreement between NOV and FM, the Defendants' alleged co-conspirator." Response pp.23-24. Defendants' arguments fail for two reasons: (1) Texas' proportionate responsibility statute does not operate to reduce or limit the liability for members of a civil conspiracy to defraud; (2) to the extent that is an open question as a general matter, it is certainly the case following defaults on liability.

First, while the issue has yet to be resolved by the Texas Supreme Court, many lower court decisions have held that Texas' proportionate responsibility statute, Chapter 33 of the Texas Civil Practices and Remedies Code, does not abolish or replace the joint and several

liability that applies under Texas common law to each member of a civil conspiracy to defraud. *See, e.g., LandAmerica Commonwealth Title Co. v. Wido*, No. 05–14–00036–CV, 2015 WL 6545685, at *11 (Tex. App.—Dallas Oct. 29, 2015, no pet.) (mem. op.); *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 90 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Goldstein v. Mortenson*, 113 S.W.3d 769, 780 (Tex. App.—Austin 2003, no pet.) ("A finding of civil conspiracy further imposes joint and several liability on all conspirators for actual damages resulting from acts in furtherance of the conspiracy."). Thus, as Judge Atlas concluded in the *Enron* case after reviewing the relevant bodies of law on the issue at great length, "joint and several liability for common-law civil conspiracy to defraud was not abolished by Chapter 33." *In re Enron Corp. Secs., Derivative & Erisa Litig.*, 623 F. Supp. 2d 798, 835 (S.D. Tex. 2009) (Atlas, J.). Thus, because Defendants are each liable for the derivative claims of conspiracy to defraud as well as the underlying torts, "each of the losing defendants is jointly and severally liable for the actions of the others because all were found to be co-conspirators in a civil conspiracy." *Tompkins v. Cyr*, 202 F.3d 770, 783 (5th Cir. 2000).

Moreover, to the extent the interplay between Chapter 33 and joint and several liability under civil conspiracy or aiding and abetting may be considered an open question in a general sense, there is no question that Chapter 33 does not provide an adequate framework for a court to apportion liability that is established as a matter of law based on the default of all defendants in the case. This is because Chapter 33, like contributory negligence and assumption of risk before it, covers issues of liability <u>avoidance</u>. Accordingly, the Texas Supreme Court has referred to liability apportionment under Chapter 33 as "defensive issues on which defendants, not plaintiffs, bear the burden of proof." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 210 (Tex. 2015). Thus, because Defendants would have the burden to prove that Chapter 33 should apply

to limit or apportion their liability differently than the liability sought under Texas common law, "by default, [Defendants] waived [the] right to present evidence raising a fact issue on the elements necessary to [their] affirmative defense of avoidance." *See Simon v. BancTexas Quorum, N.A.*, 754 S.W.2d 283, 286 (Tex. App.—Dallas 1988, writ denied).

## II.
## MOTION TO STRIKE DEFENDANTS' DECLARATIONS AND EXHIBITS

In light of the detailed affidavits submitted from NOV's vice president of internal audit, the documentary evidence attached thereto, and the Court's extensive familiarity with this case, it would be entirely proper for the Court to award default judgment to NOV, including punitive damages, without an evidentiary hearing. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Assuming that the Court accepts the calculations offered for NOV's compensatory damages ($21,796,757) as undisputed,[5] NOV believes that an evidentiary hearing is not warranted here. However, to the extent Defendants intend to offer their declarations or other exhibits as evidence on the issue, NOV objects and moves to strike those declarations and exhibits from the evidentiary record that the Court will consider.

In particular, Defendants' declarations [Dkts. 121-8, 121-9, 121-10] are textbook examples of impermissible hearsay and should be excluded on that basis. FED. R. EVID. 801, 802. Defendants' declarations are further worthy of exclusion under FRE 402-403, as they either fleetingly dismiss or fail to discuss the only relevant issue left in this case: the amount of

---

[5] Defendants dispute the sufficiency of NOV's proof and legal theories of entitlement, but do not appear to dispute NOV's specific calculations of compensatory damages, *i.e.* that the funds paid by NOV for the four known schemes less Defendants' known expenses amounts to $18,791,503, and that Defendants' non-salary awards during the time of the known schemes amounts to $3,005,254. *See generally* Response. Defendants also do not offer any alternative calculation of these amounts.

damages to award NOV in the judgment against Defendants for the causes of action and injuries pled. *See generally* Dkts. 121-8, 121-9, 121-10.[6]

Likewise, the news articles [Dkts. 121-2, 121-3, 121-13, 121-14, 121-15], unfiled exhibits [Response fn. 13], and other documents referenced in the Response [*see* Response fn. 20] should also be excluded as hearsay, irrelevant, or both. FED. R. EVID. 402, 403, 801, 802.

## III.
## CONCLUSION

For the reasons stated in the Motion and herein, the default judgment requested by NOV is warranted at this time. Accordingly, NOV respectfully requests that the Court grant default judgment against Defendants for each claim in the Complaint and award the following recovery to NOV:

a) $21,796,757 in compensatory damages, assessed against Defendants jointly and severally;

b) the maximum amount that the Court deems as reasonably proportioned to NOV's compensatory damages and otherwise appropriate in exemplary damages;

---

[6] Indeed, the central purpose of Defendants' declarations appears to be a mixture of self-gratification for the work they did at NOV and indignation that NOV is suing to recover the funds that they skimmed from the top.

Defendants claim, among other things, that they "made a tremendous amount of money for NOV," [Dkt. 121-8 p.4], "saved millions of dollars for NOV" [Dkt. 121-9 p.3], and/or worked long hours on tasks "not part of my job description." [Dkt. 121-10, p.1]. As a result, this lawsuit represents "NOV's stunning ingratitude" for their work. Dkt. 121-8 p.5. Defendants then claim that each of the schemes pled by NOV "resulted in hundreds of millions of dollars in sales," [Dkt. 121-8, p.7], left NOV "happy with [the] sale," [Dkt. 121-9, p.3], were done "at a market rate," [Dkt. 121-9 p.4], or "was not a bad deal for NOV after all." [Dkt. 121-10, p.6].

To be sure, NOV disputes Defendants' statements in their entirety, and objects to any offer of them for their truth. However, NOV agrees that the Court may consider them in assessing appropriate exemplary damages, including the total lack of remorse shown by Defendants for siphoning tens of millions of dollars from their long-time employer.

    c) post-judgment interest (5% per year compounded annually); and

    d) costs of court.

NOV also objects and moves to strike Defendants' declarations and exhibits to the extent they are offered as evidence for their truth.

DATED: March 7, 2018.

| OF COUNSEL: | Respectfully submitted, |
|---|---|
| Shawn M. Bates<br>State Bar No. 24027287<br>Federal ID No. 30758<br>Taylor Freeman<br>State Bar No. 24083025<br>Federal ID No. 1839523<br>1221 McKinney, Suite 2500<br>Houston, Texas  77010<br>Phone: 713.655.1101<br>Fax: 713.655.0062<br>sbates@azalaw.com<br>tfreeman@azalaw.com<br><br>Richard W. Staff<br>State Bar No. 18991330<br>Federal ID No.  9754<br>Jeff Weems<br>State Bar No. 21027600<br>Federal ID No. 12155<br>STAFF WEEMS LLP<br>6363 Woodway, Suite 1100<br>Houston, TX 77057<br>Phone: 281.903.5988<br>Fax: 281.903.5992<br>rstaff@staffweems.com<br>jweems@staffweems.com | /s/ *John Zavitsanos*<br>John Zavitsanos<br>State Bar No. 2251650<br>Federal ID No. 9122<br>Ahmad, Zavitsanos, Anaipakos, Alavi &<br>Mensing, P.C.<br>1221 McKinney, Suite 2500<br>Houston, Texas  77010<br>Phone: 713.655.1101<br>Fax: 713.655.0062<br>jzavitsanos@azalaw.com<br><br>Attorney-in-Charge for Defendant National Oilwell Varco, LP |

**CERTIFICATE OF SERVICE**

  I certify that on March 7, 2018, a true and correct copy of the foregoing was served by ECF to all counsel and unrepresented parties of record, including as follows:

Mark S. Hellinger
THE HELLINGER LAW FIRM
12 Greenway Plaza, Suite 1100
Houston, Texas 77046
Tel: (713) 623-1152
Fax: (713) 623-1221
mhellinger@hellingerlawfirm.com

*Counsel for Defendant Hamdan and Defendant Zantout*

Sadeesh Sadagopan
#19, Garden View Villas
Jebel Ali Village
The Gardens
Dubai
Tel: (+971) 50 5525370
sadeesh.sadagopan@gmail.com

*Defendant*

            */s/ Taylor Freeman*
            Taylor Freeman