# EXHIBIT R

CONSPIRACY: HAS JOINT AND SEVERAL LIABILITY BEEN SUPPLANTED
BY PROPORTIONATE RESPONSIBILITY?

Lyndon Bittle*

I.      Introduction..........................................................................378
II.     The Statute Paints with a Broad Brush ..................................379
III.    *Duenez* and the Dram Shop Act...........................................382
IV.     Applying *Duenez* to Conspiracy ...........................................387
V.      Distinguishing Vicarious and Derivative Liability................392
VI.     Chapter 33 and Derivative Liability ......................................396
VII.    What Does This Mean for Conspiracy Liability?..................400

## I.   INTRODUCTION

The Texas proportionate responsibility statute, Chapter 33 of the Civil Practice and Remedies Code, "applies to . . . any cause of action based on tort," with specified exceptions.[1] Like all statutes, Chapter 33 must be construed and applied to "giv[e] effect to the Legislature's intent as expressed by the plain and common meaning of the statute's words."[2] Does the statute supersede the common law principle that conspirators are jointly and severally liable for damages caused by the underlying tort?[3] I believe it does, notwithstanding conventional wisdom to the contrary.

---

*Trial and appellate partner, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, Texas. Board Certified in Civil Appellate Law by the Texas Board of Legal Specialization. Recognized for appellate practice in Best Lawyers in America since 2016. Fellow, American College of Coverage and Extracontractual Counsel. Texas *Super Lawyer* in insurance coverage since 2012. J.D. 1988, University of California, Berkeley. For more information, *see* http://www.ccsb.com/attorneys/lyndon-bittle.

[1] TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(a)(1) (West 2015).

[2] F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 683 (Tex. 2007).

[3] The common law roots of joint and several liability for conspirators and other joint tortfeasors are deep. *See, e.g.,* Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996); Carroll v. Timmers Chevrolet, Inc., 592 S.W.2d 922, 926 (Tex. 1979); Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509, 514 (Tex. 1942); Wolf v. Perryman, 17 S.W. 772, 775 (Tex.

It is perhaps an understatement that "courts and commentators alike have recognized the difficulty in reconciling the language of the Proportionate Responsibility Statute with certain causes of action, including vicarious and/or derivative liability actions."[4] The Supreme Court of Texas has not addressed Chapter 33's application to conspiracy or aiding and abetting, but its analysis of the statute in other contexts, particularly *F.F.P. Operating Partners, L.P. v. Duenez,*[5] provides valuable guidance. Only a handful of lower courts have confronted this issue, with mixed results. A few more have considered whether other "derivative liability" claims are subject to proportionate responsibility. This article analyzes the series of opinions in *Duenez,* then discusses other relevant cases and commentary. But the first step in construing any statute is understanding the language chosen by the legislature.

## II. THE STATUTE PAINTS WITH A BROAD BRUSH

Chapter 33, since its amendment as part of "tort reform" in 1995, applies to "any cause of action based on tort [or brought under the DTPA] in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought," except claims for (1) workers compensation or wrongful death against an employer; (2) exemplary damages; or (3) damages caused by manufacturing methamphetamine.[6] At the heart of the statutory scheme is § 33.003, "Determination of Percentage of Responsibility":

> (a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether

---

1891) (discussing "established rules" for imposing liability on joint tortfeasors "for the acts of the others"); LandAmerica Commonwealth Title Co. v. Wido, No. 05-14-00036-CV, 2015 Tex. App. LEXIS 11201, at *29 (Tex. App.—Dallas Oct. 29, 2015, no pet.) (holding that a finding of civil conspiracy imposes "joint and several liability on all conspirators for actual damages resulting from the acts in furtherance of the conspiracy.")

[4] Fidelity & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, N.A., No. H-04-2833, 2006 U.S. Dist. LEXIS 23545, at *17 (S.D. Tex. Mar. 31, 2006) (*quoting Duenez,* 237 S.W.3d at 695 (Jefferson, C.J., dissenting)) (citing cases and articles); Diamond H. Recognition LP v. King of Fans, Inc., 589 F. Supp. 2d 772, 774 (N.D. Tex. 2008).

[5] *Duenez,* 237 S.W.3d at 687–91.

[6] TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(a), (c) (West 2015).

by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

> (1) each claimant;
>
> (2) each defendant;
>
> (3) each settling person; and
>
> (4) each responsible third party who has been designated under Section 33.004.[7]

The court uses the percentages of responsibility assigned by the jury to determine the amount of each defendant's liability in accordance with § 33.013: "Except as provided in Subsection (b), a liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact" under § 33.003.[8] Subsection (b) makes a defendant jointly and severally liable if (1) that defendant's percentage of responsibility is greater than 50 percent, or (2) "the defendant, with the specific intent to do harm to others, acted in concert with another person to engage in the conduct described in [14 specified] provisions of the Penal Code and in so doing proximately caused the damages legally recoverable by the claimant."[9]

The Supreme Court of Texas has consistently construed and applied the statute in accordance with its broad terms. In *JCW Electronics, Inc. v. Garza*, it held, "Reading the statute as a whole, section 33.003 reveals that a 'cause of action based on tort' includes negligence, products liability, and any other conduct that violates an applicable legal standard, such as the tort aspect of an implied warranty."[10] In *Duenez*, the Court confirmed Chapter 33 "governs the apportionment of responsibility in cases within its scope" and creates "a general scheme of proportionate responsibility for tort claims, subject to specific statutory exclusions."[11]

The Court has held Chapter 33 contradicts, and thus supplants, many common law principles.[12] In *Nabors Well Services, Ltd. v. Romero*, it held

---

[7] *Id.* § 33.003(a).

[8] *Id.* § 33.013(a).

[9] *Id.* § 33.013(b).

[10] 257 S.W.3d 701, 705 (Tex. 2008).

[11] 237 S.W.3d 680, 687, 692 (Tex. 2007).

[12] *Id.* at 686.

its own long-standing precedents banning consideration of a plaintiff's failure to use seat belts as a cause of his or her injury were incompatible with the legislative mandate to assess the proportionate responsibility of those who contribute to cause injuries.[13] The Court's construction focused on "the statute's plain language."[14]

> Section 33.011(4) directs the fact-finder to assign responsibility to plaintiffs who cause or contribute to cause "in any way" personal injury or death. Similarly, section 33.003(a) also holds plaintiffs accountable for "causing or contributing to cause in any way the harm for which recovery of damages is sought." "In any way" can only mean what it says—there are no restrictions on assigning responsibility to a plaintiff as long as it can be shown the plaintiff's conduct "caused or contributed to cause" his personal injury or death.[15]

Similarly, in *Dugger v. Arredondo*, the Court held the common law unlawful-acts doctrine could not coexist alongside proportionate responsibility and reiterated, "When the Legislature intends an exception to Chapter 33's broad scheme, it creates specific exceptions for matters that are outside the scope of proportionate responsibility."[16] These cases reflect a developing history of decisions acknowledging that enactment of and amendments to Chapter 33 had rendered obsolete common-law doctrines representing the prior "harsh system of absolute victory or total defeat."[17]

So, in addition to those who are alleged to have directly committed particular torts (such as breach of fiduciary duty), shouldn't the proportionate responsibility question under § 33.003 include those alleged to have aided and abetted a fiduciary-duty breach or conspired to commit other underlying torts? After all, the statute requires the question to include, "as to each cause of action asserted," all persons alleged to have "caus[ed]

---

[13] 456 S.W.3d 553, 561, 563 (Tex. 2015).

[14] *Id.* at 563.

[15] *Id.* at 562.

[16] 408 S.W.3d 825, 827, 832 (Tex. 2013) (citing *Duenez*, 237 S.W.3d at 690–91) (*quoting Nabors Wells Servs.*, 456 S.W.3d at 560–61); *see also* MCI Sales & Serv., Inc. v. Hinton, 329 S.W.3d 475, 500–05 (Tex. 2010) (applying Chapter 33's "plain and common meaning" to define "settling person," rejecting interpretation that "would compel us to insert language into the statute that is not there.").

[17] *Nabors Well Servs.*, 456 S.W.3d at 559–61 (tracing history).

or contribut[ed] to cause in any way the harm for which recovery . . . is sought . . . by . . . conduct or activity that violates an applicable legal standard."[18] Conspiracy violates "an applicable legal standard," and contributes to the harm. And doesn't the allocation of liability under § 33.013 supersede joint and several liability for these torts? The "specific statutory exclusions" noted in *Duenez* do not include common law conspiracy or aiding and abetting.[19] The "plain and common meaning of the statute's words"[20] thus leads to the conclusion that alleged conspirators should be included in § 33.003 proportionate responsibility question and their liability governed by § 33.013. The burden of persuasion should be borne by those seeking to avoid this straightforward reading of the statutory language.

### III. *DUENEZ* AND THE DRAM SHOP ACT

The difficulty courts have had "in reconciling the language of [Chapter 33] with certain causes of actions."[21] is exemplified by the *Duenez* saga. The story traces its roots to the Texas Supreme Court's 1993 holding in *Smith v. Sewell* that a previous version of Chapter 33 applied to a claim under the Dram Shop Act[22] brought against a bar by a patron who injured himself driving home.[23] After holding an intoxicated person may assert a claim under the Dram Shop Act for his own injuries, the Court held the claim was encompassed by the language of Chapter 33.[24] In so holding, the Court focused on two predicates: (1) the Dram Shop Act "provides for claims arising from negligence and . . . is not excluded from [Chapter 33's] coverage in section 33.002" and (2) the Dram Shop Act "establishes a legal standard and creates a cause of action for conduct violative of that legal standard."[25]

Nine years later, the Corpus Christi Court of Appeals in *Duenez* distinguished *Sewell* as limited to "first-party actions, when the plaintiff in

---

[18] TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a) (West 2003).

[19] *Duenez*, 237 S.W.3d at 688, 692.

[20] *Id.* at 683.

[21] Fidelity & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, N.A., No. H-04-2833, 2006 U.S. Dist. LEXIS 23545, at *17 (S.D. Tex. Mar. 31, 2006).

[22] TEX. ALCO. BEV. CODE ANN. §§ 2.02, 2.03 (West 2007).

[23] Smith v. Sewell, 858 S.W.2d 350, 350, 356 (Tex. 1993).

[24] *Id.* at 355–56.

[25] *Id.* at 356.

the lawsuit is also the intoxicated person."[26] In lawsuits brought by third parties, the court held, the Dram Shop Act makes the provider vicariously "liable for any harm caused by the intoxicated person, . . . just as an employer is liable for the damages caused by an employee in the course and scope of the employment."[27] Accordingly, allocating responsibility under Chapter 33 "would be meaningless: the vicariously liable party is liable for the other party's actions, as though those actions were its own."[28] The court therefore affirmed a $35 million judgment for a family injured by a drunk driver against a convenience store (F.F.P.) that sold beer to the driver (Ruiz), approving the trial court's refusal to include F.F.P. and Ruiz in a proportionate responsibility question and its decision to sever F.F.P.'s cross-claim against Ruiz into a separate indemnity claim.[29]

On review, the Supreme Court initially affirmed 5-4, but on different grounds.[30] The majority opinion authored by Justice O'Neill disapproved the lower court's interpretation of the Dram Shop Act as imposing purely vicarious liability, noting "the Act has a direct liability component that the court of appeals wholly ignored" because it requires proof the provider made alcohol available to an obviously intoxicated person.[31] Because Chapter 33 applies to this "derivative component" of the provider's liability, both the provider and the intoxicated driver must be included in the proportionate responsibility question.[32] But, the Court held, the provider remains vicariously liable for any responsibility allocated to the driver: "The resulting judgment should aggregate the dram shop's and driver's liability so that the plaintiff fully recovers from the provider without assuming the risk of the driver's insolvency."[33] Nevertheless, because "F.F.P. is responsible to the Duenezes for its own liability and that of Ruiz, from whom F.F.P. may recover to the extent of his imputed liability," severing F.F.P.'s cross-claim against Ruiz was harmless error, and the

---

[26] F.F.P. Operating Partners, L.P. v. Duenez, 69 S.W.3d 800, 805 (Tex. App.—Corpus Christi 2002, pet. abated), *rev'd*, 237 S.W.3d 680 (Tex. 2007) (emphasis omitted).

[27] *Id.* at 805–06.

[28] *Id.* at 806.

[29] *Id.* at 803–04, 810.

[30] F.F.P. Operating Partners, L.P. v. Duenez, 47 Tex. Sup. Ct. J. 1068, 2004 Tex. LEXIS 778, at *1 (Tex. Sept. 3, 2004), *withdrawn and substituted on reh'g*, 2006 Tex. LEXIS 1130 (Nov. 3, 2006), *withdrawn and substituted*, 237 S.W.3d 680 (Tex. 2007).

[31] *Duenez*, 2004 Tex. LEXIS 778, at *12–13.

[32] *Id.* at *13–14.

[33] *Id.* at *16.

judgment was correct.[34] The dissenting justices, in an opinion authored by Justice Owen, criticized the majority's approach as inconsistent with the terms of the relevant statutes and the Court's holding in *Sewell*.[35]

Following an upheaval in the composition of the Court, a motion for rehearing was granted in April 2005, and the case was reargued.[36] In November 2006, three members of the original dissent joined with four new justices to reverse the judgment.[37] Justice O'Neill and Chief Justice Jefferson separately dissented.[38] Respondents filed a motion for rehearing.[39] The Court denied that motion but issued a new opinion with minor editorial changes in May 2007.[40]

Justice Wainwright, now writing for the Court, confirmed claims under the Dram Shop Act are subject to apportionment of responsibility under Chapter 33:

> The broad coverage of the proportionate responsibility statute to tort claims is persuasive. The Chapter 33 proportionate responsibility scheme includes exceptions for certain torts, but claims against providers of alcohol are not among those exceptions. For example, the Legislature carved out exceptions for a host of criminal acts, declaring that there should be joint and several liability instead of proportionate responsibility, but only if there was specific intent to do harm to others and the defendant acted in concert with another. The list of crimes is numerous and broad in scope, ranging from capital murder to fraudulent destruction of a writing, and also includes theft when "the punishment level . . . is a felony of the third degree or higher." Section 33.002(c) expressly excluded from its coverage actions to collect workers' compensation benefits . . . and claims for exemplary damages included in

---

[34] *Id.* at *20–21.

[35] *Id.* at *23–26 (Owen., J., dissenting). Justice Owen was joined by Justices Hecht, Wainwright, and Brister.

[36] F.F.P. Operating Partners, L.P. v. Duenez, No. 02-0381, 2006 Tex. LEXIS 1130, at *5 (Tex. Nov. 3, 2006).

[37] *Id.* at *1.

[38] *Id.* at *41, *68.

[39] F.F.P. Operating Partners v. Duenez, 237 S.W.3d 680, 682 (Tex. 2007).

[40] *Id.*

an action to which this chapter otherwise applies. *When the Legislature has chosen to impose joint and several liability rather than proportionate liability, it has clearly said so.*[41]

Turning to construction of the Dram Shop Act, the Court criticized the court of appeals' focus on vicarious liability:

> This Court has interpreted the Dram Shop Act to create liability based "on the conduct of the provider of the alcoholic beverages—not the conduct of the recipient or a third party." *Sewell*, 858 S.W.2d at 355. The conduct for which the provider may be held liable is the same conduct "whether the intoxicated individual injures himself or a third party." *Id.* Thus, the premise of the court of appeals' vicarious liability holding—that the provider's liability stems from the conduct of the intoxicated individual instead of the provider's own conduct—runs contrary to both the Dram Shop Act and our interpretation of the Act in *Sewell.*[42]

The Court held, however, the provider's liability was inexorably linked to that of the intoxicated driver, reversing the trial court's severance order.[43] As the Court explained, "to succeed in a claim against F.F.P., the Duenezes had to prove that Ruiz was obviously intoxicated and that his conduct proximately caused damages—the same facts and issues that would be litigated in a separate suit by F.F.P. against Ruiz. . . . F.F.P. was entitled to a charge that included a question to allow the trier of fact in a single trial to determine Ruiz's proportionate share of responsibility."[44]

The critical difference between the Court's holdings in 2004 and 2007 is not whether Chapter 33 applies to dram shop liability—the justices agreed it does.[45] Justice O'Neill, as reflected in her opinion for the Court in 2004, relied on Section 7 of the Restatement (Third) of Torts: Apportionment of Liability to conclude the provider retains joint and several liability for the percentage of responsibility assigned to it by the jury, plus direct liability

---

[41] *Id.* at 690–91 (emphasis added) (citations omitted).

[42] *Id.* at 689 (*quoting* Smith v. Sewell, 858 S.W.2d 350, 355 (Tex. 1993)).

[43] *Id.* at 693–94.

[44] *Id.*

[45] *Id.* at 682; F.F.P. Operating Partners, L.P. v. Duenez, 47 Tex. Sup. Ct. J. 1068, 2004 Tex. LEXIS 778, at *2, *10 (Tex. Sept. 3, 2004).

*BAYLOR LAW REVIEW*            [Vol. 69:2

for its own percentage.[46] The 2007 Court rejected this conclusion and its premise: "The common law has been supplanted by statute and Section 7 is not the law on this issue in Texas."[47]

Chief Justice Jefferson disagreed with both the Court and Justice O'Neill and insisted the statute "imposes a form of vicarious liability . . . .[F]or purposes of the Dram Shop Act, the provider virtually becomes the drunk."[48] Concluding *Sewell* was incorrectly decided, Chief Justice Jefferson proposed to limit its holding to first-party actions and overrule "its holding that the provider is properly included within those persons who caused the harm."[49]

Following *Duenez*, the Court considered Chapter 33's application to claims brought under other statutes. First, the Court unanimously held in *Southwest Bank v. Information Support Concepts, Inc.* that Chapter 33 does not apply to a conversion claim under UCC Article 3, because Article 3 is "a comprehensive legislative fault scheme singularly applicable to claims involving negotiable instruments."[50] The Court later held in *JCW Electronics* that Chapter 33 does apply to claims under UCC Article 2 because, unlike Article 3, it "does not undertake a comprehensive fault scheme."[51] *Southwest Bank* and *JCW Electronics* thus do not reflect a departure from the Court's reliance on Chapter 33's plain meaning. Rather, like *Duenez*, they demonstrate the Court's approach to resolving potential conflicts between Chapter 33 and other statutes. As shown above, conflicts with the common law are resolved in favor of the statute's plain terms.[52]

---

[46] *See Duenez*, 2004 Tex. LEXIS 778, at *16 (citing RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 7 cmt. J (2000)); *Duenez*, 237 S.W.3d at 703 (O'Neill, J., dissenting).

[47] *Duenez*, 237 S.W.3d at 686.

[48] *Id.* at 695 (Jefferson, C.J., dissenting).

[49] *Id.* at 702.

[50] Southwest Bank v. Information Support Concepts, Inc., 149 S.W.3d 104, 111 (Tex. 2004); *see also* Challenger Gaming Sols., Inc. v. Earp, 402 S.W.3d 290, 298 (Tex. App.—Dallas 2013, no pet.) (finding Chapter 33 not applicable to claim under Uniform Fraudulent Transfer Act because such claim "does not lend itself to a fault-allocation scheme").

[51] JCW Elecs., Inc. v. Garza, 257 S.W.3d 701, 706 (Tex. 2008); *see also* Diamond H. Recognition LP v. King of Fans, Inc., 589 F. Supp. 2d 772, 776 (N.D. Tex. 2008) ("[T]he provisions of [TEX. CIV. PRAC. & REM. CODE] chapter 82 allowing liability to be imposed on a non-manufacturing seller and requiring manufacturers to indemnify innocent sellers do not create an apportionment-of-responsibility scheme sufficient to displace chapter 33.").

[52] F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 683, 686 (Tex. 2007).

## IV. APPLYING *DUENEZ* TO CONSPIRACY

Although *Duenez* did not directly address whether Chapter 33 applies to conspiracy defendants, the Court's construction of the statute in this and other cases supports such application. Participating in a conspiracy "violates an applicable legal standard," and arguably causes or contributes "in any way to cause the harm" for which damages are sought.[53] Like dram shop liability, claims for conspiracy or aiding and abetting "are not among those exceptions" to proportionate responsibility identified in Chapter 33.[54] While the statute imposes joint and several liability on defendants who act with the "specific intent to do harm . . . in concert with another person" by engaging in conduct violating any one of more than a dozen different sections of the Penal Code,[55] it does not remove conspiracy defendants from the "broad coverage of the proportionate responsibility" provisions.[56] The "plain and common meaning of the statute's words"[57] thus weighs in favor of including alleged conspirators in the § 33.003 question to the jury and allocating liability under § 33.013.

Only a handful of courts have directly addressed this issue, with inconsistent results. Two federal judges in the Southern District of Texas have applied the Texas Supreme Court's construction of Chapter 33 in *Duenez* to conclude that claims of aiding and abetting and conspiracy are subject to the proportionate responsibility provisions, because "the statute applies to all tort claims except those specifically excluded."[58] Judge Lake in *Pemex* held that conversion, conspiracy, and statutory theft are appropriate claims on which to add responsible third parties, because they are not "expressly exempted from Chapter 33's proportionate responsibility

---

[53] TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a) (West 2015).

[54] *Duenez*, 237 S.W.3d at 690.

[55] TEX. CIV. PRAC. & REM. CODE ANN. § 33.013(b)(2). The incorporated crimes include murder, various forms of assault, forgery, commercial bribery, misapplication of fiduciary property, theft, and fraudulently securing execution or destruction of documents. *Id.*; *see Duenez*, 237 S.W.3d at 690–91. Criminal conspiracy is not included. TEX. PENAL CODE ANN. § 15.02 (West 2015).

[56] *Duenez*, 237 S.W.3d at 690–91.

[57] *Id.* at 683.

[58] Seven Seas Petrol., Inc. v. CIBC World Mkts. Corp., No. H-08-3048, 2013 U.S. Dist. LEXIS 101112, at *73–74 (S.D. Tex. July 19, 2013) (Atlas, J.)*; see also* Pemex Exploración y Producción v. BASF Corp., Nos. H-10-1997, H-11-2019, 2011 U.S. Dist. LEXIS 156655, at *44–47 (S.D. Tex. Oct. 20, 2011) (Lake, J.).

framework."[59] In *Seven Seas,* Judge Atlas reached the same result for the same reasons.[60] The Waco Court of Appeals in *Laxson v. Giddens* concluded a conspirator was liable for only 30% of the plaintiff's damages in line with the jury's apportionment, but did not expressly address whether it was proper to apply Chapter 33 in this situation.[61]

Other courts, however, have not followed *Duenez* in considering such claims. In an earlier decision in the Southern District, Judge Harmon declined to apply Chapter 33 to conspiracy to commit fraud, without acknowledging the statutory construction in *Duenez.*[62] And Judge Rainey, also in the Southern District, previously held claims of aiding and abetting a breach of fiduciary duty were not subject to proportionate responsibility, relying in part on the Texas Supreme Court's initial 2004 opinion in *Duenez,* which was later withdrawn and replaced by a fundamentally different holding.[63] The court was not persuaded that when "the Legislature enumerated certain instances when a party acting in concert with another should be held jointly and severally liable," it excluded joint and several liability "for concerted action claims like conspiracy and aiding and abetting that do not . . . rise to the higher, criminal level of culpability."[64] Although the court acknowledged the latter were not criminal claims, it noted "they plainly require a higher level of culpability than mere negligence."[65] The court concluded joint and several liability was appropriate "[i]n light of the fact that the Proportionate Responsibility Statute has already been declared inappropriate in certain contexts, . . . as well as the fact that the claims at issue involve allegations of highly culpable conduct."[66] This approach is inconsistent with the statutory construction of *Duenez,*[67] as discussed above.[68]

---

[59] *Pemex,* 2011 U.S. Dist. LEXIS 156655, at *46–47 (citing *Duenez,* 237 S.W.3d at 690–91).

[60] *Seven Seas,* 2013 U.S. Dist. LEXIS 101112, at *73–74 (citing *Pemex,* 2011 U.S. Dist. LEXIS 156655, at *46–47, and *Duenez,* 237 S.W.3d at 690–91).

[61] Laxson v. Giddens, 48 S.W.3d 408, 412 (Tex. App.—Waco 2001, pet. denied).

[62] *See* Newby v. Enron Corp., 623 F. Supp. 2d 798, 833 (S.D. Tex. 2009) (Harmon, J.).

[63] Fidelity & Guar. Ins. Underwriters Inc. v. Wells Fargo, No. H-04-2833, 2006 U.S. Dist. LEXIS 23545, at *20–24 (S.D. Tex. Mar. 31, 2006).

[64] *Id.* at *22–23.

[65] *Id.* at *23.

[66] *Id.* at *24 (citing Rosell v. Central W. Motor Stages, Inc., 89 S.W.3d 643, 657 (Tex. App.—Dallas 2002, pet. denied)).

[67] F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 691 (Tex. 2007) ("When the Legislature has chosen to impose joint and several liability rather than proportionate liability, it has clearly said so.").

In 2014, the Fort Worth Court of Appeals in the *Heat Shrink* case took an approach similar to the court of appeals in *Duenez* to conclude a knowing participant in a breach of fiduciary duty should be excluded from the apportionment question.[68] Without addressing the actual language of Chapter 33 or acknowledging the Texas Supreme Court's decision in *Duenez*, the court noted that under the common law, knowing participation (also called "aiding and abetting") imposes joint and several liability; because the knowing participant's liability is the breaching party's liability, the court held it is "unnecessary" to include the alleged knowing participant in the apportionment question.[70] I am not aware of any other courts confronting Chapter 33's application to conspiracy or aiding-and-abetting claims.

Judge Harmon, in holding Chapter 33's apportionment scheme did not apply to a conspiracy claim, relied heavily on a 2002 article by Dallas lawyer Carl Adams.[71] The author acknowledges Chapter 33 might be read to abolish joint and several liability for conspirators, but he contends this reading is flawed.

> Because the focus of Chapter 33 in determining the percentage of responsibility of a liable defendant is to divide or define the active conduct "causing or contributing to cause in any way the harm for which recovery of damages is sought," it is obvious that it concerns only the primary conduct of the active participants in the event, accident, or physical episode giving rise to the injuries complained of by the claimant, and the causational role of that primary conduct in the episode.[72]

I question the bold proclamation it is "obvious" the statute limits apportionment to "active participants." This conclusion is inconsistent with the statute's mandate that responsibility be allocated "as to each cause of

---

[68] *See supra* text accompanying notes 41–47.

[69] Heat Shrink Innovations, LLC v. Medical Extrusion Techs.-Tex., Inc., No. 02-12-00512-CV, 2014 Tex. App. LEXIS 11494, at *18–20 (Tex. App.—Fort Worth Oct. 16, 2014, pet. denied).

[70] *Id.* at *19–20 (citing *Rosell*, 89 S.W.3d at 656–57).

[71] *See* Newby v. Enron Corp., 623 F. Supp. 2d 798, 832–35 (S.D. Tex. June 1, 2009) (citing Carl David Adams, *The "Tort" of Civil Conspiracy in Texas*, 54 BAYLOR L. REV. 305, 315 (Spring 2002) [hereinafter *Civil Conspiracy*]).

[72] *Civil Conspiracy*, *supra* note 71, at 315.

action asserted," for persons allegedly causing harm "in any way" by "conduct or activity that violates an applicable legal standard."[73] And it is contradicted by the plain-meaning construction by the Supreme Court and others, which have held it pulls a broad range of liability theories—including conspiracy—into Chapter 33's apportionment scheme.[74]

Adams's interpretation of § 33.013, which imposes joint and several liability when a defendant has "specific intent to do harm to others [and acts] in concert with another person" to engage in conduct violating certain penal code provisions,[75] likewise conflicts with the Supreme Court's subsequent construction of that section in *Duenez*, discussed above.[76] Indeed, Adams concedes this provision can be read to *limit* conspirators' joint and several liability to instances when § 33.013(b)(2) has been satisfied,[77] but he advances two arguments to challenge this reading.

First, Adams notes statutes should not be construed to "deprive citizens of common law rights and causes of action" unless the statutory text clearly expresses that intention, citing the *Cash America* case.[78] Of course, Chapter 33 does not eliminate any cause of action, but simply changes the apportionment of damages in certain cases.[79] It does, however, affect a plaintiff's common law "right" to impose joint and several liability in some situations, as well as several other "rights" held by both plaintiffs and defendants under the common law.[80] *Cash America*, in rejecting an agency's statutory construction, did not dilute the Court's traditional deference to the express terms of a statute.[81] As the Court explained in *Sewell*, Texas courts do not strictly construe "statutes in derogation of the common law," but if a statute "deprives a person of a common law

---

[73] Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a) (West 2015).

[74] *See* F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 690–91 (Tex. 2007); Nabors Well Servs., Ltd. v. Romero, 456 S.W.3d 553, 562 (Tex. 2015); Seven Seas Petrol., Inc. v. CIBC World Mkts. Corp., No. H-08-3048, 2013 U.S. Dist. LEXIS 101112, at *73–74 (S.D. Tex. July 19, 2013); Pemex Exploración y Producción v. BASF Corp., Nos. H-10-1997, H-11-2019, 2011 U.S. Dist. LEXIS 156655, at *46–47 (S.D. Tex. Oct. 20, 2011).

[75] Tex. Civ. Prac. & Rem. Code Ann. § 33.013(b)(2).

[76] *See supra* text accompanying notes 41–47.

[77] *Civil Conspiracy, supra* note 71, at 319.

[78] *Id.* at 319–20 (citing Cash Am. Int'l, Inc. v. Bennett, 35 S.W.3d 12, 16 (Tex. 2000)).

[79] *See Civil Conspiracy, supra* note 71; Tex. Civ. Prac. & Rem. Code Ann. § 33.0012.

[80] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001, 33.003.

[81] *Cash*, 35 S.W.3d at 16.

right, . . .it will not be extended beyond its plain meaning or applied to cases not clearly within its purview."[82]

Chapter 33's 1995 amendment, by creating the "responsible third party" designation and including such parties in the proportionate responsibility question, unquestionably deprived plaintiffs of the right to limit the allocation of liability to parties sued by the plaintiff and thus "allowed a defendant to significantly reduce the potential for joint and several liability."[83] This provision was expanded in 2003 to allow "a defendant liberally to designate responsible third parties, including parties not subject to the court's jurisdiction, immune from suit, or who are unknown."[84] In *Halliburton*, a case involving fraud, wrongful death, and conspiracy, defendants were granted leave to designate certain terrorist organizations as responsible third parties.[85] And more broadly, the Texas Supreme Court has repeatedly held "Chapter 33's broad scheme . . . of proportionate responsibility" supplanted common law doctrines governing allocation of responsibility between plaintiffs and defendants.[86]

Second, Adams argues the Penal Code violations listed in § 33.013(b)(2) are intended to impose joint and several liability based on less stringent proof than that required for conspiracy, and thus do not preclude imposing joint and several liability on conspirators.[87] In his view, proof of intent to act "in concert" would relieve a plaintiff of the "onerous obligation of proving the traditional elements to establish . . . conspiracy," *e.g.*, an actual agreement between the parties.[88] The district court in *Wells Fargo* likewise diluted the effect of the legislature's decisions concerning

---

[82] Smith v. Sewell, 858 S.W.2d 350, 354 (Tex. 1993) (citations omitted).

[83] Joyce Steel Erection, Ltd. v. Bonner, 506 S.W.3d 64 (Tex. App.—Texarkana 2015, no pet.) ("[P]rior to the 1995 amendments, Chapter 33 allowed the claimant to control the submission of the comparative responsibility issue . . .[t]his greatly affected whether a defendant would . . . be held jointly and severally liable."). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004.

[84] Fisher v. Halliburton, No. H-05-1731, 2009 U.S. Dist LEXIS 34464, at *10–11 (S.D. Tex. Apr. 23, 2009); *see also Joyce, 506 S.W. 3d at 65–66*; Nationwide Lloyds Ins. Co. v. Norcold, Inc., No. A-09-CA-113 LY, 2009 U.S. Dist. LEXIS 96791, at *8 (W.D. Tex. Oct. 19, 2009); In re Unitec Elevator Servs. Co., 178 S.W.3d 53, 58 n.5 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding).

[85] *Fisher*, 2009 U.S. Dist. LEXIS 34464, at *16–21.

[86] Dugger v. Arredondo, 408 S.W.3d 825, 832 (Tex. 2013); *see also* Nabors Well Servs., Ltd. v. Romero, 456 S.W.3d 553, 562–63 (Tex. 2015); MCI Sales & Serv. V. Hinton, 329 S.W.3d 475, 504–05 (Tex. 2010).

[87] *Civil Conspiracy, supra* note 71, at 320–21.

[88] *Id.* at 321.

*BAYLOR LAW REVIEW* [Vol. 69:2

joint and several liability by equating the specified criminal actions with the "highly culpable conduct" of civil conspiracy.[89] The Texas Supreme Court in *Duenez*, however, rejected this logic. Relying on the carve-outs of some causes of action from Chapter 33 and the express imposition of joint and several liability in other situations, the Court held, "When the Legislature has chosen to impose joint and several liability, it has clearly said so."[90]

## V.  DISTINGUISHING VICARIOUS AND DERIVATIVE LIABILITY

*Heat Shrink*, *Wells Fargo*, and other cases (as well as the court of appeals and Chief Justice Jefferson's dissent in *Duenez*) have relied on *Rosell v. Central Western Motor Stages, Inc.* and other negligent-entrustment cases as support for limiting the scope of Chapter 33.[91] The Dallas court in *Rosell* acknowledged "the statute on its face requires all defendants to be included in the apportionment question."[92] Nevertheless, noting it would "not be proper for an employer to be included along with the driver if its only responsibility was that of respondeat superior," the court held the owner/employer in a negligent entrustment case is similarly "liable for the acts of the driver, and the degree of negligence of the owner/ employer is of no consequence."[93] The Austin Court of Appeals in *Conkle v. Chery* relied on *Rosell* in holding that because "negligent entrustment is a form of vicarious liability, a successful claim would make [the entrustor] vicariously liable . . .to the extent [the driver] was liable."[94] In 2016, the

---

[89] Fidelity & Guar. Ins. Underwriter Inc. v. Wells Fargo, No. H-04-2833, 2006 U.S. Dist. LEXIS 23545, at *22–23 (S.D. Tex. Mar. 31, 2006).

[90] F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 691 (Tex. 2007); *see also Dugger*, 408 S.W.3d at 832.

[91] *Wells Fargo*, 2006 U.S. Dist. LEXIS 23545, at *24; Heat Shrink Innovations, LLC v. Med. Extrusion Techs.-Tex., Inc., No. 02-12-00512-CV, 2014 Tex. App. LEXIS 11494, at *19 (Tex. App.—Fort Worth Oct. 16, 2014, pet. denied); *Duenez*, 237 S.W.3d at 695.

[92] *Rosell*, 89 S.W.3d at 657. Other courts and commentators have likewise acknowledged the statutory language supports including derivatively-liable defendants in the proportionate responsibility, but have opted for a less literal construction. *See, e.g., Wells Fargo*, 2006 U.S. Dist. LEXIS 23545, at *23–24; Bedford v. Moore, 166 S.W.3d 454, 461 (Tex. App.—Fort Worth 2005, no pet.); *Civil Conspiracy*, *supra* note 71, at 319; William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious, Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another*, 55 BAYLOR L. REV. 617, 649 – 50 (Spring 2003) [hereinafter *Apportioning Responsibility*].

[93] *Rosell*, 89 S.W.3d at 657.

[94] Conkle v. Chery, No. 03-08-00379-CV, 2009 Tex. App. LEXIS 1385, at *12–13 (Tex. App.—Austin Feb. 25, 2009, no pet.). The court in *Conkle* distinguished *Duenez* on the grounds

Dallas Court of Appeals held a person who negligently entrusted her car to an unlicensed driver was jointly and severally liable for the 85% responsibility the jury allocated to the driver.[95]

The Fort Worth Court of Appeals in 2005 quoted *Rosell* in rejecting a defendant's "literal interpretation" of Chapter 33.[96] Indeed, the *Bedford* court said it was "obvious" the statute did not require apportionment of responsibility in a respondeat superior situation "because an employer may have committed no negligent acts to submit to the jury and still be held accountable under respondeat superior."[97] The court did not, however, equate respondeat superior and negligent entrustment, citing a distinction between "vicarious" and "derivative" liability posited by Professors Underwood and Morrison in 2003:[98]

> Texas law recognizes a number of circumstances where one person is held legally responsible [for] harm, caused at least in part, by the conduct of another. This responsibility may be [1] vicarious, [2] derivative, or [3] the result of shared culpable conduct such as that of joint tortfeasors acting in concert or responsible for the plaintiff's indivisible injuries.[99]

Although the three categories of liability—vicarious, derivative, and joint tortfeasor—are more conceptual than concrete, they help frame the analysis.

Vicarious liability arises from certain relationships in which a tortfeasor's direct liability for wrongful conduct is imputed to a second party by operation of law.[100] For example, respondeat superior makes employers vicariously liable for damages caused by the conduct of

---

that the Supreme Court "specifically distinguished dram shop actions from negligent entrustment actions, which impose vicarious liability." *Conkle*, 2009 Tex. App. LEXIS 1385, at *14 (citing *Duenez*, 237 S.W.3d at 687).

[95] Dao v. Garcia, 486 S.W.3d 618, 621 (Tex. App.—Dallas 2016, pet. filed).

[96] *Bedford*, 166 S.W.3d at 461.

[97] *Id.*

[98] *Id.* Other courts have used the terms "vicarious" and "derivative" interchangeably. *See, e.g.,* *Dao*, 486 S.W.3d at 629 (citing cases).

[99] *Apportioning Responsibility, supra* note 92, at 618. The authors acknowledge the terms "vicarious" and "derivative" can be given various meanings, but propose the distinction "for conceptual clarity." *Id.* at 620 n.8.

[100] *Id.* at 618–19; *Civil Conspiracy, supra* note 71, at 316.

*BAYLOR LAW REVIEW* [Vol. 69:2

employees acting within the course and scope of employment;[101] other principals are likewise vicariously liable for damages caused by the tortious conduct of their agents acting for the benefit and subject to the control of the principal;[102] general partners (and the partnership) are vicariously liable for damages caused by the wrongful conduct of another partner acting in the ordinary course of the partnership's business;[103] and parents may be vicariously liable for the "willful and malicious conduct" of their children.[104] Vicarious liability can also be imposed by statute.[105] Liability arising from these relationships is not founded on wrongful conduct by the party held vicariously responsible for the conduct of another.[106]

Derivative liability, in contrast, requires "wrongful conduct both by the person who is held vicariously liable and the actor whose wrongful conduct was the direct cause of injury to another."[107] Texas law recognizes many

---

[101] *See* Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002) (finding that conduct must be "in the furtherance of the employer's business"); GTE Sw., Inc. v. Bruce, 998 S.W.2d 605, 617 (Tex. 1999); Knutson v. Morton Foods, Inc., 603 S.W.2d 805, 807 (Tex. 1980); Newspapers, Inc. v. Love, 380 S.W.2d 582, 589 (Tex. 1964).

[102] *See* Arvizu v. Estate of Puckett, 364 S.W.3d at 273, 276 (Tex. 2012); Painter v. Sandridge Energy, Inc., No. 08-13-00272-CV, 2015 Tex. App. LEXIS 11301, at *20–21 (Tex. App.—El Paso Nov. 3, 2015, pet. denied); Crooks v. M1 Real Estate Partners, Ltd., 238 S.W.3d 474, 491 (Tex. App.—Dallas 2007, pet. denied).

[103] *See* TEX. BUS. ORGS. CODE §§ 152.303(a), 152.304 (West 2015); Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P., 417 S.W.3d 46, 56 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); Doctors Hosp. at Renaissance, Ltd. v. Andrade, 493 S.W.3d 545, 547–48 (Tex. 2016). A similar rule applies to joint ventures. *See* Corinth Joint Venture v. Lomas & Nettleton Fin. Corp., 667 S.W.2d 593, 595 (Tex. App.—Dallas 1984, writ dism'd).

[104] TEX. FAM. CODE ANN. § 41.001(2) (West 2015); *see* Amarillo Nat'l Bank v. Terry, 658 S.W.2d 702, 704 (Tex. App.—Amarillo 1983, no writ); Aetna Ins. Co. v. Richardelle, 528 S.W.2d 280, 283 (Tex. App.—Corpus Christi 1975, writ ref'd n.r.e.); *Apportioning Responsibility, supra* note 92, at 619.

[105] *See, e.g.*, Morris, v. JTM Materials, Inc., 78 S.W.3d 28, 38–39 (Tex. App.—Fort Worth 2002, no pet.) (holding that interstate motor carriers are vicariously liable under federal statute and regulations for negligence of drivers, without regard to respondeat superior liability under state law).

[106] *Apportioning Responsibility, supra* note 92, at 619; Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998); Wilson v. Davis, 305 S.W.3d 57, 66 (Tex. App.—Houston [1st Dist.] 2009, no pet.); Bedford v. Moore, 166 S.W.3d 454, 460–61 (Tex. App.—Fort Worth 2005, no pet.).

[107] *Apportioning Responsibility, supra* note 92, at 619; *see Bedford*, 166 S.W.3d at 461; Johnson v. Sawyer, 47 F.3d 716, 730 (5th Cir. 1995); Fid. & Guar. Ins. Underwriter Inc. v. Wells Fargo, No. H-04-2833, 2006 U.S. Dist. LEXIS 23545, at *18–19 (S.D. Tex. Mar. 31, 2006).

grounds for derivative liability,[108] including negligent hiring, supervision, or retention by an employer;[109] negligent entrustment by the owner of a vehicle or other property;[110] and negligent failure to warn or reduce the risk of foreseeable criminal conduct by third parties.[111] Parental liability for a child's *negligent* (not willful or malicious) conduct is derivative or direct rather than purely vicarious; it requires proof the child's negligent conduct was "reasonably attributable to the negligent failure of the parent" to exercise the duty of "control and reasonable discipline."[112]

The third category—joint or concurrent tortfeasors—includes, for example, everyone in the chain of commerce of an allegedly defective product: designer, manufacturer, component manufacturer, distributor, and retailer, who may be liable under a variety of legal theories (strict liability, negligence, breach of warranty).[113] This category may also include others who, while not in the chain of commerce, are alleged to have contributed in some way to the plaintiff's injury, such as other drivers, a physician, or the plaintiff himself.[114]

---

[108] *Apportioning Responsibility*, *supra* note 92, at 620–21 (identifying several categories of derivative liability).

[109] *See* Johnson v. Sawyer, 47 F.3d 716, 730 (5th Cir. 1995); Wansey v. Hole, 379 S.W.3d 246, 247 (Tex. 2012) (holding that liability for negligent hiring requires "damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices"); Read v. Scott Fetzer Co., 990 S.W.2d 732, 735 (Tex. 1998); Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 495–96 (Tex. App.—Fort Worth 2002, no pet.).

[110] *See Sawyer*, 47 F.3d at 730; 4Front Engineered Sols., Inc. v. Rosales, 60 Tex. Sup. Ct. J. 158, 2016 Tex. LEXIS 1153, at *4–6 (Tex. Dec. 23, 2016); Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex. 1987); Loom Craft Carpet Mills, Inc. v. Gorrell, 823 S.W.2d 431, 432 (Tex. App.—Texarkana 1992, no writ).

[111] *Apportioning Responsibility*, *supra* note 92, at 620–21; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 549 (Tex. 1985).

[112] Tex. Fam. Code Ann. § 41.001(1) (West 2015).

[113] *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a) (West 2015) (allocation applies to those alleged to have caused "in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these"); *e.g.*, Olympic Arms, Inc. v. Green, 176 S.W.3d 567, 575 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

[114] *See, e.g.*, General Motors Corp. v. Sanchez, 997 S.W.2d 584, 593 (Tex. 1999) (plaintiff); ExxonMobil Corp. v. Pagayon, 467 S.W.3d 36, 51–52 (Tex. App.—Houston [14th Dist.] 2015, pet. granted) (emergency room physician).

*BAYLOR LAW REVIEW* [Vol. 69:2

## VI. CHAPTER 33 AND DERIVATIVE LIABILITY

To what extent does Chapter 33 treat these three categories differently? Joint tortfeasors in the third category are, since 1995, unquestionably subject to the proportionate responsibility regime of Chapter 33 if they are a defendant, a settling person, or a responsible third party.[115] In addition to the product liability and personal injury claims identified in the previous paragraph, proportionate responsibility applies to claims of fraud, strict liability, and some statutory torts.[116] It also encompasses claims under the Texas Securities Act and the Texas Trust Act.[117]

It is generally accepted that claims in the first category, purely vicarious liability, are not subject to the statute.[118] "Since vicarious liability is based on the existence of a particular relationship, such as an employer-employee relationship, rather than any particular 'conduct or activity' by the vicariously liable party, section 33.003 does not permit the jury to consider the vicariously liable party in apportioning responsibility."[119] Although the Texas Supreme Court has not expressly adopted that position,[120] it is easily reconciled with the text of the statute. The employment or partnership

---

[115] *Apportioning Responsibility*, *supra* note 92, at 623; MCI Sales & Serv., Inc. v. Hinton, 329 S.W.3d 475, 499–500 (Tex. 2010); *Olympic Arms*, 176 S.W.3d at 575; Bedford v. Moore, 166 S.W.3d 454, 461 (Tex. App.—Fort Worth 2005, no pet.).

[116] *See* JCW Elecs., Inc. v. Garza, 257 S.W.3d 701, 705–06 (Tex. 2008) (applying to breach of warranty under UCC governed by Chapter 33); *Gen. Motors*, 997 S.W.2d at 594 (applying to strict liability); Alanis v. US Bank N.A., 489 S.W.3d 485, 507–08 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (applying to fraud, violation of federal debt collection practices act).

[117] *See* Villarreal v. Wells Fargo Brokerage Servs., LLC, 315 S.W.3d 109, 124–25 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

[118] *See, e.g.*, Battaglia v. Alexander, 93 S.W.3d 132, 144 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("Common-law joint-and-several-liability rules for partnership, agency, joint venture, and piercing the corporate veil situations survived the enactment of § 33.013 . . . ."), *rev'd in part on other grounds*, 177 S.W.3d 893 (Tex. 2005); North Am. Van Lines, Inc. v. Emmons, 50 S.W.3d 103, 122 (Tex. App.—Beaumont 2001, pet. denied) ("The proportionate responsibility statute did not do away with the application of partnership and agency theories, nor did it replace equitable doctrines imposing liability on one corporation for the acts of another.").

[119] *Apportioning Responsibility*, *supra* note 92, at 634–35; *see* Williams v. McCollister, 671 F. Supp. 2d 884, 890 (S.D. Tex. 2009); *Villarreal*, 315 S.W.3d at 125–26.

[120] *See* Sloan v. Law Office of Oscar C. Gonzalez, 479 S.W.3d 833, 835 (Tex. 2016) (per curiam) ("We express no opinion on whether Chapter 33's proportionate-responsibility scheme supersedes common law joint-venture and joint-enterprise theories for imposing joint and several liability . . . .").

relationship does not itself violate "an applicable legal standard" or contribute to the cause of any harm.[121]

That leaves the second category—derivative liability. Does Chapter 33 mandate apportionment of responsibility between "primary" tortfeasors and those whose liability is "derivative" of the underlying tort? Many of the cases cited above, following *Rosell*, have treated derivative liability as equivalent to vicarious liability, and excluded both from the reach of Chapter 33.[122] Some have extended this approach to conspiracy or aiding and abetting claims.[123]

The Fort Worth court in *Bedford* considered a plaintiff's appeal of a take-nothing judgment, where a driver's employer was not included in the proportionate responsibility question.[124] The court recognized the three categories posited by Underwood and Morrison, and acknowledged negligent entrustment did not create "[pure] vicarious" liability.[125] The court observed the Supreme Court's 2004 *Duenez* opinion concerning dram shop liability (for which a motion for rehearing was pending) "parallels the negligent hiring/entrustment theory of recovery."[126] It held, therefore, the allegedly negligent employer should have been included in "an initial liability question" and with the allegedly negligent employee in "the comparative negligence questions."[127] The court also noted the 2004 *Duenez* holding (which was reversed in 2007) that "the resulting judgment should aggregate" the liability of the driver and the person derivatively

---

[121] *See Villarreal*, 315 S.W.3d at 126 (employer's respondeat superior liability does not justify designation as responsible third party as defined in § 33.011(6)).

[122] *See Dao v. Garcia*, 486 S.W.3d 618, 628–29 (Tex. App.—Dallas 2016, pet. filed); 4Front Engineered Sols., Inc. v. Rosales, No. 13-13-00655-CV, 2015 Tex. App. LEXIS 2332, at *60; *McCollister*, 671 F. Supp. 2d at 890–91; Conkle v. Chery, No. 03-08-00379-CV, 2009 Tex. App. LEXIS 1385, at *12–14 (Tex. App.—Austin Feb. 25, 2009, no pet.); Rosell v. Central W. Motor Stages, Inc., 89 S.W.3d 643, 656–57 (Tex. App.—Dallas 2002, no pet.).

[123] *See, e.g.,* Heat Shrink Innovations, LLC v. Med. Extrusion Techs.-Tex., Inc., No. 02-12-00512-CV, 2014 Tex. App. LEXIS 11494, at *19–20 (Tex. App.—Fort Worth Oct. 16, 2014, pet. denied); Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, No. H-04-2833, 2006 U.S. Dist. LEXIS 23545, at *24 (S.D. Tex. Mar. 31, 2006).

[124] Bedford v. Moore, 166 S.W.3d 454, 458 (Tex. App.—Fort Worth 2005, no pet.).

[125] *Id.* at 459, 461–62.

[126] *Id.* at 462. *But see Conkle*, 2009 Tex. App. LEXIS 1385, at *14 (distinguishing dram shop and negligent-entrustment liability).

[127] *Bedford*, 166 S.W.3d at 462–63.

liable.[128] In the end, however, the court held failure to include the employer in the apportionment question was harmless error, because the jury had allocated 60% of the responsibility to the plaintiff, which barred recovery under TEX. CIV. PRAC. & REM. CODE ANN. § 33.001.[129]

In *4Front Engineered Solutions,* a warehouse owner (4Front) was found liable for negligently entrusting a forklift to an independent contractor (Reyes), whose negligent operation caused another worker (Rosales) to suffer serious injuries.[130] At trial, 4Front, Reyes, and Rosales were each found to have negligently contributed to Rosales's injuries, and all were included in the proportionate responsibility question.[131] The jury allocated 75% responsibility to 4Front, 15% to Reyes, and 10% to Rosales.[132] After deducting the percentage allocated to Rosales, the court entered judgment holding 4Front jointly and severally liable for $7.2 million actual damages.[133] On appeal, the Corpus Christi Court of Appeals held the jury's allocation of responsibility was supported by factually sufficient evidence, and affirmed the actual damages against 4Front.[134] The court cited *Duenez* to suggest 4Front was vicariously liable for Reyes's negligence so should not have been included in the proportionate responsibility question, but did not directly address that issue because 4Front did not raise it on appeal.[135]

The Texas Supreme Court reversed, holding that negligent entrustment required "more than just general negligence" on the part of the entrustor.[136] The Court did not comment on the inclusion of both 4Front and Reyes in the proportionate responsibility question, other than to decline to "reapportion" the responsibility between Reyes and Rosales based on the jury's allocation.[137] Because "the possibility that the jury would have

---

[128] *Id.* at 462 (quoting F.F.P. Operating Partners, L.P. v. Duenez, 47 Tex. Sup. Ct. J. 1068, 2004 Tex. LEXIS 778, at *16 (Tex. Sept. 3, 2004).

[129] *Bedford,* 166 S.W.3d at 463–64.

[130] 4Front Engineered Sols., Inc. v. Rosales, No. 13-13-00655-CV, 2015 Tex. App. LEXIS 2332, at *2–3, *46–48 (Tex. App.—Corpus Christi Mar. 12, 2015), *rev'd,* 2016 Tex. LEXIS 1153 (Tex. Dec. 23, 2016).

[131] *Id.* at *12–13, *22, *25–26, *50, *60.

[132] *Id.* at *32, *60.

[133] *Id.* at *32.

[134] *Id.* at *61, *88.

[135] *Id.* at *60, *62 n.11.

[136] 4Front Engineered Sols., Inc. v. Rosales, 60 Tex. Sup. Ct. J. 158, 2016 Tex. LEXIS 1153, at *7 (Tex. Dec. 23, 2016).

[137] *Id.* at *15.

*CONSPIRACY*

assigned different percentages to Reyes and Rosales had it found that 4Front bears no responsibility might compel a different result," the Court remanded to the trial court for a determination of "the proper disposition of Rosales's claims against Reyes."[138]

Professors Underwood and Morrison interpret Chapter 33 as excluding "derivatively liable" defendants from proportionate responsibility.[139] Although they do not mention conspiracy, they argue in a broader context it would be bad public policy to apportion responsibility between a directly liable party and a derivatively liable party.[140] They acknowledge, however, their position is "difficult to reconcile with the express language of the apportionment of responsibility provisions of Chapter 33":[141]

> Nothing in the definition of responsible third party found in section 33.011(6) would exclude persons whose liability is derivative. Additionally, because the derivatively liable party engaged in conduct that caused or contributed to cause the plaintiff's injuries, section 33.003 appears to authorize apportioning responsibility between the directly and derivatively liable parties.[142]

The authors also acknowledge the Pattern Jury Charge Committee initially assumed "the responsibility of a derivatively liable negligent entrustor would be apportioned with that of the directly liable negligent entrustee."[143]

To support their position that the statute should not be applied as written, the authors cite two lower courts that had "recently refused to permit the jury to apportion responsibility between a party which was directly liable and another whose liability was only derivative"—*Rosell*, discussed above, and *Duenez*, which was subsequently reversed.[144] They also rely on language in the RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY and cases stating similar justifications for

---

[138] *Id.* at *15–16.

[139] *Apportioning Responsibility*, *supra* note 92, at 622, 624–25.

[140] *Id.* at 642–46.

[141] *Id.* at 642.

[142] *Id.* at 647.

[143] *Id.* at 644–45 (citing TEX. PATTERN JURY CHARGE 4.3 cmt. (2000)). A comment to the current Pattern Jury Charge on negligent entrustment indicates it is "uncertain" whether "the entrustor should be submitted in the comparative causation question." TEX. PJC 10.12 cmt. (2016).

[144] *Apportioning Responsibility*, *supra* note 92, at 623–24, 624 n.29.

*BAYLOR LAW REVIEW* [Vol. 69:2

imposing joint and several liability[145]—which the Court in *Duenez* held could not supersede the plain meaning of the statute.[146] The authors' public-policy arguments should therefore be directed to the legislature.

## VII. WHAT DOES THIS MEAN FOR CONSPIRACY LIABILITY?

The purpose of this article is not to resolve thorny questions about applying Chapter 33 to employer-liability theories like respondeat superior and negligent hiring. My focus is on applying the statute to claims of conspiracy or aiding and abetting. In assigning these claims to the three liability categories, it is important to keep in mind the categories are conceptual, and do not have clearly defined boundaries. Negligent entrustment, for example, is sometimes referred to as "a form of vicarious liability."[147] A successful claim, however, requires proof the driver/trustee negligently caused damages and the owner "knew or should have known of the [the driver's] incompetence or recklessness."[148] The owner's liability is thus not purely vicarious, in contrast with respondeat superior liability.[149]

Liabilities imposed on employers are particularly murky. Where an employee's negligence occurs in the course and scope of employment and "only ordinary negligence is alleged," the doctrines of respondeat superior and negligent hiring "are mutually exclusive modes of recovery."[150] Gross negligence by the employer in hiring or supervising a negligent employee, however, can support a separate claim for punitive damages against the

---

[145] *Id.* at 642–43.

[146] 237 S.W.3d 680, 685–86 (Tex. 2007).

[147] *See* Conkle v. Chery, No. 03-08-00379-CV, 2009 Tex. App. LEXIS 1385, at *12–13 (Tex. App.—Austin Feb. 25, 2009, no pet.); F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 686 (Tex. 2007).

[148] 4Front Engineered Sols., Inc. v. Rosales, 60 Tex. Sup. Ct. J. 158, 2016 Tex. LEXIS 1153, at *8 (Tex. Dec. 23, 2016); *see Duenez*, 237 S.W.3d at 686 (citing Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex. 1987).

[149] *See* Minyard Food Stores v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002); GTE Sw. v. Bruce, 998 S.W.2d 605, 617 (Tex. 1999).

[150] Rosell v. Central W. Motor Stages, Inc., 89 S.W.3d 643, 654 (Tex. App.—Dallas 2002) (citing Estate of Arrington v. Fields, 578 S.W.2d 173, 178 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.)); *see also* Williams v. McCollister, 671 F. Supp. 2d 884, 888–89 (S.D. Tex. 2009) (affirming summary judgment dismissing claims of negligent hiring, supervision, training, and retention where employer stipulated to vicarious liability under respondeat superior); Simmons v. Bisland, 2009 Tex. App. LEXIS 2473, at *11 (Tex. App.—Austin Apr. 9. 2009, pet. denied) (stating that evidence supporting negligent hiring generally inadmissible when employer has stipulated to vicarious liability).

employer.[151] Moreover, unlike respondeat superior, "[l]iability for negligent hiring and retention is not dependent . . . upon a finding that the employee was acting in the course and scope of his employment when the tortious act occurred."[152] Extrapolating from the employment context to other relationships can, therefore, be problematic.

Conspiracy liability is sometimes analogized to the vicarious liability of partners.[153] This is not a sound analogy; liability is based on the conspirators' intentional agreement to "accomplish an unlawful purpose or . . . a lawful purpose by unlawful means" and damages caused by the commission of at least one tort in furtherance of the agreement.[154] Conspiracy thus has features of both the second and third categories of liability. "Conspiracy is a derivative tort because 'a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.'"[155] As the court in *Wells Fargo* acknowledged, "claims for aiding and abetting and/or conspiracy . . . are not pure vicarious liability claims because they require . . . wrongful conduct on the part of [the alleged conspirator]."[156] Such claims are thus analogous to dram shop liability as described in *Duenez*—although "the provider's liability stems from his own conduct," it also requires that the intoxicated driver's "conduct proximately caused damages."[157] On the other hand, aiding and abetting, like conspiracy, also shares features of the third category, "joint tortfeasors acting in concert."[158] As the Texas Supreme Court held in *Kinzbach Tool*, "where a third party knowingly participates in the breach of duty of a fiduciary, such third party

---

[151] *Rosell*, 89 S.W.3d at 654; *McCollister*, 671 F. Supp. 2d at 888–89.

[152] Morris v. JTM Materials, Inc., 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.).

[153] *See Civil Conspiracy*, *supra* note 71, at 317 (citing DAN B. DOBBS, THE LAW OF TORTS § 340, at 936 (2000)).

[154] Operation Rescue-Nat'l v. Planned Parenthood of Houst. and Se. Tex., Inc., 975 S.W.2d 546, 553 (Tex. 1998); Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996).

[155] West Fork Advisors, LLC v. SunGard Consulting Servs., LLC, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied) (quoting *Tilton*, 925 S.W.2d at 681); Baty v. ProTech Ins. Agency, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

[156] Fidelity & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, No. H-04-2833, 2006 U.S. Dist. LEXIS 23545, at *18–19 (S.D. Tex. Mar. 31 2006).

[157] 237 S.W.3d 680, 689, 693 (Tex. 2007); *see* Chu v. Chong Hui Hong, 249 S.W.3d 441, 444 (Tex. 2008) (conspiracy); *Tilton*, 925 S.W.2d at 681 (conspiracy); Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 582–83 (Tex. 2001) (aiding and abetting).

[158] *Apportioning Responsibility*, *supra* note 92, at 618.

*BAYLOR LAW REVIEW* [Vol. 69:2

becomes a joint tort-feasor with the fiduciary and is liable as such."[159] In the context of Chapter 33, "liable as such" for joint tortfeasors means subject to apportionment of responsibility under § 33.003 and allocation of liability for damages under § 33.013.[160]

In any event, the arguments offered for excluding some types of derivative liability from the proportionate responsibility question and allocation of damages do not necessarily apply to aiding and abetting or conspiracy claims. The (ultimately unsuccessful) reasons given for exempting dram shop liability from Chapter 33 are in some respects stronger in that context than when applied to conspiracy claims. The alcohol provider's liability in *Duenez* was imposed by a statutory provision that was itself in abrogation of the common law; the issue was how to reconcile the Dram Shop Act with Chapter 33.[161] Joint and several liability for conspiracy and aiding and abetting is a common law doctrine; the only statutory-construction question is whether the terms of Chapter 33 clearly supplant it, as they do other such doctrines.[162]

Further, in dram shop and other forms of derivative liability, the fault or negligence of the two liable parties derive from independent conduct: the provider's negligent serving of alcohol is distinct from the intoxicated driver's negligence; the employer's negligent hiring is distinct from the employee's wrongful conduct; the vehicle owner's entrustment is distinct from the driver's conduct. The parties are not working together toward a mutual end. In contrast, those who commit torts and those who conspire or knowingly participate with them are "joint tortfeasors acting in concert"[163]—they participate at different levels, connected by a collective agreement to "accomplish an unlawful purpose . . . or . . . a lawful purpose by unlawful means."[164] Accordingly, as noted above, aiding and

---

[159] Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509, 514 (Tex. 1942).

[160] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.011, 33.013.

[161] 237 S.W.3d at 692; *see also* JCW Elecs., Inc. v. Garza, 257 S.W.3d 701, 706 (Tex. 2008); Southwest Bank v. Information Support Concepts, Inc., 149 S.W.3d 104, 111 (Tex. 2004).

[162] *See, e.g.*, Nabors Well Servs. v. Romero, 456 S.W.3d 553, 559, 566–67 (Tex. 2015) (admissibility of seat belt evidence); Dugger v. Arredondo, 408 S.W.3d 825, 831–32 (Tex. 2013) (unlawful-acts doctrine); Del Lago Partners, Inc. v. Smith, 307 S.W.3d 762, 772 (Tex. 2010) (identifying several common law defenses discarded in deference to comparative negligence statute).

[163] *Apportioning Responsibility*, *supra* note 92, at 618.

[164] Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996); Operation Rescue-Nat'l v. Planned Parenthood of Houst. and Se. Tex., Inc., 975 S.W.2d 546, 553 (Tex. 1998).

abetting, like conspiracy, is akin to joint-tortfeasor liability (the third category), which is unquestionably subject to Chapter 33.

Finally, to the extent public policy is relevant to statutory construction, applying Chapter 33's plain meaning to all parties found to have been at fault does not contravene any fundamental tenet or lead to "absurd or nonsensical results."[165] While the facts of each case differ, it is not hard to imagine a case in which the primary tortfeasor, say the ring leader of a fiduciary breach who absconded with valuable trade secrets, is more culpable than a "lesser" member of a conspiracy, who agreed to participate but played a relatively minor role in the actual harm. In another situation, the parties aiding and abetting the breach in order to obtain and exploit the trade secrets may be more culpable than the employee who breached a duty to maintain confidentiality. In either case, the parties are joint tortfeasors, but there is no inherent reason they must be held jointly and severally liable for the resulting damages if the statutory text does not support it. Indeed, comparing the respective contributions of joint or concurrent tortfeasors to the resulting harm is precisely the purpose reflected in the language of Chapter 33 chosen by the legislature.

---

[165] *See* Molinet v. Kimbrell, 356 S.W.3d 407, 411 (Tex. 2011) (stating statutory text "is the best expression of legislative intent unless a different meaning is apparent from context or the plain meaning leads to absurd or nonsensical results"); City of Rockwall v. Hughes, 246 S.W.3d 621, 625–26 (Tex. 2008).