IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NATIONAL OILWELL VARCO, L.P., | § |
| Plaintiff, | § |
| v. | § CIVIL ACTION NO. H-16-2261 |
| SADEESH SADAGOPAN, MAJED HAMDAN, and KHALED ZANTOUT | § |
| Defendants. | § |

**MEMORANDUM AND OPINION ON THE
MOTIONS FOR RECONSIDERATION**

**I.    Background**

After two years of briefing, motions, jurisdictional discovery, and hearings, the court issued a ruling on August 13, 2018, granting National Oil Well Varco's motion for default judgment. (Docket Entry No. 132). The court found that NOV was entitled to recover from Sadeesh Sadagopan, Majed Hamdan, and Khaled Zantout, jointly and severally, the following remedies:

1. $12,220,102.37 in actual damage;

2. post-judgment interest at 2.44% per annum as provided by law from entry of judgment until paid; and

3. costs of court under in Rule 54(d) of the Federal Rules of Civil Procedure.

(*Id.* at 37–38). On August 23, 2018, NOV moved for reconsideration, asking the court to amend or correct the Memorandum and Opinion and the final judgment to deny the defendants' dollar-for-dollar settlement credit. (Docket Entry No. 135). The defendants responded, and NOV replied. (Docket Entries No. 138, 140). On September 10, Majed Hamdan and Khaled Zantout moved for

reconsideration of the court's denial of their choice-of-law defense, the exclusion of their declarations, and the damages computation.

After reviewing the parties' motions, responses, and replies; the record; and the applicable law, the court amends the Memorandum and Opinion as set out below, but does not change the result or amend the final judgment. The parties' motions for reconsideration are granted in part and denied in part, for the reasons stated in detail below.

## II.     The Legal Standard

The Federal Rules of Civil Procedure do not formally recognize a motion to reconsider. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."). Motions to reconsider are treated as motions to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure, or motions for relief from judgment under Rule 60(b), depending on when the motion is filed. *Demahy v. Schwarz Pharm. Inc.*, No. 11-31073, 2012 WL 5261492, at *2 n.2 (5th Cir. Oct. 25, 2012) (citing *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003)). A motion for reconsideration is considered under Rule 59(e) if it is filed within 28 days of the court's ruling, and under Rule 60(b) if it is filed after that. *Demahy*, 2012 WL 5261492, at *2 & n.2 (citing *Tex. A&M*, 338 F.3d at 400).

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). A Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v.*

*United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). The court has "considerable discretion" in addressing a motion for reconsideration. *Templet*, 367 F.3d at 479. Changing an order or judgment under Rule 59(e) is an "extraordinary remedy" that courts should use sparingly. *Id.*; *see also* 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 124 (2d ed. 1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). A motion to reconsider may not be used to relitigate matters or to raise arguments or present evidence that could have been raised before the entry of the judgment or order. 11 WRIGHT & MILLER § 2810.1 at 127–28.

### III. Analysis

#### A. NOV's Motion to Reconsider the Dollar-for-Dollar Settlement Credit

##### 1. Chapter 33 of the Texas Civil Practices and Remedies Code

The issue is the applicability of Chapter 33 of the Texas Civil Practices and Remedies Code. Two provisions of Chapter 33 were discussed in the court's earlier Memorandum and Opinion:

> § 33.012(a). If the claimant is not barred from recovery under Section 33.001, the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage responsibility.
>
> § 33.012(b). If the claimant has settled with one or more persons, the court shall . . . reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of dollar amounts of all settlement.

TEX. CIV. PRAC. & REM. CODE § 33.012. This court found that § 33.012(a) did not apply because NOV proved actual damages resulting from the defendants' fraudulent schemes that furthered the conspiracy. (Docket Entry No. 132 at 36). The court applied § 33.012(b) and found the defendants entitled to a credit for the settlement between NOV and FM of $5,750,000.

The parties dispute the applicability of § 33.012(b). Section 33.002 governs Chapter 33's applicability. It states that:

(a) This chapter applies to

    (1)    any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought.

    (2)    any action brought under the Deceptive Trade Practices–Consumer Protection Act . . . in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought.

TEX. CIV. PRAC. & REM. CODE § 33.002(a). NOV argues that "the absence of a proportionate responsibility determination renders Chapter 33 inapplicable in its entirety." (Docket Entry No. 140 at 2). NOV relies on *White v. Zhou Pei*, 452 S.W.3d 527 (Tex. App.—Houston [14th Dist.] 2014, no pet.), which affirmed the trial court's refusal to grant a settlement credit under § 33.012(b) because there was no percentage-of-responsibility finding at trial. *Id.* at 533–34; *see also Nelson v. Pasol*, No. 13-15-00379-CV, 2017 WL 3634059, at*5 (Tex. App.—Corpus Christi Aug. 24, 2017, no pet.) (refusing to apply § 33.012(b) to credit the defendant's settlement with a nonparty bank because the jury did not make a finding that the nonparty was responsible for a percentage of the damages that the plaintiffs sought); *Tex. Capital Sec., Inc. v. Sandefer*, 108 S.W.3d 923, 925–26 (Tex. App.—Texarkana, June 27, 2003) (chapter 33 did not apply because the defendants were jointly and severally liable).

In *Zhou Pei*, the trial court refused to apply § 33.012(b) settlement-credit provision after the jury found that the defendants had committed fraud and were jointly and severally liable for the damages. At trial, the jury was not asked to allocate a specific percentage of fault to the defendants

or to a third party. The Texas Court of Appeals affirmed, finding that Chapter 33 did not apply when there was no allocation of responsibility for the harm. *Zhou Pei*, 452 S.W.3d at 543–44. The dissent argued that the majority's holding made §§ 33.003 and 33.004 inoperative.[1] The dissent also pointed to a Texas Supreme Court decision suggesting that Chapter 33 applies to "all tort claims," without any requirement of a percentage-of-responsibility finding. *Dugger v. Arredondo*, 408 S.W.3d 825, 831 (Tex. 2013); *see also Pemex Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp. 2d 961, 980 (S.D. Tex. 2013) (same); *Werner v. KPMG, LLP*, 415 F. Supp. 2d 688, 703 (S.D. Tex. 2006); *Challenger Gaming Sols. v. Earp*, 402 S.W.3d 290, 292 (Tex. App.—Dallas 2013, no pet.). In none of the cases the dissent cited, however, did the parties dispute Chapter 33's applicability absent a finding of the defendant's percentage of fault. Instead, *Zhou Pei* has been followed by Texas intermediate appellate decisions, although the Texas Supreme Court has not weighed in.

Even if NOV is correct that § 33.012(b) does not apply in granting the defendants the settlement credit, this dos not change the result. The Texas one-satisfaction rule provides a basis for the defendants to obtain the credit. *See Sandefer*, 108 S.W.3d at 925–26 (applying the common law one-satisfaction rule to decide the defendants' settlement credit after finding Chapter 33 inapplicable).

2.     **The Texas One-Satisfaction Rule**

"Texas's one-satisfaction rule provides that 'a plaintiff is entitled to only one recovery for any damages suffered.'" *GE Capital Commercial, Inc. v. Worthington Nat'l. Bank*, 754 F.3d 297, 304 (5th Cir. 2014) (citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000)). A

---

[1] Tex. Civ. Prac. & Rem.Code § 33.003 (requiring percentage-of-responsibility findings certain circumstances in cases governed by Chapter 33); § 33.004 (allowing for pretrial designation of a responsible third party in cases governed by Chapter 33).

"nonsettling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable." *Id.* at 305. The one-satisfaction rule prevents a plaintiff from "receiv[ing] a windfall" where "a settling defendant has already partially contributed" to the plaintiff's recovery. *Id.* (quoting *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993)). The issue in applying the rule is whether the plaintiff has suffered a single, individual injury, not what cause of action the plaintiff has asserted. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991).

NOV argues that the defendants failed to show that NOV received the settlement funds that the defendants claimed credit for. (Docket Entry No. 135 at 11). NOV cites *Krobar Drilling, LLC v. Ormiston*, 426 S.W.3d 107 (Tex. App.—Houston [1st Dist.] 2012, pet. denied), which held that "it is the *satisfaction* of a judgment, not the *obtaining* of a judgment, that bars further suits." *Id.* at 112 (emphasis in original). In *Krobar Drilling*, Krobar sued Kenner for breach of contract and obtained a damage judgment. When Krobar could not collect the judgment from Kenner, Korbar sued Ormiston, a company to which Kenner had conveyed his assets. The Court of Appeals held that the one-satisfaction rule did not bar Kenner's second lawsuit against Ormiston because the first judgment was unsatisfied. *Id.* at 112.

*Krobar Drilling* did not involve a settlement credit. The issue was whether the plaintiff could pursue a separate action against a tortfeasor following an unsuccessful effort to collect on a judgment. Here, by contrast, NOV voluntarily settled with FM and released its claims in exchange for the agreed future payments. *See also Daryapayma v. Park*, No. 02-15-0019-CV, 2016 WL 6519117, at *2 (Tex. App.—Fort Worth, Nov. 3, 2016) ("It is well settled that an injured party may sue and proceed to judgment against all joint tortfeasors together, or any number less than all, or each one separately in successive suits; and that an unsatisfied judgment recovered against one of them

will not operate as a bar to an action against another; provided, however, the plaintiff may finally satisfy only one judgment.").

NOV also cites *Shriro Corp. v. Ward*, 570 S.W.2d 395 (Tex. 1978). In that case, Shriro, a builder, had alleged water damage to an apartment project. The building owner agreed to pay its insurance proceeds for Shriro to repair the damage. The insurance company issued a $4,241.61 check payable to the building owner, but the owner's general partner misappropriated the check, and Shriro never received the money. Shriro sued the insurance company for negligence and the general partner for conversion. The insurance company settled with Shriro and paid an agreed settlement amount. The Court of Civil Appeals found that Shriro was barred from bringing a second lawsuit against the general partner because Shriro' settlement with the insurance company served as an election of remedies, barring the second action. The Texas Supreme Court reversed, finding that Shriro's conversion claim against the general partner was independent from its negligence claim against the insurance company. "[T]his is not a case in which the settlement or judgment in one suit is paid in an amount which equals or exceeds one's damages, in which instance the satisfaction doctrine will bar a second suit." *Id.* at 397. *Shriro* did not address a settlement-credit issue, but whether a prior settlement that did not cover all the damages barred litigation against a different wrongdoer.[2]

In a recent decision, *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101 (Tex. 2018), the Texas Supreme Court applied the one-satisfaction rule to a settlement credit. The court held that

---

[2] NOV also cited a footnote from *Byer Custom Builders v. Franks*, 389 S.W.3d 880, 881 n.2 (Tex. App.—Houston [14th Dist.] 2012, no pet.). This case did not answer whether a plaintiff was entitled to settlement credit. Instead, the court found that a prior arbitration decision did not bar the plaintiff from suing another tortfeasor because the arbitrator had awarded damages for a different injury.

the nonsettling defendant seeking the settlement credit has the burden to prove its right to the credit. The defendant may introduce the settlement agreement or other evidence of the settlement amount. *Id.* at 107–08 (citing *Mobil Oil Corp. v. Ellender*, 968 S.W. 2d 917, 927 (Tex. 1998)). The burden then shifts to the plaintiff to show that certain amounts should not be credited. *Id.* (citing *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002)). The plaintiff can rebut the presumption that the nonsettling defendant is entitled to a settlement credit by presenting evidence showing that the settlement proceeds would not amount to a double recovery. *Id.* Applying *Sky View* framework, Hamdan and Zantout have satisfied their burden to show their right to the settlement credit by providing the settlement agreement and amount. NOV did not provide or point to evidence showing that it has not, or will not, receive payment from FM as the settlement terms provide.

In *Sky View*, the plaintiff offered no evidence on the allocation of the settlement proceeds, failing to rebut the presumption of the defendant's entitlement to a settlement credit. *Id.* at 110–11. NOV argues that *Sky View* does not apply here because its burden-shifting framework applies only to the parties' "respective burden to show how funds received via a settlement were allocated as between actual and punitive damages." (Docket Entry No. 140 at 5, n.1). NOV argues that it raised a different issue of whether the defendants were entitled to the FM settlement credit when there was no evidence showing that NOV had in fact received actual payment or how much. But the Supreme Court did not limit its decision to the narrow issue of settlement allocation. Instead, the Court noted that "a nonsettling party should not be penalized for events over which it has no control," *id.* at 108 (quoting *Utts*, 81 S.W.3d at 829; *Ellender*, 968 S.W.2d at 927), and that "the burden-shifting framework . . . is appropriate because the plaintiff is 'in the best position' to demonstrate why rendering judgment based on the [] damages award would not amount to the plaintiff's double

recovery." *Id.* NOV is in the best position to show whether FM made any or some of the payment due under the settlement and why full payments would be uncollectable. NOV has not identified or provided evidence showing that FM failed to pay as agreed, would not make future payments, or that NOV would not receive a double recovery if the court denies the defendants' settlement credit. NOV failed to rebut the presumption that the defendants are entitled to the settlement credit. *Sky View*, 555 S.W.3d at 111–12.

NOV also contends that the one-satisfaction rule does not apply because its settlement agreement with FM covers more than the damages the defendants inflicted. (Docket Entry No. 135 at 11). NOV argues that the settlement overlaps with the damages from the Global Business Supply and the Spreadsheet schemes, but does not overlap with the damages from the defendants' other schemes. (*Id.* at 12). The court's earlier Memorandum and Opinion rejected this argument by stating that the settlement agreement "d[id] not allocate" separate settlement amounts applicable to actual and punitive damages, or to each of the fraud schemes causing the damages. (Docket Entry No. 132 at 31–34). *Cf. Stelluti Kerr, LLC v. Mapei Corp.*, 703 F. App'x 214, 229 (5th Cir. 2017) (the one-satisfaction rule did not apply because a prior arbitration award covered damages for machines 2 through 4, while the jury verdict covered machines 5 through 14).

Applying the Texas one-satisfaction rule and *Sky View* burden-shifting framework, NOV did not provide or identify evidence rebutting the presumption that Hamdan and Zantout are entitled to the dollar-for-dollar settlement credit. The court amends the Memorandum and Opinion to hold that even if Chapter 33 of the Texas Civil Practice and Remedies Code does not apply, that does not change the outcome.

### B. The Defendants' Motion

#### 1. The Choice-of-Law Defense

In its earlier Memorandum and Opinion, the court held that the defendants had waived their choice-of-law defense because it was untimely raised after default. (Docket Entry No. 132, at 11–14). Hamdan and Zantout ask the court to reconsider and reopen the case to conduct a choice-of-law analysis. (Docket Entry No. 137 at 2–6). NOV argues that the defendants merely repeat their earlier arguments, which the court considered and denied. (Docket Entry No. 139 at *4–*6).

The court held that the defendants waived their choice-of-law defense to liability by voluntarily agreeing to enter default. The court cited *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860 (11th Cir. 2007) (per curiam):

> [After entry of default,] before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought. At that point, the defendant, even though in default, is still entitled to contest the sufficiency of the complaint and its allegations to support the judgment being sought.
>
> A defaulted defendant also can defend by challenging the jurisdiction of the court to enter judgment against him. Thus, for example, a defendant in default still can challenge the validity of service of process or contest the court's exercise of personal jurisdiction over him.
>
> Other than the narrow exceptions discussed above, a defendant, once a default has been entered against him, is not entitled to raise any other defenses. Accordingly, procedural defenses, such as a motion to dismiss for *forum non conveniens* . . . are lost.

*Id.* at 863–84 (citation and footnote omitted).

To decide whether a plaintiff's allegation meets the "sufficiency standard" for entering a default judgment, the court necessarily need to first decide the choice-of-law question. Federal

courts frequently make independent choice-of-law decisions after entry of default to determine whether the plaintiffs' complaints are sufficient to establish liability under the substantive law applied. *See, e.g., AE Marketing LLC v. Jenkins-Baldwin Corp.*, No. 3:07-cv-0321-F, 2013 WL 12228622, at *8 (N.D. Tex. May 22, 2013) (resolving the parties' choice-of-law disputes after entry of default); *Travelers Indem. Co. of Am. v. Davachi*, No. TDC-15-0578, 2016 WL 452131, at *2–*3 (D. Md. Feb. 4, 2016) (same); *Century 21 Real Estate, LLC v. Ramron Enters.*, 2015 WL 521350, at *4 (E.D. Cal. Feb. 9, 2015) (same); *see also Helena Chem. Co. v. Aylward*, No.4:15-cv-096, 2016 WL 1611121, at *3 n.2 (N.D. Miss. April 21, 2016) (no need to discuss choice-of-law issue after entry of default because the parties did not dispute it). Our opinion relied on *Chanel, Inc. v. Schedule A*, No. H-12-2085, 2013 WL 5425252, at *4 (S.D. Tex. Sept. 26, 2013), to find that "conceding liability waived the defendants' opportunity to challenge the basis of that liability through choice of law argument." (Docket Entry No. 132 at 14). But *Chanel* did not address choice of law, and the defendants in *Chanel* did not agree to the entry of default.

Even the defendants did not automatically waive their choice-of-law defense by agreeing to the entry of default, they had waived this defense by failing to timely raise it. NOV initiated this lawsuit in July 2016; the defendants first raised their choice-of-law argument in January 2018; the defendants raised the choice-of-law issue again in responding to NOV's motion for default judgment in March 2018. (Docket Entries No. 113, 116, 121, 124). The court entered final default judgment in August 2018.

A party has "an obligation to call the applicability of [a foreign] law to the court's attention in time to be properly considered." *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5 Cir. 1987); *see also ARV Offshore Co., Ltd v. Con-Dive, L.L.C.*, No.-H-09-994, 2012 WL 176322, at * 6 & n.68

(S.D. Tex. Jan. 2012) (choice-of-law arguments waived when first raised in a post-trial motion); *cf. Mathew v. Patterson-UTI Drilling Co., L.L.C.*, 44 F. Supp. 3d 691, 695 (S.D. Tex. 2014) (choice-of-law arguments were not waived when they wee raised in the first dispositive motion, which gave the court adequate time to consider it); *Robbins Hardwood Flooring, Inc. v. Bolick Distribs. Corp.*, No. 3.02-cv-1124-H, 2003 WL 21730142, at *2 (N.D. Tex. 2003) (choice-of-law arguments not waived when first presented in a response to summary judgment motion).

The defendants waited a year and a half to raise this issue. The record does not show a manifest error in finding the choice-of-law defense untimely. And the defendants have agreed that United Arab Emirates law provides NOV the same remedies as Texas law. (Docket Entry no. 123 at 5). There does not appear to be a conflict that would affect the outcome. The court denies Hamdan and Zantout's motion to reopen.

### 2. The Exclusion of the Defendants' Declarations

The court excluded the declarations of Hamdan, Zantout, and Sadagopan as irrelevant after finding that "[t]he declarations discuss the defendants' employment by NOV," relevant to liability but not to damages. (Docket Entry No. 132, at 9). The defendants argue that these declarations provide information relevant to the choice-of-law analysis and to damages, and that the court had admitted them into evidence at a hearing held in March 2018. At that hearing, NOV moved to strike the declarations. (Docket Entry No. 128 at 91). The court denied the motion given the "posture of the case" and the "unusual nature of these proceedings," (*id.* at 91:19-22, 92:1); but the court explained that they might receive little or no weight, (*id.* at 91:19-20). In the earlier Memorandum and Opinion, the court did exclude the declarations. The declarations were conclusory descriptions of the defendants' employment with NOV unrelated to damages. Hamdan and Zantout's motion to

reconsider the exclusion is denied.

### 3. The Measurement of Damages

#### a. The Orient Scheme

The defendants argue that the court erred in granting damages of $11,433,356 to NOV for the Orient scheme. The court had granted NOV leave to file its proposed fourth amended complaint, in which NOV added the allegations as to the Orient scheme. As to the previous schemes, the court noted that the amendment did not add claims or increase the type of damages sought. (Docket Entry No. 96).

The defendants argue that they agreed to the entry of default in reliance on the court's statement that the fourth amended complaint did not increase the *overall* damages sought. (Docket Entry No. 137 at 8). To the contrary, the court allowed NOV to amend its complaint to include additional damages arising from the newly added Orient scheme. The defendants amended their answer and responded to NOV's allegation about the Orient scheme without objection. Because the defendants agreed to entry of default after allegations related to the Orient scheme were pleaded and answered, their reliance-interest argument is unpersuasive.

The defendants also argue that NOV did not allege sufficient facts showing that the funds received by Orient were paid to or received by each defendant individually. The court had examined the expansive record, finding that "[t]he evidence that some of the money the defendant had NOV pay Orient went from Orient to both the defendants and to others does not reduce the harm to NOV," and "Texas law does not limit a defendant's obligation to pay fraud damages for money directly or exclusively received by that defendant." (Docket Entry No. 132 at 24, citing *JP Morgan Chase Bank,*

*N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 635 (2018)).[3]

No manifest error is shown. The defendants' motion for reconsideration on the measurement of the Orient scheme damage is denied.

**b.     The Global Business Supply Scheme and the Viyatek Scheme**

The defendants challenge the court's computation of damages arising from the Global Business Supply scheme for insufficient evidence. The court examined the record evidence, finding that NOV suffered $1,585,209 in damages, the amount NOV paid to Global Business Supply minus the defendants' purchase cost for the equipment. (Docket Entry No. 135, at 25). No manifest error is shown in this finding. The similar challenge to the Viyatek scheme's damage measurement is equally unpersuasive.

**c.     The Employment Benefits**

The defendants argue that the court erred in finding them jointly and severally liable for the employment benefits that another defendant received. The employment benefits paid to the defendants are the actual damages that NOV suffered from the fraud schemes. Texas law does not recognize an "I-did-not-receive-the-payment" defense to joint-and-several liability imposed for fraud and conspiracy. The defendants fail to show manifest error in the court's damages computation. The defendants' motion for correction or reconsideration is denied.

---

[3] To allege a fraud claim, a plaintiff must show: (1) the defendant "made a material representation that was false"; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of the truth"; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. *Id.*; *see also Int'l Paper Co. v. Frame*, No. 01-41094, 2003 WL 21195497, at * 5 (5th Cir. 2003) ("Under Texas law, proof of civil conspiracy imposes joint and several liability on all co-conspirators for *any* actual damages resulting from acts in furtherance of the conspiracy.") (emphasis added) (quotations omitted).

## IV. Conclusion

NOV's motion to amend or correct is granted in part and denied in part; Hamdan and Zantout's motion to amend or correct is granted in part and denied in part; the outcome is unaffected.

SIGNED on October 31, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge